SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations

STEPHEN S. KORNICZKY, Cal. Bar No. 135532
skorniczky@sheppardmullin.com
MARTIN R. BADER, Cal. Bar No. 222865
mbader@sheppardmullin.com
MATTHEW W. HOLDER, Cal. Bar No. 217619
mholder@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for TCL Communication
Technology Holdings, Ltd.,
TCT Mobile Limited, and
TCT Mobile (US) Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., *et al.*,<br><br>                  Plaintiff,<br><br>        v.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON, et al.<br><br>                  Defendants. | Case No. 8:14-cv-00341-JVS-AN<br><br>**TCL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS TCL'S SECOND AMENDED COMPLAINT**<br><br>Date:      September 15, 2014<br>Time:     1:30 p.m.<br>Ctrm:    10C<br><br>The Hon. James V. Selna<br><br>Complaint Filed: March 5, 2014 |

SMRH:429578117.1

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................... 2

      A.    Legal Standard - Fed. R. Civ. P. 12(b)(6) ................................... 2

      B.    TCL Properly Pled Breach of Contract ...................................... 2

      C.    TCL Properly Pled Promissory Estoppel. ................................... 6

      D.    TCL Properly Pled A Claim for Declaratory Judgment. ........... 7

      E.    TCL Properly Pled Fraudulent and Negligent Misrepresentation. ......... 7

      F.    TCL Properly Pled Its Claim for Unfair Competition. .............. 10

      G.    TCL Properly Pled Declaratory Judgment for Non-Infringement of
            Ericsson's Patents. ...................................................................... 14

      H.    TCL Properly Pled Declaratory Judgment Claim for Invalidity of
            Ericsson's Patents. ...................................................................... 15

      I.    TCL Properly Pled Direct Infringement of Its Patents. ............ 16

      J.    TCL Properly Pled Indirect Infringement of its Patents. .......... 17

      K.    TCL Properly Pled Willful Infringement .................................... 20

      L.    TCL's Declaratory Claims for Invalidity and Non-Infringement of
            Ericsson's Patents Are Proper Under Rule 12(b)(6), Rule 13(a),
            and the First-to-File Rule. .......................................................... 21

      M.    If the Court Finds Any Claim to Be Deficient, TCL Should Be
            Given the Opportunity to Amend. .............................................. 25

III.  CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Motorola, Inc.*, No. 11-cv-178, 2012 WL 799412 (W.D. Wis. Nov. 8, 2012) ................................................................................................6

*Apple Inc. v. Samsung Electronics Co., Ltd.,* No. 11-CV-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012) ...............................................................12

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ....................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ...........................................2

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007)...........................12

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980 (N.D. Cal. 2011)........23, 24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) .............................................................................10

*Cephalon, Inc. v. Sun Pharms.*, Ltd. No. 11-5474, 2013 U.S. Dist. LEXIS 144576 (D.N.J. Oct. 7, 2013) ...........................................................21

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ......................................................8

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) ............................................................................10

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) ..............................25

*Elan Pharma Intern. Ltd. v. Lupin Ltd.*, No. 09-1008, 2010 U.S. Dist. LEXIS 32306 (D.N.J. Mar. 31, 2010) .........................................................15

*Ericsson Inc. v. TCL Communication Tech. Holdings, Ltd.*, No. 2:14-cv-00667 (E.D. Tex.) ..........................................................................22

*Ericsson, Inc. v. D-Link Systems, Inc.*, No. 6:10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013) .......................................................6

*Futurewei Techs., Inc. v. Acacia Res. Corp.*, 737 F.3d 704 (Fed. Cir. 2013) ...........24

*Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931 (Fed. Cir. 1993) ......................23

SMRH:429578117.1

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
TCL'S SECOND AMENDED COMPLAINT

*Good Sportsman Mktg. LLC v. Testa Assocs., LLC*, No. 6:05-CV-90, 2005 U.S.
Dist. LEXIS 29182 (E.D. Tex. Sept. 1, 2005) ......................................................23

*Gustafson, Inc. v. Intersys. Indus. Prod., Inc.*, 897 F.2d 508 (Fed. Cir. 1990) .........20

*In re Acacia Media Technologies Corp.*, No. C 05-01114, 2005 1683660 (N.D. Cal.
July 19, 2006)......................................................................................................14

*InterDigital Communications, Inc. v. ZTE Corp.*, No. 1:13-cv-00009, 2014 WL
2206218................................................................................................................6

*K-Tech Telecommc'ns, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Cir.
2013) .............................................................................................................16, 17

*Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) ................................................................5

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) ....................................................2

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005)
.....................................................................................................…..2, 5, 11

*Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ..........17

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ......................................................14

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2011 U.S. Dist. LEXIS 73827
(W.D. Wash. May 31, 2011)..................................................................................7

*Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156 (C.D. Cal. 2010)
...............................................................................................................15, 17

*MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 2:13-cv-03560-ODW, 2014 U.S.
Dist. LEXIS 19142 (C.D. Cal. Feb. 14, 2014)................................................19, 21

Novatel Wireless, Inc. v. Franklin Wireless Corp., No. 3:10-cv-02530- (S.D. Cal.
Mar. 29, 2012)...............................................................................................18, 19

*Palmetto Pharms. LLC v. AstraZeneca Pharms. LP*, No. 2:11-cv-00807, 2012 U.S.
Dist. LEXIS 177185 (D.S.C. Nov. 6, 2012) ........................................................15

*Peoplebrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120, 2013 WL 843032 (N.D. Cal.
Mar. 6, 2013)......................................................................................................11

*Pfizer Inc. v. Apotex Inc.*, 726 F. Supp. 2d 921 (N.D. Ill. 2010) ............................... 15

*Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC, 2012 U.S. Dist.
LEXIS 70614 (C.D. May 16, 2012) ................................................................. 19, 20

*S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962) ........................................................ 25

*Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910 (Fed. Cir. 2005) .... 21

*Silver Line Bldg. Prods. LLC v. J–Channel Indus. Corp.*, 2014 WL 1221338 (Mar.
24, 2014 E.D.N.Y.) ............................................................................................ 23

*Sony Corp. v. LG Elecs. U.S.A. Inc.*, 768 F. Supp. 2d 1058 (C.D. Cal. Apr. 18, 2011)
............................................................................................................................ 18

*Teirstein v. AGA Med. Corp.*, No. 6:08cv14, 2009 U.S. Dist. LEXIS 125002 (E.D.
Tex. Feb. 13, 2009) ............................................................................................ 15

*Townshend v. Rockwell Intern. Corp.*, No. C-99-0400, 2000 WL 43305 (N.D. Cal.
Mar. 28, 2000) ................................................................................................... 13

*Unilin Beheer B.V. v. Tropical Flooring,* No. CV-14-02209 BRO, 2014 U.S. Dist.
LEXIS 85955 (C.D. Cal. June 13, 2014) ...................................................... 16, 19

*U.S. v. Sunoco, Inc.*, No. 03-4625, 2006 U.S. Dist. LEXIS 58656 (D.N.J. Aug. 9,
2006) .................................................................................................................. 13

*Vivid Techs., Inc. v. Am. Science & Eng., Inc.*, 200 F.3d 795 (Fed Cir 1999) ... 23, 25

*Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559 (D. Del. 2012) .... 19, 20

*Weyer v. MySpace, Inc.*, No. 2:10-cv-00499-MRP, 2010 U.S. Dist. LEXIS 144008
(C.D. Cal. June 17, 2010) ................................................................................. 20

*Wistron Corp. v. Phillip M. Adams & Assocs.*, No. C-10-4458, 2011 U.S. Dist.
LEXIS 46079 (N.D. Cal. Apr. 28, 2011) .......................................................... 15

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................. 10

**Rules**

Fed. R. Civ. P. 9 .............................................................................................. 7, 8, 9

-iv-

Fed. R. Civ. P. 13........................................................................................1, 21, 22, 24

Fed. R. Civ. P. 15(a)(2)...........................................................................................25

SMRH:429578117.1                          OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
                                          TCL'S SECOND AMENDED COMPLAINT

# I.   **INTRODUCTION**

Ericsson is obligated to offer licenses to its standard-essential patents on fair, reasonable, and nondiscriminatory ("FRAND") terms.  TCL has been seeking a license from Ericsson for the patents that Ericsson deemed standard essential, but Ericsson has failed to offer a license to TCL on FRAND terms.

Ericsson's present motion, as well as its simultaneously-filed motion to certify an appeal and stay this case pending the appeal, are designed to cause delay and prevent this Court from resolving the parties' dispute.  Although Ericsson recently sent TCL a letter stating that "Ericsson remains willing to have the California Court determine the terms and conditions of a FRAND license between our companies," Ericsson filed the present motion just two weeks later, arguing that the court in the Eastern District of Texas should decide the issues.  Thus, Ericsson does not oppose litigating the issues, but prefers to do so in Texas.

Ericsson's conduct represents classic forum shopping.  It violates Rule 13 of the Federal Rules of Civil Procedure, as well as the "first-to-file" rule, because Ericsson's complaint in Texas was filed three months after TCL began this action, and recasts the same operative facts—all surrounding the parties' stalled FRAND negotiations—that TCL's complaint alleges in this action.  Accordingly, TCL has moved to transfer the Texas action to this Court.

Ericsson mischaracterizes TCL's case as a "cynical effort to gain negotiating leverage," and a "delay tactic" meant to take a "free shot" while "straddling the fence" and not committing to accept this Court's judgment on what constitutes FRAND terms, because "TCL evidently prefers to pay lawyers to attack the standards-setting process." (Dkt. 13, at p. 9; Dkt. 43, at pp. 11, 13, 16, 14, 15, 26, 43.)  None of this is true.  It is Ericsson who is attempting at every opportunity to prevent this case from moving forward in hopes of litigating the dispute in Texas. In the meantime, Ericsson continues to sue TCL for patent infringement throughout

the world, and seek injunctions against TCL's products – all in an attempt to force TCL into a non-FRAND license.  Ericsson's motion to dismiss should be denied and this case should move forward without further delay.

## II.   ARGUMENT

### A.   Legal Standard - Fed. R. Civ. P. 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the non-moving party.  *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings, and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]."  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants is liable for the misconduct alleged."  *Id.*  Dismissal is not appropriate unless it appears beyond a doubt that plaintiff can prove no set of facts in support of its claim.  *See Livid Holdings*, 416 F.3d at 946.

### B.   TCL Properly Pled Breach of Contract.

TCL alleges Ericsson breached its contract with ETSI (the "ETSI Declarations" or "Licensing Declarations"), to which TCL is a third-party beneficiary.  (Dkt. 31 at ¶¶ 96–102, hereafter cited as the "SAC".)  Ericsson does not dispute that TCL could be a third-party beneficiary.  Instead it argues TCL's breach-of-contract claim fails under Rule 12(b)(6) for two reasons: (1) TCL has not pled a condition precedent because its did not admit that Ericsson's patents are

standard essential, and (2) TCL has not agreed to be bound by any final determination by this Court.  (Dkt. 43, at 16.)[1]  Both of these arguments fail.

### 1.    TCL Is Not Required to Concede Ericsson's Patents Are Essential to Properly Plead Breach of Contract.

TCL's second amended complaint sufficiently alleges a contract between Ericsson and standard setting organizations, including ETSI.  Specifically, TCL alleges: (1) "Ericsson has represented that it possesses [standard-essential patents]" (SAC ¶ 77); (2) "Ericsson entered into a contract with ETSI to license its standard-essential patents on FRAND terms to ETSI members and any entity that implements the Mobile Cellular Standards" (SAC ¶ 71); (3) TCL implements the Mobile Cellular Standards (SAC ¶¶ 72–73); (4) Ericsson has refused to license its standard-essential patents to TCL on FRAND terms (SAC ¶¶ 78, 82–88, 95); and (5) as a result, TCL has suffered damages (SAC ¶¶ 90–94).

The Ericsson–ETSI contract, which is the basis for TCL's cause of action, arose when Ericsson repeatedly submitted the following Licensing Declaration to ETSI for each of its allegedly standard-essential patents:

> To the extent that the IPR(s) disclosed in the attached IPR Information Statement Annex are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached IPR Information Statement Annex, the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licences under this/these IPR(s) on terms and conditions which are [fair, reasonable, and non-discriminatory] …. (*See, e.g.*, Bader Decl. ¶ 1, Ex. 1, at 6).

Thus, Ericsson contracted with ETSI that it would grant irrevocable licenses under FRAND terms, to the extent its patents are, or become, standard-essential. (SAC ¶ 69–71, 77.)  TCL pled that this condition is satisfied based on **Ericsson's** claims that its patents are standard-essential.  (SAC ¶ 77.)  Indeed, Ericsson has

---

[1] References to pages of the Electronic Case File are cited with pin cites to the electronically generated page number at the top of the document.

repeatedly asserted that its patents are standard-essential.  (*See, e.g.,* Dkt. 13, at 17 ("because TCL sells products compliant with 2G, 3G, and 4G standards…each of Ericsson's essential patents is itself necessary to implement the cellular standards used by TCL's products"); Dkt. 43, at 11 ("Ericsson has been negotiating … to license Ericsson's standards-essential patents (SEPs) to TCL.").)

Ericsson now attempts to call into question its own, repeated assertions that its patents are standard-essential by arguing there is no contract unless TCL concedes that all of Ericsson's patents are, in fact, essential to the 2G, 3G, and 4G standards (the "Mobile Cellular Standards").  (Dkt. 43, at 15–16.)  In effect, Ericsson contends TCL is required to admit infringement in order to plead breach of contract by Ericsson.  (Dkt. 13, at 17 ("TCL cannot manufacture standards-compliant devices without infringing these patents.); Dkt. 43, at 17 ("TCL … will just keep on infringing without a license.").)  However, whether all (or any) of Ericsson's declared patents are, in fact, essential, as well as whether TCL is actually practicing those patents, goes to the merits of the case – it is not an element of TCL's claim for breach of contract.  Indeed, a prospective licensee like TCL may wish to license an alleged standard-essential patent from a company like Ericsson to avoid any possible dispute about infringement, and the associated costs of litigation, even though the prospective licensee may have strong reservations about whether the patents are essential, and/or are being practiced.  It would be anomalous and against public policy to require such a prospective licensee to admit infringement of a standard-essential patent as a prerequisite to enforcing the patent holder's FRAND obligations.

As a policy matter, Ericsson also argues that TCL is "straddling the fence" by "reserving the right to contest every one of the patents in Ericsson's portfolio of essential patents" and refusing to concede that Ericsson's patents are, in fact, standard-essential.  (Dkt. 43, at 13–14, 16.)  According to Ericsson, TCL cannot be a

licensee under Ericsson's FRAND commitment, because that would let TCL both benefit from Ericsson's contract with ETSI and reserve the right to challenge the infringement and validity of Ericsson's patents.  (*Id.*)  Ericsson is not the first patent licensor to argue that a licensee cannot challenge the licensor's patent rights.  The Supreme Court rejected this argument in *Lear, Inc. v. Adkins*, on the premise that "the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain."  395 U.S. 653, 670 (1969).  The Court explained, "Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification."  *Id.*  If Ericsson's patent claims are invalid or not infringed, they are in the public domain.  Ericsson's attempt to circumvent the *Lear* doctrine must fail.

Under the facts alleged in the SAC, this is not a case where "it appears beyond a doubt that plaintiff can prove no set of facts in support of the claim entitling him to relief," and dismissal of the breach of contract claim would be inappropriate here.  *Livid Holdings*, 416 F.3d at 946.

### 2.    TCL Will Be Bound by This Court's FRAND determination.

Ericsson also attacks TCL's breach of contract claim by arguing TCL has not agreed to be bound by the FRAND royalty adjudicated in this case.  (Dkt. 43, at 16.) This is not true.  TCL has not plead it will refuse to be bound by the FRAND terms determined by the Court.  To the contrary, TCL agrees to be bound by the FRAND terms determined by this Court—otherwise it would not have filed this action.  To avoid any doubt, TCL recently confirmed that commitment by letter to Ericsson.

SMRH:429578117.1

1   (Bader Decl. ¶ 2, Ex. 2, at 11 ("of course TCL agrees to be bound by the final

2   results of the California action").)[2]

3          This case is unlike those Ericsson cites in other district courts, where parties

4   asked courts to determine FRAND rates, but expressly refused to be bound by the

5   Court's determinations.  In *Apple Inc. v. Motorola, Inc.*, Apple asked the court to

6   determine a FRAND rate, but said that it would not be bound by the rate if it were

7   over $1 per device.  *See* No. 11-cv-178, 2012 WL 799412, at *2 (W.D. Wis. Nov. 8,

8   2012).  TCL has not set a ceiling on the rate it would pay.  In *Ericsson, Inc. v. D-*

9   *Link Sys., Inc.*, the court refused to determine a RAND rate for several patents,

10   because the jury had already determined a RAND rate on those same patents.  *See*

11   No. 6:10-cv-473, 2013 WL 4046225, at *22–23 (E.D. Tex. Aug. 6, 2013).  That is

12   obviously not the case here.  Finally, the court in *InterDigital Communications, Inc.*

13   *v. ZTE Corp.* refused to determine a FRAND rate where neither potential licensee

14   offered to file a sworn affidavit that it would sign a license.  *See* No. 1:13-cv-00009,

15   2014 WL 2206218, at *3 (D. Del. May 28, 2014).  That case is not on point because

16   TCL has not refused to sign an affidavit, and has already indicated its willingness to

17   be bound by this Court's determinations.

18          **C.**     **TCL Properly Pled Promissory Estoppel.**

19          TCL alleges that Ericsson should be estopped from refusing to license to TCL

20   on FRAND terms.  (SAC ¶¶ 103–109.)  The alleged estoppel arises from the same

21   facts that give rise to TCL's breach of contract claim.  Ericsson thus challenges

22   TCL's promissory estoppel claim on the same grounds that it challenges its breach-

23   of-contract claim.  (Dkt. 43, at 17–18.)  That challenge falls short for the reasons

24   articulated above.

---

25
26   [2] TCL's agreement is subject to appeal for clear error, but that condition applies to
     factual findings in all federal cases.  *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d
27   872, 881 (9th Cir. 2012) (explaining, in a FRAND case, findings of fact are
     reviewable for clear error).
28

1    Ericsson additionally argues TCL's claim for promissory estoppel should be

2    dismissed because TCL fails to allege Ericsson is unwilling to license its patents.

3    (*Id*. at 18.)  Ericsson's argument misses the point.  TCL seeks a license on **FRAND**

4    terms, and alleges that the only offers by Ericsson to TCL have been for **non-**

5    **FRAND** terms.  (SAC ¶¶ 4–6, 12, 36, 78, 79 ("Ericsson has never offered a rate on

6    FRAND terms"), 83, 86; SAC, Prayer for Relief, ¶¶ D–I.)  Thus, TCL's allegation is

7    that Ericsson is unwilling to license on FRAND terms – not that it is entirely

8    unwilling to license its patents on any terms.  Ericsson's motion should be denied.

9         **D.    TCL Properly Pled A Claim for Declaratory Judgment.**

10       TCL's action for declaratory judgment is not entirely duplicative of its other

11   causes of action and *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2011 U.S.

12   Dist. LEXIS 73827 (W.D. Wash. May 31, 2011) is distinguishable.  In *Microsoft*

13   *Corp.*, "Microsoft conceded that the relief it was seeking is the consequence of the

14   same ruling on its other claims, which is an injunction that requires Motorola to

15   make a RAND offer." *Id*. at *19–21.  Here, TCL's declaratory judgment claim

16   seeks far broader relief, including a determination of all of the FRAND terms,

17   including the FRAND rate.  (SAC ¶ 113.)  Although the breach of contract claim

18   will determine whether Ericsson breached its FRAND obligations and whether TCL

19   has suffered damage, it will not necessarily determine all of the FRAND terms.

20   Thus, TCL's declaratory judgment action is not entirely duplicative of the breach of

21   contract claim, and should not be dismissed on that basis.

22       **E.    TCL Properly Pled Fraudulent and Negligent Misrepresentation.**

23       As Ericsson indicates in its motion, the purpose of Rule 9(b) of the Federal

24   Rules of Civil Procedure is to require the plaintiff to identify "the circumstances

25   constituting fraud so that a defendant can prepare an adequate answer from the

26   allegations."  (Dkt. No. 43 at 8:9–10.)  The notion that Ericsson is not fairly

27   apprised of TCL's misrepresentation claims, and hence is unable to respond to

28

7

SMRH:429578117.1

1   TCL's complaint, is not credible.  As a result, Ericsson's motion to dismiss should

2   be denied.  To the extent Ericsson disputes TCL's misrepresentation claims, or

3   wants to quibble over details, those matters are better left for discovery and motions

4   for summary judgment.  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)

5   (holding that the plaintiff's complaint met "the particularity requirements of Rule

6   9(b)," even though the complaint did not allege "specific shipments to specific

7   customers at specific times with a specific dollar amount," and any disputes were

8   better addressed through discovery, summary judgment, and/or trial).

9          TCL's misrepresentation claims are clearly set forth in the complaint.  TCL's

10   theory is that Ericsson falsely promised to ETSI and 3GPP that it would license its

11   technology on FRAND terms in order to induce those organizations to adopt

12   Ericsson's technology, when in reality Ericsson had no intention of performing,

13   because instead Ericsson wanted to capitalize on its market power and extract non-

14   FRAND licensing terms from companies like TCL.  (SAC, ¶¶ 10, 33, 66–71, 92,

15   114–130.)  The misrepresentations which form the basis for TCL's claims are the

16   declarations from Ericsson to ETSI and 3GPP.  (*See id.*)  Ericsson is obviously

17   aware of the existence, dates, and subject-matter of its declarations to ETSI and

18   3GPP, and those documents are also publicly-available.  (Bader Decl. ¶ 1, Ex. 1, at

19   8–9.)

20          If necessary, TCL will amend its complaint to specifically identify Ericsson's

21   declarations to ETSI and 3GPP, but in TCL's view that is unnecessary and would

22   only serve to overcomplicate the complaint.  In its motion, Ericsson cites *Apple Inc.*

23   *v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846, 2011 WL 4948567, *4 (N.D. Cal.

24   Oct. 18, 2011) for the proposition "[m]ere allegations that a defendant submitted

25   false FRAND declarations during standards development, without supporting facts,

26   are 'not sufficient to put [that defendant] on notice of the particular misconduct that

27

28

1   creates the basis of the alleged fraud.'"  (Dkt. No. 43 at 8:18–21.)  This is

2   misleading, and *Apple Inc.* is distinguishable.

3        In *Apple Inc.*, the court was not analyzing a misrepresentation claim.  Instead,

4   the court was analyzing Apple's claim against Samsung for monopolistic conduct in

5   violation of Section 2 of the Sherman Act.  (*See* 2011 WL 4948567, *3.)  The only

6   reason the court discussed Rule 9(b) was because Apple's allegations regarding

7   Samsung's monopolistic conduct happened to sound in fraud.  Importantly, the court

8   did *not* reject Apple's theory that submitting a false declaration to a standard-setting

9   organization was wrongful conduct which could support Apple's claim for relief.

10  (*See id.* at *4 ("Although there does not appear to be anything legally defective

11  about Apple's theory of monopoly conduct arising from false FRAND licensing

12  terms . . .").)  Instead, the court believed it was insufficient for Apple to merely

13  present "two paragraphs [in its complaint] that support its claim that false FRAND

14  declarations were made."  (*Id.*)  Consequently, the court ordered Apple to identify

15  when the false declarations were made, by whom, and for which patents.  (*See id.*)

16  This was "important" because Apple had alleged that some, but not all, of

17  Samsung's patents were not essential, and hence Samsung was entitled to know

18  which patents were at issue.  (*See id.*, n.6.)

19        It would not be correct to read *Apple, Inc.* as establishing a general rule that a

20  misrepresentation claim in a FRAND case *always* must identify the date of each

21  declaration, who made the declaration, and for which patents, in order to comply

22  with Rule 9(b).  That would be an over-generalization of the case.  Instead, the court

23  in *Apple, Inc.* was merely trying to provide Samsung with fair notice of Apple's

24  claim.  As noted above, Ericsson has been fairly apprised of TCL's claim, and TCL

25  has certainly presented far more than two paragraphs addressing the purportedly

26  false nature of Ericsson's declarations to ETSI and 3GPP  Unlike what Apple

27  apparently alleged, TCL has comprehensively addressed the underlying technology

28

standards (SAC ¶¶ 51–65), Ericsson's role in developing those standards (*id.* ¶¶ 66–71), Ericsson's business strategy of monetizing its patent portfolio (*id.* ¶¶ 33, 92), Ericsson's submission of at least 23 declarations to ETSI and 3GPP declaring its patents to be essential to the standards (*id.* ¶¶ 10, 66–71), TCL's reliance on Ericsson's commitments (*id.* ¶¶ 72–76), Ericsson's improper insistence on non-FRAND terms in its negotiations with TCL (*id.* ¶¶ 77–95), and Ericsson's other forms of improper pressure on TCL.  (*Id.* ¶¶ 84–90.)  The nature of Ericsson's alleged misrepresentations, as alleged by TCL, has been presented clearly to Ericsson, and no further detail is required at the pleading stage.  For these reasons, Ericsson's motion should be denied.

## F.   TCL Properly Pled Its Claim for Unfair Competition.

The UCL defines "unfair competition" to include "any unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citation omitted).

The first reason TCL's claim for unfair competition survives is that TCL has otherwise alleged viable common law claims against Ericsson, including for fraudulent misrepresentation and negligent misrepresentation.  Ericsson acknowledges that if any of TCL's common law claims survives Ericsson's motion to dismiss, then TCL's claim for unfair competition would also survive.  (Dkt. No. 43 at 11:4–7, 13:10–18.)  Indeed, in *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007), the Ninth Circuit reversed the district court's dismissal of the plaintiff's unfair competition claim because the plaintiff had otherwise alleged a common law claim for interference with contract.

The second reason TCL's claim for unfair competition survives is that TCL's

allegations satisfy the "unfair" prong of section 17200.  The case of *Peoplebrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120, 2013 WL 843032 (N.D. Cal. Mar. 6, 2013), cited by Ericsson in its brief, explains the two-part test for determining if an unfair competition claim may proceed under the "unfair" prong of section 17200.  First, the court considers whether "specific legislation provides a 'safe harbor'" for the defendant's conduct.  *See id.* at *2 (citing *Cel-Tech*, 20 Cal. 4th at 182–83).  Importantly, the safe harbor "must actually 'bar' the action or clearly permit the conduct."  *Id.* (citing *Cel-Tech.*, 20 Cal. 4th at 182–83).  Second, if no legislation provides a safe harbor for the defendant's conduct, the conduct is "unfair" if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Id.* (citing *Cel-Tech.*, 20 Cal. 4th at 187).

Ericsson argues the defendant's conduct must violate antitrust law in order to also be considered "unfair" under section 17200, but the plain language of the above test demonstrates otherwise.  Indeed, *Peoplebrowsr* explained that "a violation of the unfair prong may be based on conduct that 'significantly threatens or harms competition,' regardless of whether it represents an actual or incipient violation of an antitrust law; it may also be based on a violation of the policy or spirit of one of those laws.  Thus, *a violation of the unfair prong of the UCL does not require a violation of the Sherman Act*."  *Id.* at *4 (emphasis added, citation omitted).  All TCL needs to allege is that Ericsson's conduct is anticompetitive, not that it constitutes full-blown tying or another violation of antitrust law.

Ericsson also argues that standards-setting is pro-competitive, and thus its conduct cannot be deemed anticompetitive under the law.  This, too, is not correct.  "[S]tandards may have both pro-competitive *and* anti-competitive effects."  *Apple Inc. v. Samsung Electronics Co., Ltd.,* No. 11-CV-01846, 2012 WL 1672493, at *1

1   (N.D. Cal. May 14, 2012) (emphasis added).  Regardless, Ericsson's argument is

2   beside the point because TCL does not allege that Ericsson's mere participation in

3   the standard-setting organizations is unfair under the section 17200.  Rather TCL

4   alleges that Ericsson violated section 17200 by, for example, falsely representing to

5   the standard-setting organizations that it would license its purportedly essential

6   patents on FRAND terms, inducing the standard-setting organizations to refrain

7   from adopting alternative technologies, and wrongfully exploiting its unfairly-

8   gained market power through unlawful licensing demands, which in turn harm

9   companies like TCL, as well as individual consumers who are forced to purchase

10  products that cost too much because the manufacturers were coerced into paying

11  excessive licensing fees by companies like Ericsson.  (SAC ¶¶ 133–143.)

12         In *Apple Inc. v. Samsung Electronics Co., Ltd.*, the Northern District of

13  California followed the Third Circuit and held that conduct just like Ericsson's, *i.e.*,

14  falsely promising to license purported standard essential patents on FRAND terms,

15  was anticompetitive:

16        *False FRAND Theory.*  An SSO can be used to obtain monopoly power
          and *create anticompetitive effects* on the relevant markets when "(1) in
17        a consensus-oriented private standard-setting environment, (2) a patent
          holder's intentionally false promise to license essential proprietary
18        technology on FRAND terms, (3) coupled with a standard setting
          organization's reliance on that promise when including the technology
19        in a standard, and (4) the patent holder's subsequent breach of that
          promise, *is actionable anticompetitive conduct*.
20

21  *Apple*, 2012 WL 1672394, at *7 (emphasis added) (citing *Broadcom Corp. v.*

22  *Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007)).  Similarly, TCL alleges (1) that

23  ETSI and 3GPP are consensus-oriented private standard-setting environments (*e.g.*,

24  SAC ¶¶ 3, 6, 38–43); (2) Ericsson intentionally and falsely promised to license its

25  purported essential patents on FRAND terms (*e.g.*, SAC ¶¶ 10, 78, 116–120); (3)

26  ETSI and 3GPP relied on Ericsson's promise when including Ericsson's technology

27  in the standards (*e.g.*, SAC ¶ 70); and (4) Ericsson breached its promise to license its

28

1  purported essential patents on FRAND terms (*e.g.*, SAC ¶¶ 12, 82–88, 100).  These

2  allegations are more than sufficient to survive Ericsson's motion to dismiss because

3  they allege that Ericsson's acts and practices threaten to (and do) harm competition.

4      Ericsson also contends that merely pricing a license to standard-essential

5  patents on terms that are too high does not qualify as competitive harm, citing

6  *Townshend v. Rockwell Intern. Corp.*, No. C-99-0400, 2000 WL 43305, at **8-9, 15

7  (N.D. Cal. Mar. 28, 2000).  However, as explained in *Apple*, *Townshend* "is

8  distinguishable" because "[i]n *Townshend*, the claimant failed to allege that the

9  standardization of the patented technology prevented the development of other

10 proprietary technologies, in other words, alternative technologies were excluded

11 through the standardization process."  *Apple*, 2012 WL 1672493, at *6.  In contrast,

12 TCL alleges that Ericsson's unfair conduct prevented the development and inclusion

13 of other, alternative technologies in the relevant standards.  (SAC ¶¶ 70, 117, 133.)

14     Contrary to Ericsson, TCL also sufficiently alleges that Ericsson's conduct in

15 bundling threatens to or harms competition.  Under the *Cel-Tech* standard for unfair

16 business practices, TCL need not allege full-blown tying, but merely conduct that

17 threatens to or harms competition.  "[A]nticompetitive effect can be proved by

18 showing that there is a commercially feasible alternative to the second product."

19 *U.S. v. Sunoco, Inc.*, No. 03-4625, 2006 U.S. Dist. LEXIS 58656, at *19 (D.N.J.

20 Aug. 9, 2006).  While Ericsson contends that there is no competitive offering

21 available, and thus no anticompetitive effect, that is wrong because TCL can obtain

22 pass-through licenses for at least the 3G related patents by purchasing products from

23 Qualcomm.  (SAC ¶¶ 136–142.)  As a result, Ericsson's practice of trying to force

24 TCL to license the 2G, 3G, and 4G patents together is unfair and anticompetitive

25 because TCL has other options available for the 3G patents.  Hence Ericsson's

26 practice unnecessarily drives up the price of the license, which in turn can hurt

27 consumers.

28

Lastly, the case of *In re Acacia Media Technologies Corp.*, No. C 05-01114 JW, 2005 1683660 (N.D. Cal. July 19, 2006) (*Acacia*), is on point, in that *Acacia* held that pursuing patent infringement lawsuits in bad faith constitutes anticompetitive conduct in violation of the "unfair" prong of section 17200. *See id.* at *4–5. Here, TCL has alleged that Ericsson has harassed TCL through bad faith patent infringement lawsuits around the world, in lieu of offering TCL licensing terms that are FRAND. (SAC, ¶¶ 84, 90.) This is yet another reason why TCL's unfair competition claim survives Ericsson's motion to dismiss.

## G.   TCL Properly Pled Declaratory Judgment for Non-Infringement of Ericsson's Patents.

Ericsson argues that TCL's declaratory judgment claims should be dismissed because it has failed to identify "a single TCL product alleged not to infringe." (Dkt. 43 at 28.) However, as Ericsson recognizes, TCL's declaratory judgment claims for non-infringement explicitly reference Ericsson's Complaint in Texas. (SAC ¶¶ 151, 160.) In Texas, Ericsson alleges that TCL's "smartphones and other mobile devices" which "include, but are not limited to, at least the Alcatel OneTouch Fierce" infringe the same Ericsson patents that TCL seeks a declaratory judgment that it does not infringe in this lawsuit. (Bader Decl. ¶ 3, Ex. 3, at ¶¶ 41, 50.) In considering a motion to dismiss "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, TCL's Counterclaims specifically refer to Ericsson's Complaint (SAC ¶¶ 150–153, 158–162.) Ericsson's Complaint is central to TCL's claim because it is the reason that TCL seeks a declaratory judgment of non-infringement. Further, Ericsson cannot contest the authenticity of its own Complaint. Thus, Ericsson cannot deny that it has sufficient notice of what products

1   TCL alleges do not infringe (i.e., TCL's "smartphones and other mobile devices"

2   which "include, but are not limited to, at least the Alcatel OneTouch Fierce").

3   Ericsson's motion should be denied.

4        **H.    TCL Properly Pled Declaratory Judgment Claim for Invalidity of**

5             **Ericsson's Patents.**

6        TCL alleges that that Ericsson patents asserted against TCL in Texas "are

7   invalid for failure to comply with the conditions of patentability specified in Title 35

8   of the United States Code, including without limitation Sections 102, 103 and 112

9   thereof." (SAC ¶¶ 155, 164.) Courts are split on whether allegations such as TCL's

10  satisfy the pleading requirements of *Twombly* and *Iqbal*.

11       This Court should follow the better reasoned line of cases represented by

12  *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156 (C.D. Cal. 2010).

13  In *Microsoft*, Judge Pfaelzer held that "[w]ith respect to invalidity counterclaims,

14  the Court agrees with other district courts that it would be incongruous to require

15  heightened pleading when the pleading standard for infringement does not require

16  facts such as 'why the accused products allegedly infringe' or 'to specifically list the

17  accused products.' In addition, because the Court requires that invalidity

18  contentions be served promptly after a counterclaim of invalidity is advanced,

19  invalidity claims are not subject to the heightened pleading standards of *Twombly*

20  and *Iqbal*. *Id*. at 1159 (citations omitted). *See also, e.g., Wistron Corp. v. Phillip M.*

21  *Adams & Assocs.*, No. C-10-4458, 2011 U.S. Dist. LEXIS 46079, at **36–37 (N.D.

22  Cal. Apr. 28, 2011); *Pfizer Inc. v. Apotex Inc.*, 726 F. Supp. 2d 921, 937–38 (N.D.

23  Ill. 2010); *Teirstein v. AGA Med. Corp.*, No. 6:08cv14, 2009 U.S. Dist. LEXIS

24  125002, at **9–17 (E.D. Tex. Feb. 13, 2009); *Elan Pharma Intern. Ltd. v. Lupin*

25  *Ltd.*, No. 09-1008, 2010 U.S. Dist. LEXIS 32306, at **11–16 (D.N.J. Mar. 31,

26  2010); *Palmetto Pharms. LLC v. AstraZeneca Pharms. LP*, No. 2:11-cv-00807,

27  2012 U.S. Dist. LEXIS 177185, at **18–21 (D.S.C. Nov. 6, 2012). Here, TCL

28

1   expects that the Court will likewise require it to serve detailed invalidity contentions

2   on Ericsson.  Thus, Ericsson's motion should be denied.

3        **I.      <u>TCL Properly Pled Direct Infringement of Its Patents.</u>**

4        TCL's allegations of direct infringement are well pled under Federal Circuit

5   precedent because they comply with Form 18 of the Appendix of Forms to the

6   Federal Rules of Civil Procedure ("Form 18") by identifying specific categories of

7   products that infringe.  "The touchstones of an appropriate analysis under Form 18

8   are notice and facial plausibility.  While these requirements serve as a bar against

9   frivolous pleading, it is not an extraordinarily high one." *K-Tech Telecommc'ns,*

10  *Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) (citations

11  omitted).  In *K-Tech*, the Federal Circuit held that "to the extent any conflict exists

12  between *Twombly* (and its progeny) and the Forms regarding pleadings

13  requirements, the Forms control." *K-Tech*, 714 F.3d at 1283–84.  Form 18 sets forth

14  a sample complaint for direct patent infringement and requires, *inter alia*, "a

15  statement that defendant has been infringing the patent [by making, selling, and

16  using [the device] embodying the patent.'" *Id.* at 1283.  The example that Form 18

17  provides is:  "[t]he defendant has infringed and is still infringing the Letters Patent

18  by making, selling, and using <u>electric motors</u> that embody the patented invention,

19  and the defendant will continue to do so unless enjoined by this court."  (Emphasis

20  added.)

21        Thus, Form 18 only requires an allegation of a general category of products.

22  Indeed, in *Unilin Beheer*, the Central District of California explained that

23  "complaints frequently survive a motion to dismiss when they accuse a general

24  category of products." *Unilin Beheer B.V. v. Tropical Flooring,* No. CV-14-02209

25  BRO, 2014 U.S. Dist. LEXIS 85955, at *8 (C.D. Cal. June 13, 2014).  Further, the

26  Federal Circuit in *K-Tech* stated that "[w]e do not read Form 18—or <u>*R+L*</u>

27  <u>*Carriers*</u>—to require that a plaintiff identify an accused product by name. *K-Tech*,

28

16

714 F.3d at 1286.

In its SAC, TCL identifies not merely general, but specific categories of products. TCL alleges that Ericsson infringes U.S. Patent No. 7,778,340 via its "4G LTE-compliant base stations for use in [] mobile telecommunications networks. (SAC ¶ 168.) TCL alleges that Ericsson infringes U.S. Patent No. 7,359,718 via its "4G LTE-complaint base stations and/or location servers (e.g., E-SMLCs that support location services, including, but not limited to, Enhanced Cell ID (E-CID) and Adaptive Enhanced Cell-ID (AECID)) for use in [] mobile telecommunications networks." (SAC ¶ 178.) This is more than sufficient to comply with Rule 18, and fairly puts Ericsson on notice of what TCL contends infringes and why (*i.e.*, compliance with the 4G LTE standards). *See, e.g., K-Tech,* 714 F.3d at 1281–82, 1287 (reversing dismissal where patentee alleged direct infringement via "systems and methods for modifying a major channel number, a minor channel number, and/or a carrier frequency to identify a television program"); *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1162–63 (C.D. Cal. 2010) (denying motion to dismiss where patentee alleged direct infringement via interactive voice response services).

## J.   **TCL Properly Pled Indirect Infringement of its Patents.**

### 1.   TCL adequately pled contributory infringement.

TCL sufficiently pleads its contributory infringement. There is a split of authority as to whether *Iqbal* and *Twombly* demand that a plaintiff alleging a claim for contributory infringement plead facts that establish the elements set forth in *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Those elements are: (1) direct infringement of the patents by a third party; (2) that the components present in the third party's allegedly infringing product were "material" and "had no noninfringing uses;" and (3) that defendants' contributory infringing was knowing and intentional." *Sony Corp. v. LG Elecs. U.S.A. Inc.*, 768

1    F. Supp. 2d 1058, 1063 (C.D. Cal. Apr. 18, 2011).

2        Ericsson cites an unpublished slip opinion from *Novatel Wireless, Inc. v.*

3 *Franklin Wireless Corp.*, No. 3:10-cv-02530 (S.D. Cal. Mar. 29, 2012), ECF No. 46,

4 in support of its argument that *Iqbal* and *Twombly* require more.  In *Novatel*, the

5 patentee did nothing more than allege infringement by "components that embody a

6 material part of the inventions described in the claims of the subject patent, are

7 known by defendants to be especially made or specially adapted for use in

8 infringement of the claims of the subject patent, and are not staple articles or

9 commodities suitable for substantial, non-infringing use, including mobile data hot

10 spots and wireless data modems and non-staple constituent parts of those modems."

11 *Id*. at 11.  By contrast, TCL alleges that Ericsson infringes because its accused

12 products comply with the 4G LTE standard.  (SAC ¶¶ 168, 178.)  By virtue of the

13 fact that the accused products are designed to comply with the 4G LTE standard,

14 they have no non-infringing uses.  *See Novatel*, 3:10-cv-02530, ECF No. 59

15 (denying motion to dismiss Novatel's <u>Second</u> Amended Complaint where Novatel

16 alleged that the "components are not staple articles or commodities suitable for

17 substantial non-infringing use because they are fundamental to and designed

18 specifically to provide functionality in mobile data hot spots and wireless data

19 modems that infringe the subject patent").  TCL pleads contributory infringement in

20 sufficient detail, and any more would require TCL to prove a negative at the

21 pleading stage.[3]

22

23 _____

   [3] In Ericsson's First Amended Complaint in Texas, Ericsson does not allege

24 contributory infringement in any more detail than what TCL alleges here.  Ericsson

25 summarily alleges that "direct infringement is the result of activities performed by

   manufacturers, resellers, and end-users of the Alcatel OneTouch Fierce in their

26 intended use," and that the "Alcatel OneTouch Fierce is material to the invention,

27 has no substantial non-infringing uses, and is known by TCL to be especially made

   or especially adapted for use in an infringement" of the patents-in-suit.  (Bader

28

## 2.     TCL adequately pled induced infringement.

TLC adequately alleges that Ericsson induces others to infringe.  "A complaint will generally satisfy pleading requirements [for inducement] if it alleges that the defendant is advertising an infringing use, or instructing customers how to use the products in an infringing manner."  *See Unilin*, 2014 U.S. Dist. LEXIS 85955, at **13–14 (precedent cited by Ericsson).  Here, TCL alleges that Ericsson induced others, "such as network operators" to infringe by "providing instruction and support."  (SAC ¶¶ 171, 172, 181, 182).  Further, TCL alleges inducement in more detail than the patentee in *Novatel*, who "fail[ed] to identify the third parties who were allegedly induced to infringe."  *Novatel*, No. 3:10-cv-02530, ECF No. 46 at 8.  *See also id*., ECF No. 59 (denying motion to dismiss Novatel's <u>Second</u> Amended Complaint where Novatel "sufficiently alleged intent to include with allegations that Franklin provided user manual to its distributors such as Sprint").

Moreover, the Court should not dismiss TCL's indirect infringement claims simply because TCL does not allege that Ericsson knew of the patents before TCL filed suit.  There is a split of authority regarding whether a patentee must plead pre-suit knowledge for claims of indirect infringement.  *Compare Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC, 2012 U.S. Dist. LEXIS 70614, at **11–18 (C.D. May 16, 2012) (requiring pre-suit knowledge); *with, e.g., Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565-66 (D. Del. 2012) (not requiring pre-suit knowledge); *MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 2:13-cv-03560-ODW, 2014 U.S. Dist. LEXIS 19142, at **9–11 (C.D. Cal. Feb. 14, 2014) (not requiring pre-suit knowledge).

This Court should follow the better reasoned *Walker Digital* line of cases (and the precedent from this district), which reasons that the patentee "would be prohibited from collecting damages related to indirect infringement for any pre-

---

Decl., Ex. 3, at ¶¶ 45, 46, 54, 55.)  The Court should not require TCL to plead in more detail than what Ericsson pleads.

SMRH:429578117.1

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
TCL'S SECOND AMENDED COMPLAINT

1   knowledge (e.g., pre-filing) conduct is the only substantive consequence of allowing

2   allegations such as those at bar to go forward." *Walker Digital*, 852 F. Supp. 2d at

3   565.  Further, "a defendant's receipt of the complaint and decision to continue its

4   conduct despite the knowledge gleaned from the complaint satisfies the

5   requirements of *Global-Tech*." *Id*.

6          Even the cases such as *Proxyconn* recognize that the patentee can simply

7   plead around the issue because "nothing prevents a plaintiff from filing a new

8   lawsuit alleging that the knowledge requirement is established because the

9   Defendant is aware of the previous lawsuit." *Proxyconn*, 2012 U.S. Dist. LEXIS

10  70614, at *17.  Thus, the *Walker Digital* court reasoned: "[g]iven the ease of

11  amendment, the limitation of damages to post-knowledge conduct, and in the

12  interests of judicial economy, the court finds that the better reasoning is to allow a

13  complaint that satisfies <u>Rule 8</u> to proceed to discovery rather than dismissing it for

14  lack of pre-filing conduct when, by the time the motion to dismiss has been filed,

15  defendant in fact has the requisite knowledge as pled by plaintiff." *Walker Digital*,

16  852 F. Supp. 2d at 566 n.11.  The Court should accordingly deny Ericsson's motion

17  to dismiss as to TCL's indirect infringement claims.

18        **K.    TCL Properly Pled Willful Infringement.**

19          Ericsson argues that TCL must allege pre-suit knowledge to adequately plead

20  willfulness.  Neither of the two cases that Ericsson relies upon stands for this broad

21  proposition.  *See Weyer v. MySpace, Inc.*, No. 2:10-cv-00499-MRP, 2010 U.S. Dist.

22  LEXIS 144008, at **11–12 (C.D. Cal. June 17, 2010) (patentee failed to allege "*any*

23  facts (other than in relation to allegations of direct infringement)" to support its

24  willfulness claim); *Gustafson, Inc. v. Intersys. Indus. Prod., Inc.*, 897 F.2d 508, 511

25  (Fed. Cir. 1990) (merely stating that "a party cannot be found to have 'willfully'

26  infringed a patent of which the party had no knowledge").

27          There is a split among courts regarding whether a patentee must allege pre-

28

suit knowledge for willfulness.  In *MyMedicalRecords*, Judge Wright found that:

> [T]he Federal Circuit did not explicitly hold that a plaintiff may never obtain redress for willful infringement based on postfiling conduct. … Since knowledge is required to subject a defendant to potential willful-infringement liability, knowledge should work both ways.  That is, if a plaintiff like MMR is able to establish the defendant's knowledge of the alleged infringement based on a prior, though superseded, complaint, the defendant should not be able to escape liability for conduct occurring after the plaintiff files its complaint.  Holding otherwise would again give a defendant free rein to willfully infringe a patent of which it is now blatantly aware simply because a plaintiff chose not to move for a preliminary injunction.  Such a result would eviscerate the whole basis behind enhanced damages for willful infringement.

*MyMedicalRecords*, 2014 U.S. Dist. LEXIS 19142, at \*\*14–15 (citations omitted). Thus, TCL should not be required to plead pre-suit knowledge.

Further, contrary to Ericsson's arguments, TCL has pled enough detail in its willfulness allegations.  Although authorities again conflict, courts have found that willfulness does not require pleading beyond the Rule 8 standard, that "it is clear that, unlike fraud, a claim of willful infringement if not subject to a heightened pleading standard."  *Cephalon, Inc. v. Sun Pharms.*, Ltd. No. 11-5474, 2013 U.S. Dist. LEXIS 144576, at \*\*11–14 (D.N.J. Oct. 7, 2013).  Thus, to state a claim for willful infringement, "a plaintiff must provide a pleading equivalent to 'with knowledge of the patent and of his infringement.'"  *Id.* at \*14 (citing *Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005)). Therefore, Ericsson's motion should be denied.

## L.   TCL's Declaratory Claims for Invalidity and Non-Infringement of Ericsson's Patents Are Proper Under Rule 12(b)(6), Rule 13(a), and the First-to-File Rule.

Continuing with its blatant forum shopping, Ericsson argues that the Court should invoke Rule 12(b)(6) and decline jurisdiction over TCL's claims for

21

1   declaratory judgment of non-infringement and invalidity of two of Ericsson's

2   patents ("TCL's DJ patent claims").  But the Court, considering all facts Ericsson

3   relies on in its latest motion, already granted TCL leave to file its DJ patent claims

4   in this case.  (Dkt. 39, at 9.)  The Court's previous ruling should stand, and the first-

5   to-file rule and Rule 13(b) dictate that Ericsson's motion should be denied.

6          1.      The Relevant Timeline of the California Action and the Texas

7                  Action.

8          TCL filed its original complaint in this case on March 5, 2014 alleging

9   various state-law causes of action based on Ericsson's failure to license its standard-

10  essential patents on FRAND terms.  (Dkt. 1.)  On May 12, Ericsson moved to

11  dismiss the original complaint.  (Dkt. 13.)  On June 2, TCL filed its First Amended

12  Complaint as a matter of right.  (Dkt. 24.)  On June 3, three months after TCL's

13  original complaint was filed, Ericsson filed suit in the Eastern District of Texas

14  seeking declaratory judgment that it complied with its FRAND obligations and

15  alleging that TCL infringes Patent Nos. 6,301,556 and 6,473,506 (the "'556 and

16  '506 patents").  *Ericsson Inc. v. TCL Communication Tech. Holdings, Ltd.*, No.

17  2:14-cv-00667 (E.D. Tex.) (the "Texas case").  On June 5, the Court denied

18  Ericsson's motion to dismiss the original complaint as moot in view of the First

19  Amended Complaint filed by TCL.  (Dkt. 25.)  On June 20, after the Court granted it

20  leave, TCL filed its SAC to allege claims for declaratory judgment of non-

21  infringement and invalidity of the '556 and '506 patents and that Ericsson infringes

22  TCL's Patent Nos. 7,778,340 and 7,359,718.  On August 15, TCL moved to transfer

23  the Texas case under 28 U.S.C. § 1404(a) to this Court.  That motion is pending.

24  (Bader Decl. ¶ 4, Ex. 4.)

25          2.      The California Action is the "First Filed Action".

26          Ericsson argues that TCL's DJ patent claims for Ericsson's patents should be

27  dismissed because the Texas action was filed first under the first-to-file rule.

28

However, TCL filed its original complaint on March 5, 2014, and Ericsson filed its original complaint three months later on June 9, 2014.  As a result, pursuant to Federal Rule of Civil Procedure 15(c)(1), the SAC and all of the additional claims therein relate back to March 5, 2014, the date of TCL's original complaint.  *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 990 (N.D. Cal. 2011); *see also Good Sportsman Mktg. LLC v. Testa Assocs., LLC*, No. 6:05-CV-90, 2005 U.S. Dist. LEXIS 29182, at **2–3, 7–10 (E.D. Tex. Sept. 1, 2005) (looking to the date of the original complaint in deciding which case was first-filed, regardless of the fact amended complaints were later filed).  Based on these facts, the California action is clearly the first-filed action for all pending claims, including those in the SAC.

The first-to-file rule seeks to avoid conflicting decisions and promote judicial efficiency by keeping claims stemming from sufficiently overlapping facts in the court where the first such claim was filed.  *Silver Line Bldg. Prods. LLC v. J–Channel Indus. Corp.*, 2014 WL 1221338, at **1–2 (Mar. 24, 2014 E.D.N.Y.) (applying Federal Circuit law, as required under *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).  The facts in this case and the Texas case are not merely substantially overlapping—they are identical.  Both operative complaints stem from the parties negotiations over Ericsson's allegedly standard-essential patents and the parties' dispute over what constitutes a FRAND rate.  (*See* Bader Decl. ¶ 3, Ex. 3, at ¶¶ 1, 11–29.)  Just as TCL accuses Ericsson of violating its FRAND obligations in this case, Ericsson seeks declaratory judgment that it does not violate those obligations in the Texas case.  (*Id.* at ¶¶ 58–64.)  Just as TCL validly asserts that the '556 and '506 patents are not infringed and are invalid in this case, Ericsson claims the opposite in the Texas case.  *Vivid Techs., Inc. v. Am. Science & Eng., Inc.*, 200 F.3d 795, at 801 (Fed Cir. 1999) ("An infringement counterclaim is compulsory in an action for declaration of non-infringement.")  In

1  both cases, the presiding court must decide whether Ericsson's patents are standard

2  essential, whether TCL practices those patents, and, if so, what the FRAND rate is.

3  Further, the parties to each cases are identical.  (*Id.* at 2 (case caption).)

4      The fact that Ericsson filed litigation in Texas based on the same operative

5  facts and involving the same parties does not strip this Court of its settled

6  jurisdiction over TCL's declaratory judgment claims of non-infringement and

7  invalidity of Ericsson's patents.  *Barnes & Noble*, 823 F. Supp. 2d at 987 (holding

8  that "the filing of a complaint triggers the first-filed rule, regardless of whether the

9  plaintiff later amends the complaint") (citing cases from the Supreme Court, the

10  2nd, 3rd, and 9th Circuits, the District of Delaware, the Eastern District of

11  Pennsylvania, and the Court of Claims).  Ericsson's motion should be denied.

12        3.    TCL's Declaratory Judgment Patent Claims Are Proper Under

13              Rule 13(a).

14      Ericsson asserts that TCL's declaratory judgment claims of non-infringement

15  and invalidity of Ericsson's patents should be dismissed because they are

16  compulsory counterclaims in the Texas case.  However, as discussed above, TCL's

17  California Action is the first filed case and the SAC relates back to the date of

18  TCL's original complaint, which was three months before Ericsson's Texas action.

19  *Barnes & Noble*, 823 F. Supp. 2d at 987.  Thus, Ericsson's patent infringement

20  claims are compulsory counterclaims to the California Action – not vice versa.

21  Under Rule 13(a), a counterclaim is compulsory if logically related to the main

22  claim through "the same aggregate set of operative facts … [that] serve as a basis of

23  both claims."  *Futurewei Techs., Inc. v. Acacia Res. Corp.*, 737 F.3d 704, 710 (Fed.

24  Cir. 2013) (quoting *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th

25  Cir. 1987)).  This rule is "particularly directed against one who failed to assert a

26  counterclaim in one action and then instituted a second action in which that

27  counterclaims became the basis of the complaint."  *S. Const. Co. v. Pickard*, 371

28

U.S. 57, 60 (1962).  Here, TCL asserts that the '556 and '506 patents are invalid and not infringed.  Thus, Ericsson's patent infringement claims are compulsory counter-claims in the California action.  *Vivid Techs.*, 200 F.3d at 801  ("An infringement counterclaim is compulsory in an action for declaration of non-infringement.").

## M.     If the Court Finds Any Claim to Be Deficient, TCL Should Be Given the Opportunity to Amend.

Under Rule 15(a), a party may amend its complaint only by leave of the court or by written consent of the opposing party or parties.  Fed. R. Civ. P. 15(a)(2).  Courts should "freely give leave when justice so requires."  *Id.*  The Ninth Circuit requires that courts grant leave to amend with "extreme liberality."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  The Court analyzes whether to grant leave to amend under the "*Foman* factors – undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendments, prejudice to the opposing party, or futility of amendment" led.  (Dkt. 39, at 9 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).)

The Court held that the *Foman* factors were not satisfied before granting leave for TCL to file its SAC.  Ericsson cannot point to anything since that would change that analysis.  Nor has TCL repeatedly failed to cure any deficiency that the current motion attacks.  Thus, for the reasons the Court allowed TCL to file its SAC, it should give it a first opportunity to cure any new deficiencies the Court may find with any of TCL's causes of action.

## III.   CONCLUSION

TCL's complaint sufficiently states each of its claim for relief against Ericsson.  For the reasons set forth herein, TCL respectfully requests that the Court deny Ericsson's motion to dismiss.

Dated:  August 25, 2014.

SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP


By: _____/s/ *Stephen S. Korniczky*_____
　　　　　STEPHEN S. KORNICZKY
　　　　　MARTIN R. BADER
　　　　　MATTHEW W. HOLDER
　　　Attorneys for TCL Communication
　　　　Technology Holdings, Ltd.

Case No. 8:14-cv-00341-JVS-AN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
TCL'S SECOND AMENDED COMPLAINT

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 24, 2014 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

By   /s/Stephen S. Korniczky
_____
Stephen S. Korniczky
Attorney for Plaintiffs,
TCL Communication Technology
Holdings, Ltd., TCT Mobile Limited, and
TCT Mobile (US) Inc.