SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations

STEPHEN S. KORNICZKY, Cal. Bar No. 135532
skorniczky@sheppardmullin.com
MARTIN R. BADER, Cal. Bar No. 222865
mbader@sheppardmullin.com
MATTHEW W. HOLDER, Cal. Bar No. 217619
mholder@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for TCL Communication
Technology Holdings, Ltd., TCT Mobile
Limited, and TCT Mobile (US) Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD. et al., <br><br> Plaintiffs, <br><br> v. <br><br> TELEFONAKTIEBOLAGET LM ERICSSON and ERICSSON INC., <br><br> Defendants. | Case No. 8:14-cv-00341-JVS-AN <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ERICSSON'S MOTION FOR RETURN, DESTRUCTION, OR CONFIDENTIAL TREATMENT OF "INADVERTENTLY DISCLOSED MATERIALS"** <br><br> Hearing Date: June 29, 2015 <br> Time: 3:00 PM <br> Place: Courtroom: 10C <br> Before Judge James V. Selna <br><br> [Redacted Version, <br> Conditionally Filed Under Seal] |

SMRH:437496239.3

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................... 1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 3

    A.    TCL Requested D████ts Relating to Ericsson's License Agreement with ████ and Others, Which Ericsson Has Failed to Produce ████ mely Manner. ................................... 3

    B.    TCL Reviewed the ████ Relevant Information Regarding the *Erics*████ Matter, and Discovered ████ vailable Infor ████ garding Ericsson and ████ Negotiations and Litigation Positions. ................................ 4

    C.    ████████████████████████████████ ████████████████████████████ .......................................... 6

III. ERICSSON IS NOT ENTITLED TO ANY OF THE RELIEF REQUESTED IN ITS MOTION. ................................................... 7

    A.    ████ s Obligation to Mark Its ████████ ████████ If Ericsson Did Not Wa ████ ................................................ 7

    B.    TCL Has No Obligation Under the ████████, and ████████████████████████ It ................................ 10

    C.    The Documents Cannot, and Should Not, Be Treated as Confidential Under the Protective Order in This Case. ..................... 11

    D.    Ericsson's Case Law Is Inapposite; Instead, the Case Law Supports TCL's A ████ Documents Was ████████████████████ ████████ ... .......................... 14

        1.    Ericsson's case law is inapposite because it involves a waiver analysis when a privilege is at issue. ............................. 14

        2.    TCL's case law is more applicable because it involves public disclosure of materials otherwise claimed to be confidential. ....................................................... 18

IV. CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Ameziane v. Obama*
620 F.3d 1 (D.C. Cir. 2010) ............................................................. 18

*Apple Inc. v. Samsung Elecs. Co.*
727 F.3d 1214 (Fed. Cir. 2013) .................................................... 18, 19

*KL Grp. v. Case, Kay & Lynch*
829 F.2d 909 (9th Cir. 1987) ...................................................... 14, 17

*Bagley v. TRW, Inc.*
204 F.R.D. 170 (C.D. Cal. 2000) .......................................... 11, 14, 15

*Carnegie Mellon Un. v. Marvell Tech. Group, Ltd.*
Case No. 09-cv-290, 2013 WL 1336204 (W.D. Pa. 2013) ........... 18, 19

*In re Copley Press, Inc.*
518 F.3d 1022 (9th Cir. 2008) ......................................................... 18

*Flores v. Albertson's, Inc.*
Case No. 01-cv-0515-PA(SHX), 2004 WL 3639290
(C.D. Cal. Apr. 9, 2004) ...................................................... 14, 15, 16

*Gambale v. Deutsche Bank AG*
377 F.3d 133 (2d. Cir. 2004) .......................................................... 18

*Horsehead Inds., Inc. v. Gramm*
1990 WL 142404 (S.D. N.Y. Jan. 25, 1990) ................................... 15

*Janssen Prods., L.P. v. Lupin Ltd.*
Case No. 10-cv-05954(WHW), 2014 WL 956086 (D.N.J. 2014) ..... 18

*Kirshner v. Uniden Corporation of America*
842 F.2d 1074 (9th Cir. 1988) ....................................................... 17

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*
Case No. 03-cv-7037 PKC, 2005 WL 66892 (S.D. N.Y. Jan. 11, 2005) ........... 15

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*
104 F.R.D. 103 (S.D. N.Y. 1985) .......................................... 14, 15, 16

*Nixon v. Warner Commc'ns, Inc.*
435 U.S. 589 (1978) ....................................................................... 19

*Phillips v. GMC*
307 F.3d 1206 (9th Cir. 2002) ........................................................ 11

*Smith v. Armour Pharma Co.*
838 F. Supp. 1573 (S.D. Fla. 1993) ................................................ 15

*United States v. Business of Custer Battlefield Museum and Store*
*Located at Interstate 90, Exit 514, South of Billings, Montana*
658 F.3d 1188 (9th Cir. 2011) ............................................................. 19

Rules

Federal Rule of Civil Procedure 26(a) ............................................. 12, 13

1    Plaintiffs TCL Communication Technology Holdings, Ltd., TCT Mobile

2  Limited, and TCT Mobile (US) Inc. (collectively, "TCL") hereby oppose the motion

3  filed by defendants Telefonaktiebolaget LM Ericsson and Ericsson, Inc.

4  (collectively, "Ericsson") on May 13, 2015, calling for the return, destruction, or

5  confidential treatment of "inadvertently disclosed materials."

6  **I.    <u>INTRODUCTION</u>**

7    The following facts are undisputed:  (1) since June 2014, TCL has been

8  asking Ericsson to produce documents regarding its license agreements with other

9  companies, as well as the negotiations which led to those agreements; (2) in ████

10 ████, in connection with litigation between Ericsson and ██████ before the

11 ████████████████████████ Ericsson's counsel ████████████████

12 ████████████████████████████ without any confidentiality

13 designation, such that the documents were available to the general public from that

14 point forward; (3) many of the documents uploaded by Ericsson's counsel in

15 ████████████ are highly relevant to this case—including because they evidence

16 discriminatory licensing offers by Ericsson—and are responsive to TCL's document

17 requests in June 2014; (4) in February 2015, counsel for TCL noticed the

18 ████████████████████████████████████████████████████

19 ████████ (5) the documents in question remained available to ████████████

20 ████████████████████████████████████ during which time

21 Ericsson has been in patent infringement litigation with at least seven other parties

22 who Ericsson says are unlicensed, and hence would have had an interest in the

23 documents ████████████████ and (6) to this day, Ericsson *still* has not

24 produced to TCL the documents which ██████████████████████████

25 ████████████████████████████

26    There is no basis for Ericsson's request for relief in this motion.  <u>First</u>, TCL

27 ████████████████████████████████████████████████████

28 ████████████ Ericsson's obligation to ████████████████ on its

1   ███████ The documents in question were not marked ████████████████████

2   ███████████████████████ <u>Second</u>, although Ericsson's

3   obligations under █████████████ likely explain why Ericsson felt

4   compelled to file this motion, █████████████ does not, and cannot,

5   impose any obligations on TCL, because TCL was not ████████████████

6   As such, TCL cannot be compelled to "return" or destroy documents ████████

7   ████████████████████████ <u>Third</u>, the documents in question are not "Protected

8   Information" under the protective order in this case, because they were not produced

9   by Ericsson to TCL as part of the discovery process.  Instead, they were ██████████

10  ████████████████████ In these circumstances, the protective order provides

11  that the documents in question *cannot* be regarded as confidential.  <u>Fourth</u>, the cases

12  Ericsson relies on are all inapposite, because they all concern a doctrine which

13  relates to the inadvertent production of *privileged* materials.  The documents

14  obtained by TCL are not privileged, and were not produced by Ericsson to TCL.

15  <u>Lastly</u>, TCL's cases are more applicable, because they hold that the confidentiality

16  of the documents in question was lost when they were █████████████████

17  and district courts lack the power to dictate the confidentiality of documents

18  obtained outside the confines of the litigation.

19      In sum, TCL ██████████████████████ when Ericsson's counsel made

20  them ██████████████████████ The documents are not privileged, are

21  highly relevant to this case (at a minimum, because they show discriminatory

22  licensing offers by Ericsson), and yet Ericsson *still* has not produced them to TCL

23  (even though TCL requested them one year ago).  Moreover, the documents ████████

24  ████████████████████████████ Ericsson ever raised a

25  concern, and ███████████████████████████

26  ████████████████████████ Under the law, TCL had

27  the ██████████████████████████████████████

28  ████████████████████████████████ For

1  all these reasons, the Court should deny Ericsson's motion and unseal Docket 152-5,

2  which was filed in support of TCL's FRAND contentions.

3  **II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

4        **A.     TCL Requested Documents Relating to Ericsson's License**

5               **Agreement with ▮▮▮▮ and Others, Which Ericsson Has Failed**

6               **to Produce in a Timely Manner.**

7       In ▮▮▮▮ Ericsson and ▮▮▮▮ entered into a license agreement

8  which covered, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮ (Decl. of Martin R. Bader, ¶ 2.)  The license agreement ▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮  (*See id.*)  Although the existence of the license agreement between

13  Ericsson and ▮▮▮▮ was a matter of public knowledge, when this litigation began

14  TCL did not have a copy of the license agreement, or any of the communications

15  which preceded the final agreement.  (*See id.*)

16       In June 2014, TCL propounded its first set of document requests on Ericsson.

17  TCL asked for, among other things, (1) all documents related to Ericsson's license

18  agreements which cover the same intellectual property at issue in this case (*e.g.*,

19  Ericsson's patents which are alleged to be essential to the 2G, 3G, and 4G

20  standards), including negotiations with other parties to the license agreements, and

21  (2) all documents related to FRAND royalty rates for the same intellectual property,

22  including negotiations regarding a FRAND rate.  (*See id.*, ¶ 3, Ex. 1 at Nos. 1-3.)

23  These documents are important because, among other things, they may tend to show

24  inconsistencies in the licensing terms offered by Ericsson to different parties (*i.e.*,

25  discrimination), and also because they might reflect Ericsson addressing issues

26  relevant to this case (*e.g.*, the proper royalty base, the importance of Ericsson's

27  patents to the standards at issue, the overall royalty burden faced by manufacturers

28  like TCL, etc.).  In August 2014, Ericsson promised to produce "responsive, non-

1    privileged documents found to be in its possession, custody, and/or control after a

2    reasonable search." (*See id.*, ¶ 3, Ex. 2 at Nos. 1-3.)

3        It is undisputed that Ericsson's license agreement with ███████, as well as

4    documents reflecting the negotiations which preceded that license agreement (*e.g.*,

5    the offers exchanged between the parties), are responsive to TCL's document

6    requests. Nevertheless, months passed before Ericsson produced any documents

7    relating to its agreement with ██████. Indeed, even though the Court entered a

8    protective order in this case on December 8, 2014, Ericsson did not ultimately

9    produce its license agreement with ██████ until March 5, 2015 – *three months*

10   after the entry of the protective order, and *nine months* after TCL requested the

11   license agreement. (*See id.*, ¶ 4.) Moreover, when Ericsson finally produced the

12   license agreement with ██████ it did not produce any of the negotiations which

13   preceded the agreement (*e.g.*, the parties' competing offers, communications

14   reflecting any analysis of the offers, etc.). (*See id.*)

15   **B.    TCL Reviewed the ██████ for Relevant Information**

16       **Regarding the *Ericsson v.* ██████ Matter, and Discovered**

17       **Publicly-Available Information Regarding Ericsson and ██████**

18       **Negotiations and Litigation Positions.**

19       In February 2015, counsel for TCL was reviewing ██████

20   ██████████████████████████████████████████████

21   ████████████████████ in order to obtain any relevant documents from ██

22   ████████████████████ and also to identify relevant documents that

23   were not publicly available (so that TCL could, in turn, specifically demand that

24   Ericsson produce such documents). (Decl. of Ryan P. Cunningham, ¶¶ 4, 5.) ██████

25   is a free resource, and TCL's counsel only needed ██████████████

26   ██████████████████████████████████████ (*See id.*,

27   ¶ 2.) TCL's counsel was looking for relevant documents on ████ because Ericsson

28   had failed to produce documents from ████████████ in a timely manner (as

-4-

1  addressed in the preceding section).  Indeed, Ericsson had represented to TCL that it

2  had destroyed many of the relevant documents from ████████████████ *after*

3  TCL filed this lawsuit.  (*See id.*, ¶ 5.)  Consequently, counsel for TCL wanted to see

4  what, if any, relevant information could be gleaned from ████████████  (*See id.*)

5  During this review of ████████████  counsel for TCL discovered a large

6  number of ███████████████████  They were ████████████

7  ████████████████████████████████████████

8  (*See id.*, ¶ 6.)  The documents in question originally had been filed by Ericsson in

9  ████████████████████████████████████████

10  (Dkt. 213 at 8:1-8.)  Accordingly, counsel for TCL ████████████████

11  ████████████(Cunningham Decl., ¶ 6.) ████████████████

12  ████████████████████████████████████

13  ████████████  (*See id.*)

14  Some of the ████████████████████████ are

15  highly relevant to the current litigation, in that they reflect Ericsson and ████████

16  competing positions regarding various issues relevant to their FRAND dispute, as

17  well as prior licensing terms proposed between the parties.  (*See id.*, ¶ 7.)  One

18  particular exhibit shows that on ████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████

21  (*See id.*, ¶ 8, Ex. 2 at CDX-2022.)  This document is notable because ████████

22  ████████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████  (*See id.*,

25  ¶ 9, Ex. 3 at pp. 21-22.)  Clearly, the terms Ericsson offered to ████████ were ████

26  ████████████████████████████████████████

27  ████████  These differences are not inconsequential; ████████████████

28  ████████████████████████████████  given the

1  volume of phones manufactured and sold by TCL.

2      **C.**    **Counsel for TCL** ████████████ .

3  ████████████████████████████████████████

4      **While Ericsson Still Has Not Produced** ████████ **to TCL.**

5      Shortly after ████████████████████████████████

6  ████████████████████████████████████

7  (Bader Decl., ¶ 5.)  This was before Ericsson raised any concern regarding the

8  ████████████████ (*See id.*)  One of the ████████████████

9  ████████████████████████ also was used in connection with

10  TCL's FRAND contentions filed on April 13, 2015.  (Dkt. 154 at 14:20-27.)  In

11  early April 2015, TCL produced to Ericsson the portion of ████████████████

12  which appeared relevant to the issues in this case.  (Bader Decl., ¶ 5.)

13      To the best of TCL's knowledge, as of the filing of this opposition brief,

14  Ericsson *still* has not produced to TCL ████████████████

15  ████████████████████████████████

16  ████████████████████ (*See id.*, ¶ 6.)  According to

17  Ericsson's counsel, Ericsson does not believe it is permitted to produce the ████

18  to TCL without ████ consent, and ████ has not yet provided its consent.

19  (*See id.*)  Thus, absent the fact ████████████████████████

20  ████████████████████████████ TCL *still* would

21  not be in possession of the documents, even though they were requested in June

22  2014, and are highly relevant to this litigation.

23      Indeed, absent TCL's ████████████████, it is possible

24  Ericsson never would have produced the documents to TCL.  Since at least

25  November 2014, TCL has been pressing Ericsson to account for and produce

26  ████████████████████████ (*See id.*, ¶ 7, Exs. 4, 5.)

27  Initially, Ericsson's response in November 2014 was that it had destroyed much of

28  ████████████████████████████

1  ███████ and that as to the rest, "we repeated our search and re-confirmed that

2  Ericsson has indeed produced to TCL all of the requested invalidity contentions,

3  invalidity claim charts, alleged prior art, and invalidity expert reports in Ericsson's

4  possession." (*Id.*, ¶ 8, Ex. 6.) Yet following TCL's discovery of ███████

5  ███ as well as TCL's persistent efforts to obtain more information from Ericsson

6  regarding the status and availability of relevant documents from the *Ericsson v.*

7  ███████ litigation, Ericsson's position has changed dramatically.

8     In particular, on June 2, 2015, following numerous letters between the parties,

9  Ericsson represented that it has identified *additional* materials from the *Ericsson v.*

10  ███████ litigation regarding prior art, invalidity, and claim charts, and will be

11  producing those documents to TCL. (*See id.*, ¶ 9, Ex. 7 at pp. 2-5.) Indeed,

12  Ericsson recently produced almost 70,000 pages to TCL, most of which are from the

13  *Ericsson v. Samsung* litigation, and Ericsson has suggested that thousands more

14  pages will be produced. (*See id.*, ¶ 10.) Ericsson's new position is fundamentally

15  inconsistent with its representation in November 2014 that it had produced all

16  available documents to TCL, and raises the disturbing possibility that had TCL not

17  discovered ███████ and continued to press the issue,

18  then Ericsson may have never produced the documents to TCL.[1]

19  **III.   ERICSSON IS NOT ENTITLED TO ANY OF THE RELIEF**

20  **       REQUESTED IN ITS MOTION.**

21  **       A.   It Was Ericsson's Obligation to Mark ███████**

22  **            ███████ If Ericsson Did Not Want the Public to Have**

23  **            Access to Them.**

24     Throughout its motion, Ericsson repeatedly insinuates that TCL has behaved

25  wrongfully with respect to ███████ and/or that TCL,

26  rather than Ericsson, is to blame for the current situation. This is false and without

27  _____

28  [1] TCL is continuing to meet and confer with Ericsson regarded related issues, and motions to compel, and/or motions for other relief given Ericsson's destruction of documents, may still be necessary. (*See id.*)



1  merit in every respect.  TCL had ███████████████████████ in question,

2  and rely on the way Ericsson ████████████████████████

3      First, ███████████████████████████████████████

4  █ ███████████████████████████████████████████

5  █████████████████████████████████████████

6  ████" (Cunningham Decl., ¶ 11, Ex. 4 (emphasis added).)  In a similar vein,

7  █████████████████████████████████████████

8  ████████████████████████████████████████

9  ██████████████████████████████████████████

10 █████████████████████████████████████████

11 ████████████████████████████████████████

12 ██████████████████████████████████████████

13 █████████████████████████████████████████

14 ██████████████████████████████████████████

15 ████████████████████████████████████████

16 █████████████████████████████████████████

17 ██████████████████████████████████████████

18 █████████████████████████████████████████

19 ██████████████████████████

20     The above language is conspicuously absent from Ericsson's motion.  Instead,

21 Ericsson selectively identifies only the portion of ████████████████

22 █████████████████████████████████████████

23 ████████████████████████████████ (Dkt. 213 at 4:16-

24 21.)  Yet this language had no bearing on TCL's ████████████████

25 █████████████████████████████████ and hence not

26 involved in Ericsson's creation ██████████████████████

27 ██████████████████████ was "unauthorized," *i.e.*, the result of a mistake

28 ██████████████████████ by Ericsson.  To the contrary, the fact the

1  documents were available to TCL was entirely consistent with how Ericsson's

2  counsel ████████████████████████████████████████

3  ███████████████████████████████████████ █████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  █████████████████████████████████████████████████████████

7  █████████████████████████████████████████████

8  ███████████████████████████ Here, none of the pages in any of the

9  documents in question contained such a header denoting the presence of confidential

10  information.  (*See id.*, ¶ 15.)

11      Likewise, █████████████████████████████████████

12  █████████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ██████████████████████████████████████████████

15  █████████ Once again, █████████████████████████████████

16  ████████████████████████████ (*See id.*, ¶ 14.)

17      Finally, Ericsson █████████████████████████████████

18  ██████████████████████████████████████████

19  ██████████████████████████ was presumably created by

20  Ericsson's counsel.  Thus, not only did Ericsson fail to █████████████████

21  ███████████████████████████████████████████████

22  ████████████████████████████████████████████

23  █████████████████████████████ Certainly TCL's counsel was entitled

24  to rely on this affirmative representation from Ericsson.

25      In its motion, Ericsson notes that some of the documents in question

26  contained *internal* references to *other* █████████████████████████████

27  █████████████████████████████████████████████████████

28  (Dkt. 213 at p. 4, n.1.)  However, this fact (even if noticed) would not have led

1    TCL's counsel to conclude ███████████████████████████████████

2    ██████████████████████████████████████████████████████████████

3    ████████████████████ (Cunningham Decl., ¶ 14, Ex. 5 at p. 14.)  Thus, it was

4    possible Ericsson was ████████████████████████████████████████

5         Either way, under the circumstances set forth above, it is unreasonable and

6    hypocritical for Ericsson to suggest TCL "should have known better."  To recap, the

7    ██████████████████████████████████████████████████████████████

8    (*Id.*, ¶ 11, Ex. 4.)  Ericsson admits the ████████████████████████

9    ████████████████████████████ and further admits that

10   when the documents were exchanged with ███████████████████████

11   ██████████████████████████████████████████████████████████████

12   ████ (Dkt. 213 at 7:13-27.)  Indeed, ████████████████████████

13   ██████████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ███████████ (Cunningham Decl., ¶¶ 14-17.)

17      **B.**   <u>**TCL Has No Obligation Under the ████████████████ and**</u>

18      <u>**Cannot Be Required Return or Destroy Documents Which It**</u>

19      <u>**Lawfully Obtained from ████████████████**</u>

20        In its motion, Ericsson argues TCL should be required to return or destroy the

21   █████████████████████████████████████ in the *Ericsson v.*

22   ████████ matter.  (Dkt. 213 at pp. 9-11, 16-17.)  There is no basis for Ericsson's

23   request.  TCL was not a party in the *Ericsson* ██████████████████ and is not

24   governed by the protective order in that case.  Although Ericsson may owe various

25   duties under the ████████████████ and very likely felt compelled to file the

26   current motion because of those duties, Ericsson's duties under the ████████████

27   ████ do not extend to TCL, or subject TCL to any obligations in relation to

28   documents which TCL ████████████████████████████ Indeed, when this

1   dispute arose, Ericsson asked TCL to sign ███████████████ and TCL

2   refused, explaining to Ericsson that it had no obligation to do so.  (Dkt. 216

3   (Fitzgerald Decl.), Exs. 7, 8.)

4        Ericsson does not cite any language in ███████████████ which would

5   impose a duty on TCL.  Nor does Ericsson cite any relevant legal authority in

6   support of its request that TCL ████████████████████████████  The

7   first case cited by Ericsson is *Phillips v. GMC*, 307 F.3d 1206, 1209 (9th Cir. 2002).

8   (Dkt. 213 at 11:16-20.)  It is fitting that Ericsson quotes *Phillips* for the proposition

9   that courts should be "inventive," because *Phillips* provides no support for

10  Ericsson's request.  Instead, *Phillips* merely concerned whether settlement

11  information should be covered by a protective order.  *See* 307 F.3d at 1211-12.  The

12  other case Ericsson cites is *Bagley v. TRW, Inc.*, 204 F.R.D. 170 (C.D. Cal. 2000)

13  ("*Bagley*").  (Dkt. 213 at 11:20-22.)  *Bagley*, too, is inapposite.  *Bagley* involved

14  attorney-client privileged documents which were inadvertently produced by a

15  litigant in response to a subpoena from the other party.  *See* 204 F.R.D. at 172-73.

16  There are strong policy reasons for limiting the circumstances in which the attorney-

17  client privilege can be deemed waived.  *See id.* at 183.  The client is the holder of

18  the privilege, and third parties have no right to see or use privileged documents,

19  even if the client's lawyer mistakenly discloses a privileged communication.  In

20  contrast, ████████████████████ TCL's counsel were not privileged.  To the

21  contrary, they are responsive to TCL's pending document requests, TCL had a right

22  ████████████████████ in discovery, and TCL's counsel ████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████   In these circumstances, it is meritless for

25  Ericsson to ask that TCL ████████████████████████████████

26        **C.    The Documents Cannot, and Should Not, Be Treated as**

27               **Confidential Under the Protective Order in This Case.**

28        Ericsson next argues the documents in question can and should be treated as

1    "Protected Information" under the protective order in this case, and specifically that

2    the documents should be limited to "Outside Attorney's Eyes Only" (meaning they

3    could not be shared with anyone internal to TCL, including in-house counsel).  (Dkt.

4    213 at pp. 12-15, 16-17.)  Ericsson also quotes from the protective order in arguing

5    that it is appropriate to treat the documents as for "Outside Attorney's Eyes Only"

6    because "[u]nauthorized or inadvertent disclosure does not change the status of

7    Protected Information or waive the right to hold the disclosed document or

8    information as Protected Information."  (*Id.* at 14:7-10, 17:2-5.)

9    First, some of the documents in question █████████████████████

10   ████████████████████████████████████ (Bader

11   Decl., ¶ 5.)  Again, this was appropriate because TCL's counsel ████████

12   ████████████████████████████████████████

13   ████████████████████████ Because TCL's ████████████

14   ████████████████████████████████████████

15   "Outside Attorney's Eyes Only" moving forward.

16   Second, the documents in question are not, and cannot be, "Protected

17   Information" under the protective order in this case, because TCL ████████

18   ████████████████████████████████ via a discovery

19   request and/or production from Ericsson.  The protective order defines the term

20   "Protected Information" to mean "any Discovery Material that the Disclosing Party

21   in good faith designates as 'CONFIDENTIAL,' 'CONFIDENTIAL – OUTSIDE

22   ATTORNEY'S EYES ONLY,' or 'CONFIDENTIAL – OUTSIDE ATTORNEY'S

23   EYES ONLY – SOURCE CODE' pursuant to this Confidentiality Order, and any

24   excerpts of such information included in other documents."  (Dkt. 72 at 5:22-28.)

25   Likewise, the protective order defines the term "Discovery Material" as documents

26   and information, etc., "produced or provided by any party or non-party or obtained

27   by any party during discovery or in connection with Rule 26(a) disclosures in this

28   action . . . ."  (*Id.* at 5:4-12.)

1    These definitions make clear that the documents in question are not

2  "Protected Information."  In particular, the documents are not "Discovery Material"

3  because they were not "produced or provided" by any party or non-party, nor did

4  TCL's counsel obtain them "during discovery or in connection with Rule 26(a)

5  disclosures."  In addition, the documents were not provided by a "Disclosing Party,"

6  or marked with any confidentiality designation.  Instead, TCL's ███████████

7  ████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ██████    Indeed, it is rather galling for Ericsson to characterize the documents in

10  question as "Protected Information" when TCL asked Ericsson to produce the

11  documents in June 2014, and yet Ericsson *still* has not produced the documents to

12  TCL via the discovery process in this case.

13    The more relevant section of the protective order is section III.J on page 8.

14  That section—which goes completely unaddressed in Ericsson's motion—defines

15  what is *not* to be treated as confidential under the protective order.  For example,

16  "any information which, at the time of disclosure to a Receiving Party, is ████████

17  ███████████████   is not to be treated as confidential.  (Dkt. 72 at 8:14-15.)  Here,

18  ████████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████

20  ████████████████████████████   exactly as Ericsson's counsel instructed.  The

21  fact Ericsson now says its failure to mark the documents ████████████████

22  ████████████████████████████████████████   Also, "any

23  information that a Receiving Party can show was received by it . . . from a source

24  other than the Producing Party who obtained the information lawfully and under no

25  obligation of confidentiality to the Producing Party" is not to be treated as

26  confidential.  (*Id.* at 8:20-24.)  Again, the documents were ████████████████

27  ████████████████   had no contrary obligation to Ericsson because Ericsson

28  specifically requested that the documents be ████████████████████████████

-13-

1     █████████████████████ Indeed, the documents were ██████ exactly as

2 Ericsson's counsel requested they be filed, *i.e.*, █████████████████████

3 █████████████████████████████████████████████████████████

4 ████████████████████████████

5     **D.**     **Ericsson's Case Law Is Inapposite; Instead, the Case Law Supports**

6     **TCL's Argument that the Confidentiality of the Documents Was**

7     ████████████████████████████████████

8         1.     Ericsson's case law is inapposite because it involves a waiver

9             analysis when a privilege is at issue.

10     Ericsson's motion characterizes this situation as involving an "inadvertent

11 disclosure," and then relies on cases which ostensibly address the issue of "fairness"

12 in the context of such "inadvertent disclosures." (Dkt. 213 at pp. 20-23, citing and

13 discussing *Bagley*, *KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909 (9th Cir. 1987)

14 ("*KL*"), and *Flores v. Albertson's, Inc.*, Case No. 01-cv-0515-PA(SHX), 2004 WL

15 3639290 (C.D. Cal. Apr. 9, 2004) ("*Flores*").) Ericsson even goes so far as to argue

16 that these "courts have found that the 'overriding issue of fairness' will support a

17 no-use-at-all order" under circumstances similar to those present here. (*Id.* at 20:24-

18 25.) The problem with Ericsson's argument is that these cases are inapplicable, as

19 they apply a doctrine which concerns the inadvertent disclosure of *privileged*

20 materials, and the parties' current dispute has nothing to do with any privilege.

21     *Bagley* has a comprehensive discussion of this issue. In short, when

22 analyzing whether a waiver has occurred in connection with inadvertent production

23 of privileged documents, most courts typically apply a five-factor test. *See* 204

24 F.R.D. at 177. The factors are (1) the reasonableness of the precautions taken to

25 prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope

26 of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of

27 fairness. *See id.* As *Bagley* recognizes, this test can be traced back to the district

28 court's opinion in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D.

103 (S.D. N.Y. 1985) ("*Lois Sportswear*"), which concerned the inadvertent disclosure of privileged documents in discovery (as did *Bagley*).  *See id.* at 178; *see also Lois Sportswear*, 104 F.R.D. at 105.

Based on TCL's research, with just one exception (the *Flores* case, discussed below), all of the cases which have cited to *Lois Sportswear* for its five-factor test (over 150) have done so in the context of a claim of privilege (typically the attorney-client privilege, but other privileges as well).  Indeed, one such case notes that "the case law governing inadvertent production concerns *only* documents that would otherwise be protected by privilege or work-product immunity."  *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, Case No. 03-cv-7037 PKC, 2005 WL 66892 (S.D. N.Y. Jan. 11, 2005) (emphasis added), citing *Horsehead Inds., Inc. v. Gramm*, 1990 WL 142404, *2-6 (S.D. N.Y. Jan. 25, 1990)  Further, another case persuasively explains why the rationale supporting the rule announced in *Lois Sportswear* does not carry over to a dispute regarding confidentiality (as distinguished from privilege):

> Recognizing that, in practical terms, the contents of the document are no longer confidential is different from ruling that, in legal terms, the client holding the privilege has lost the privilege because someone else disclosed the document to the public. . . .  In the case of the attorney-client privilege, it is the client who holds the privilege and who must be found to have intentionally waived his rights.  The fact that the contents of the document have become widely known is not dispositive of the legal privilege attaching to the document.

*Smith v. Armour Pharma Co.*, 838 F. Supp. 1573, 1576 (S.D. Fla. 1993).  In other words, the client is the holder of the privilege, and third parties have no right to see or use privileged documents, even if the privileged communication is mistakenly disclosed.  The same cannot be said of a communication that was merely intended to be confidential (but is not privileged), and was mistakenly disclosed.

1    The only case TCL is aware of which applies the five-factor test from *Lois*
2  *Sportswear* in a context other than privilege is *Flores*. In *Flores*, the plaintiff class
3  members produced payroll records to the defendant, and some of the payroll records
4  were unredacted. The unredacted payroll records reflected the class members'
5  Social Security Numbers. *See* 2004 WL 3639290, *1. After the plaintiffs' counsel
6  claimed this was inadvertent and asked the defendant to return the unredacted
7  records, the defendant refused and filed a motion demanding that all class members
8  provide unredacted records. The defendant's motion also sought an order allowing
9  it to keep the unredacted records. *See id.* In denying the defendant's motion, the
10 *Flores* court relied heavily on a prior order in the case which found that documents
11 such as tax returns, W-2 forms, and immigration records were not relevant to any
12 claim or defense in the case, and were being sought by the defendant to harass the
13 plaintiffs. The court ruled that the plaintiffs' Social Security Numbers should
14 receive the same protection. *See id.* at *2-4. In so ruling, the court briefly touched
15 on the five-factor test from *Lois Sportswear*. *See id.* at *1, 4-5. Oddly, the *Flores*
16 court acknowledged that the test governs cases involving the inadvertent disclosure
17 of privileged material, but did not comment on, or otherwise analyze, why the test
18 should be applied to a dispute over Social Security Numbers (which, to the best of
19 TCL's knowledge, do not implicate a privilege). *See id.* In any event, even under
20 the five-factor test from *Lois Sportswear*, the court's holding ultimately traced back
21 to the prior order which supported the court's conclusion that the Social Security
22 Numbers were not relevant, and were being sought to harass the plaintiffs, and
23 hence the unredacted payroll records (which had been produced inadvertently)
24 needed to be returned to the plaintiffs. *See id.* at *5.
25    Although TCL respectfully submits it was erroneous for the *Flores* court to
26 apply the five-factor test from *Lois Sportswear* (because the case did not involve a
27 privilege), the case is also clearly distinguishable on its facts. In *Flores*, the
28 documents were inadvertently produced as part of a discovery exchange between the

1  parties to the lawsuit, and the court had already held that the type of information in

2  the documents which attracted the defendant's attention—the plaintiffs' Social

3  Security Numbers—was not relevant to the case, and not fair game for discovery.  In

4  contrast, TCL ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████████  Also, the documents obtained by

8  TCL are highly relevant to this litigation, and greatly support TCL's claims and

9  defenses.  Again, not to place too fine a point on the issue, but the documents *still*

10  have not been produced by Ericsson in this litigation, even though TCL formally

11  requested them from Ericsson in June 2014, *one year ago*.

12        To the extent the Court believes cases involving privilege may still be

13  relevant, the case of *Kirshner v. Uniden Corporation of America*, 842 F.2d 1074

14  (9th Cir. 1988) is far more applicable to this dispute than any of Ericsson's cases.  In

15  *Kirshner*, the Ninth Circuit held that a district court may not issue a protective order

16  with respect to attorney-client privileged documents obtained through means other

17  than the court's discovery process.  There, the documents were obtained via

18  discovery in a different litigation.  The court held that the cases relied on by

19  Ericsson (*e.g.*, *KL*) are "inapposite to the problem presented in the instant matter,

20  where the documents were obtained in a separate action."  *Id.* at 1080.  Indeed, "a

21  district court's power to control discovery does not extend to material discovered in

22  a separate action, notwithstanding the fact that the parties were identical."  *Id.* at

23  1081.  As a result, "the district court lacked the power to issue a valid protective

24  order to compel the return of documents obtained through discovery in a separate

25  action."  *Id.*  *Kirshner* applies here, because TCL ████████████████████████

26  ██████████████████████████  unrelated to this case.

27

28

2.   TCL's case law is more applicable because it involves public disclosure of materials otherwise claimed to be confidential.

In addition to *Kirshner*, the authority relied on by TCL in opposing Ericsson's original *ex parte* application to seal Docket 152-5 is far more applicable, and Ericsson's attempt to distinguish TCL's authority is unavailing.  The thrust of Ericsson's argument is that TCL's cases are distinguishable because there, the documents and information in question still remained available to the public, whereas here (according to Ericsson's argument), "the genie is back in the bottle" given that ███████████████████████████████████.  (Dkt. 213 at pp. 17-20.)  Ericsson's argument is wrong on both the law and the facts.

Regarding the law, TCL's cases apply a legal rule that is not limited to situations where it is undisputed the documents *remain* ████████████████ ██████████████████████  Rather, the cases more generally stand for the proposition that confidentiality is lost *once* the document is made public.  For example, in *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008), the Ninth Circuit explained that "[s]ecrecy is a one-way street:  Once information is published, it cannot be made secret again."  This statement was made in the context of whether to accept an appeal from an interlocutory order, and had nothing to do with the extent to which the documents might ultimately be available to, or disseminated within, the public.  The same is true of *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013), and *Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010).  In *Janssen Prods., L.P. v. Lupin Ltd.*, Case No. 10-cv-05954(WHW), 2014 WL 956086, *3 (D.N.J. 2014), the court explained that "[i]t is well established that once confidential information has been published, it is no longer confidential."  The court then said "[this] law is dispositive to this appeal," before *later* noting—merely for good measure—that the information "indeed remains available."  *Id.*  Likewise, in *Carnegie Mellon Un. v. Marvell Tech. Group, Ltd.*, Case No. 09-cv-290, 2013 WL 1336204, *5 (W.D. Pa. 2013), the court explained the general legal proposition that

-18-

TCL'S OPPOSITION TO ERICSSON'S MOTION RE ████████

1   "[p]revious public disclosure of information in open court, and even outside of

2   court, operates to waive any right to seal judicial records." *See also Gambale v.*

3   *Deutsche Bank AG*, 377 F.3d 133 (2d. Cir. 2004) (holding that "however

4   confidential [the settlement information] may have been beforehand, subsequent to

5   publication it was confidential no longer," and hence "[w]e simply do not have the

6   power, even if we were of the mind to use it if we had, to make what has thus

7   become public private again").

8       All of these cases are based on the public's "general right to inspect and copy

9   public records and documents, including judicial records and documents." *Apple*,

10  727 F.3d at 1221, quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597

11  (1978) (internal quotation marks omitted).  The documents in question here, which

12  were ████████████████████████████████████████████████████

13  ████████████ to which the general right to inspect and copy applies.  The Ninth

14  Circuit has held that "[w]hen the common law right of access applies to the type of

15  document at issue in a particular case, 'a 'strong presumption in favor of access' is

16  the starting point.'"  *United States v. Business of Custer Battlefield Museum and*

17  *Store Located at Interstate 90, Exit 514, South of Billings, Montana*, 658 F.3d 1188,

18  1194 (9th Cir. 2011).  Ericsson, as the party seeking records, must "articulate

19  compelling reasons supported by specific factual findings that outweigh the general

20  history of access and the public policies favoring disclosure . . . ." *Apple*, 727 F.3d

21  at 1221.  Courts have held that when the information sought to be sealed already has

22  been publically disclosed, the party's interest in secrecy "is not to be weighed

23  heavily by the Court in its determination of disclosure." *Carnegie Mellon*, 2013 WL

24  1336204, at *5.  Accordingly, Ericsson's private interest in maintaining the

25  confidentiality of the documents no longer exists because ████████████████

26  ██████████████

27       It is also wrong for Ericsson to contend that "the genie is back in the bottle"

28  merely because the ████████████████████████████████  Not only did TCL's

1   █████████████████████████████████████████████

2   ██████████████████. Thus, it would be futile to attempt to treat the documents

3   as for "Outside Attorney's Eyes Only" moving forward.  In addition, the █████

4   ████████████████████████████████████████████

5   ████████████████████████████████████████████

6   (unlike Westlaw or PACER, which charge a fee).  Although Ericsson says it has no

7   evidence anyone other than TCL has accessed the documents, the more relevant

8   question is whether Ericsson can prove that no one else has accessed the documents.

9   As noted earlier, Ericsson has confirmed in discovery responses that it is presently

10  litigating patent infringement claims ████████████████████████████

11  ████████████████████████████████████████████

12  █████████████████████ (Bader Decl., ¶ 11, Ex. 8 at Interrogatory No. 17,

13  pp. 17-19.)  It is possible some or all of these parties ██████████████████

14  ████████████████████████████████

15  **IV.    <u>CONCLUSION</u>**

16          For the foregoing reasons, TCL respectfully requests that the Court deny

17  Ericsson's motion and unseal Docket 152-5, which was filed in support of TCL's

18  FRAND contentions.  The confidentiality of the documents in question was ████

19  █████████████████████████████████████████████ TCL's

20  outside counsel had ████████████████████████████████

21  ███████████████████████████  Even if the law supported Ericsson's

22  request that all of this be "undone" (it does not), the Court cannot make confidential

23  documents which were █████████████████████

24

25

26

27

28

SMRH:437496239.3                    TCL'S OPPOSITION TO ERICSSON'S MOTION RE ████████

1   DATED:  June 8, 2015          SHEPPARD, MULLIN, RICHTER & HAMPTON
2                                 LLP

3

4                                 By:  /s/ Stephen S. Korniczky
                                       Stephen S. Korniczky
5                                      Martin R. Bader
                                       Matthew W. Holder
6                                      Attorneys for Plaintiffs
7                                      TCL Communication Technology Holdings,
                                       Ltd., TCT Mobile Limited, and TCT Mobile
8                                      (US) Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 8, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

By     /s/ *Stephen S. Korniczky*
Stephen S. Korniczky

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 16, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery.

By   /s/Stephen Korniczky
Stephen Korniczky
Attorney for Plaintiffs,
TCL Communication Technology Holdings,
Ltd., TCT Mobile Limited, and TCT Mobile
(US) Inc.