SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
STEPHEN S. KORNICZKY, Cal. Bar No. 135532
skorniczky@sheppardmullin.com
MARTIN R. BADER, Cal. Bar No. 222865
mbader@sheppardmullin.com
MATTHEW W. HOLDER, Cal. Bar No. 217619
mholder@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for TCL Communication
Technology Holdings, Ltd., TCT Mobile
Limited, and TCT Mobile (US) Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD. et al., <br><br> Plaintiffs, <br><br> v. <br><br> TELEFONAKTIEBOLAGET LM ERICSSON and ERICSSON INC., <br><br> Defendants. | Case No. 8:14-cv-00341-JVS-AN <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ERICSSON'S MOTION REGARDING THE SCOPE OF THE FRAND TRIAL** <br><br> Hearing Date: June 29, 2015 <br> Time: 3:00 PM <br> Place: Courtroom: 10C <br> Before Judge James V. Selna <br><br> [Filed Under Seal] |

# TABLE OF CONTENTS

**Page**

I.  TCL WILL AGREE TO ADJUDICATE THE RELEASE PAYMENT ISSUE IN THE FRAND TRIAL. ........................................................ 1

II. ERICSSON'S MOTION REGARDING ITS IMPLEMENTATION PATENTS SHOULD BE DENIED. ............................................... 2

    A.  Background Facts Regarding Ericsson's Conduct with Respect to Its Implementation Patents. ....................................................... 4

        1.  Ericsson asserts the implementation patents in Texas. ................. 4

        2.  After the hearing in Texas, TCL discovers key new information regarding Ericsson's implementation patents. .......... 5

        3.  Ericsson only asserts the implementation patents when needed to coerce an opponent in connection with a FRAND dispute. ......................................................................... 7

    B.  Ericsson's Motion Should Be Denied as an Improper and Premature Motion for Partial Summary Judgment. ................................ 8

    C.  TCL's Contention Regarding Discrimination Is a Proper Basis for Addressing Ericsson's Implementation Patents in This Case. ........ 11

    D.  Ericsson's Assertion of Its Implementation Patents Is Also a Basis for TCL's Unfair Business Practice Claim. ................................ 16

    E.  Ericsson's Implementation Patents Are Still Relevant to This Case, Even If They Are Not Included in a License Between the Parties. ...................................................................................... 19

III. CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Acacia Media Technologies Corp.*
No. C 05-01114 JW, 2005 1683660 (N.D. Cal. July 19, 2006) ........................ 17

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ...................................................................... 10

*Apple, Inc. v. Motorola Mobility, Inc.*
No. 11cv178, 2011 U.S. Dist. LEXIS 72745 (W.D. Wis. June 7, 2011) .......... 17

*Apple Inc. v. Samsung Electronics Co.*
No. 11-CV-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012) ................... 17

*Burlington N. Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*
323 F.3d 767 (9th Cir. 2003) ......................................................... 10

*Calnetics Corp. v. Volkswagen of Am., Inc.*
532 F.2d 674 (9th Cir. 1976) ......................................................... 15

*Carlisle Corp. v. Hayes*
Case No. 85-cv-0912-R, 1986 WL 84375 (S.D. Cal. Jan. 24, 1986) ............... 15

*Caterpillar, Inc. v. Williams*
482 U.S. 386 (1987) ...................................................................... 14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal. 4th 163 (1999) ("*Cel-Tech*") ................................................ 16

*Colton Crane Co. v. Terex Cranes Wilmington, Inc. et al.*
Case No. 08-cv-8525-PSG(PJWx), 2010 WL 2035800 (C.D. Cal. May 19, 2010) ........................................................................................... 9

*De Forest Radio Tel. & Tel. Co. v. United States*
273 U.S. 236 (1927) ....................................................................... 6

*Engrahm v. County of Colusa*
Case No. 0204-cv-1290-GEB-GGHb, 2005 WL 3440025 (E.D. Cal. Dec. 14, 2005) ................................................................................. 9, 14

*Freeman v. Lasky, Haas & Cohler*
410 F.3d 1180 (9th Cir. 2005) ......................................................... 17

*Gray Tool Co. v. Humble Oil & Ref. Co.*
186 F.2d 365 (5th Cir. 1951) .......................................................... 18

*Greene v. Miles*
Case No. 045439AWILJOP, 2005 WL 3030996 (E.D. Cal. Nov. 7, 2005) ........ 9

*In Guzik Technical Enterprises, Inc. v. Western Digital Corp., et al.*
Case No. 5:11–cv–03786–PSG, 2013 WL 6116129 (N.D. Cal. Nov. 20, 2013) ........................................................................................... 9

*Jaeger v. Canadian Bank of Commerce (Cal.)*
  327 F.2d 743 (9th Cir. 1964 ) ............................................................. 13

*Metabolife Int'l, Inc. v. Wornick*
  264 F.3d 832 (9th Cir. 2001) ............................................................. 10

*Metropolitan Life Ins. Co. v. Bancorp Servs.*
  527 F.3d 1330 (Fed. Cir. 2008) ......................................................... 10

*Microsoft Corp. v. Motorola, Inc.*
  Case No. 10-cv-1823-JLR, 2013 WL2111217  (W.D. Wash. Apr. 25, 2013) .......................................................................................... 12, 13

*Peoplebrowsr, Inc. v. Twitter, Inc.*
  No. C-12-6120, 2013 WL 843032 (N.D. Cal. Mar. 6, 2013) .......................... 16

*Princo Corp. v. ITC*
  616 F.3d 1318 (Fed. Cir. 2010) (*en banc*) ......................................... 18

*Puente-Hudson v. Adams*
  Case No. 108-cv-01228-OWW-GSAPC, 2009 WL 426037 (E.D. Cal. Feb. 19, 2009) ............................................................................................ 9

*Scharringhausen v. United States*
  Case No. 06CV2167JLS(CAB), 2008 WL 686691 (S.D. Cal. Mar. 13, 2008) ................................................................................................ 19

*Syscan, Inc. v. Plustek, Inc.*
  Case No. 07-cv-01603 JW, 2009 WL 2044685 (N.D. Cal. July 9, 2009) ......... 15

*T.W. Elec. Serv. v. Pac. Elec. Contractors*
  809 F.2d 626 (9th Cir. 1987) ............................................................. 15

*TransCore, LP v. Elec. Transaction Consultants Corp.*
  563 F.3d 1271 (Fed. Cir. 2009) ........................................................... 6

*USM Corp. v. SPS Techs., Inc.*
  694 F.2d 505 (7th Cir. 1982) ............................................................. 18

Statutes

35 U.S.C. section 271(d)....................................................................... 16, 17

California Business & Professions Code section 17200 .................. 3, 16, 17, 18, 19

Rules

Federal Rule of Civil Procedure 56(d) ......................................... 9, 11, 15

Federal Rule of Civil Procedure 56(f) .......................................... 9, 10

United States District Court Local Rule 56-1................................. 3, 9, 14

SMRH:437556117.2

TCL'S OPPOSITION TO ERICSSON'S MOTION RE SCOPE OF FRAND TRIAL

1   | <u>Periodicals</u>

2   | Dennis W. Carlton & Allan L. Shampine, *An Economic Interpretation of FRAND* (April 24, 2013) ............................................................... 11, 13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:437556117.2

TCL'S OPPOSITION TO ERICSSON'S MOTION RE SCOPE OF FRAND TRIAL

Plaintiffs TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US) Inc. (collectively, "TCL") hereby oppose, in part, the motion filed by defendants Telefonaktiebolaget LM Ericsson and Ericsson, Inc. (collectively, "Ericsson") on May 21, 2015, regarding the scope of the FRAND trial.

## I.   TCL WILL AGREE TO ADJUDICATE THE RELEASE PAYMENT ISSUE IN THE FRAND TRIAL.

Half of Ericsson's motion is based on Ericsson's request for an order that "the jury will be asked to determine the amount, if any, of a release payment intended to compensate Ericsson for past unlicensed sales." (Dkt. 222-13 at 1:10-12; Dkt. 224 at pp. 9-14.) In communications between the parties following the April 29, 2015 hearing in this matter, TCL informed Ericsson that it would agree to adjudicate the release payment issue during the FRAND trial, thereby mooting Ericsson's request for relief. The parties even discussed a stipulation on the issue, but Ericsson's proposed stipulation was unreasonable, and hence the parties did not reach agreement. (Decl. of Martin R. Bader, ¶ 1.)

In particular, Ericsson proposed a stipulation that was not limited to the issue of whether the release payment will be adjudicated in the FRAND trial. Instead, Ericsson's proposed stipulation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Bader Decl., ¶ 1, Ex. 1.) Not surprisingly, that aspect of Ericsson's proposed stipulation was not agreeable to TCL. (*See id.*) Nevertheless, TCL confirmed in writing that it would "agree to litigate the extent to which a release payment is owed, and the amount of any release payment, in the FRAND trial scheduled for October 2016." (*Id.*, Ex. 2.) TCL also explained it was still willing to "explore a stipulation that will only address the

1   relationship between the release payment issue and the foreign litigation, [as well

2   as] a stipulation that will stay the second Texas case in its entirety.  However, under

3   no circumstances will TCL agree to allow Ericsson's claims in the second Texas

4   case to move forward, while TCL's counter-claims in that case are stayed."  (*Id.*)

5       As of the filing of this brief, Ericsson has not yet revised the terms of its

6   stipulation.  (*See id.*, ¶ 1.)  In any event, Ericsson's request for an order regarding

7   inclusion of the release payment issue in the FRAND trial is moot, because TCL has

8   no objection to Ericsson's motion in that respect.[1]

9   **II.     ERICSSON'S MOTION REGARDING ITS IMPLEMENTATION**

10          **PATENTS SHOULD BE DENIED.**

11      Ericsson's motion also seeks an order establishing that the terms of any

12  license to be adjudicated at the upcoming FRAND trial will not include patents

13  which have not been declared as essential to ETSI (*i.e.*, it will not include Ericsson's

14  "implementation" patents).  (Dkt. 222-13 at 1:5-9.)  The primary basis for this

15  argument is Ericsson's contention that the FRAND obligation does not extend to

16  patents which have not been declared as essential, and hence Ericsson cannot be

17  forced to include implementation patents in a license with TCL.  (Dkt. 224 at section

18  II.)  Ericsson also argues that TCL has not ███████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████.  (*See id.*

21  at section II.B and C.)

22      Ericsson's motion was brought in response to two developments.  First, in its

23  recent FRAND contentions, TCL asserted that any license between the parties

24  should be as broad as the license agreements between Ericsson and other companies

25  which compete with TCL, because anything less would constitute discrimination in

26  ────────────────

27  [1] To be clear, TCL does not agree a release payment is owed.  TCL previously
    overpaid for a license to Ericsson's 2G patents, and Ericsson's wrongful conduct
    should prevent it from recovering any past royalties.  Thus, if the matter is not
28  otherwise decided via motion, the FRAND trial will address both Ericsson's
    entitlement to a release payment, as well as the amount of any release payment.

1    violation of the FRAND obligation.  In those other license agreements, ███████

2    ████████████████████████████████████████████████.  (Dkt. 154 at 16:26-

3    17:12.)  Second, TCL's motion for anti-suit injunction seeks to enjoin Ericsson from

4    pursuing its claims for infringement of five implementation patents in the Second

5    Texas Action because, among other reasons, this case is capable of resolving those

6    claims (given TCL's assertion that a FRAND license should include the

7    implementation patents as well).

8           Ericsson's motion should be denied for a number of reasons.  First, the

9    motion is an improper and premature motion for partial summary judgment, because

10   it seeks to preclude TCL from pursuing one of its claims for relief.  Ericsson did not

11   follow Local Rule 56-1 (by filing a "Statement of Uncontroverted Facts and

12   Conclusions of Law"), and TCL is still in the process of conducting fact discovery

13   in support of its claims.  Second, the discrimination theory advanced by TCL—i.e.,

14   that it would be a violation of FRAND for Ericsson not to include its

15   implementation patents in a license to its standard-essential patents, ██████

16   ████████████████████████████████████—is a valid theory that is

17   supported by the facts, as well as FRAND principles.  Third, Ericsson's conduct

18   with respect to its implementation patents—i.e., using them as a "litigation tool" to

19   coerce non-FRAND terms for the standard-essential patents—is also relevant to

20   TCL's claim for unfair business practices under California Business & Professions

21   Code section 17200.  Lastly, even if TCL has no right to seek a license with

22   Ericsson that includes the implementation patents (it does), the implementation

23   patents will still be relevant to this case because their purported value (if anything)

24   will need to be accounted for in the technical and economic analyses (i.e., the extent

25   to which they add value to the cell phones, separate and apart from the standard-

26   essential patents, and also the extent to which ██████████████████████

27   ████████████████████████████████████  For all of these

28   reasons, TCL respectfully asks that the Court deny Ericsson's motion with respect to

1    the implementation patents, and their role in this litigation.

2    **A.      Background Facts Regarding Ericsson's Conduct with Respect to**

3    **Its Implementation Patents.**

4          Ericsson's conduct with respect to its implementation patents was previously

5    addressed in TCL's pending motion for an anti-suit injunction.  (Dkt. at 195 at pp.

6    17-18.)  Since TCL filed that motion, TCL has continued to develop the record on

7    this issue.  The relevant facts are set forth below.

8          1.      Ericsson asserts the implementation patents in Texas.

9          The parties' current dispute regarding Ericsson's implementation patents is an

10   outgrowth of the fact that Ericsson is suing TCL with respect to five such patents in

11   the Second Texas Action, in addition to Ericsson's claims in the First Texas Action

12   (since transferred to this Court), as well as this action, for infringement of its alleged

13   standard-essential patents.  In the Second Texas Action, Ericsson has alleged that

14   the patents-in-suit "are globally used to implement mobile telecommunication

15   standards in cellular handsets, smartphones, tablet computers, televisions, and many

16   other electronic devices."  (Bader Decl., Ex. 3 at ¶ 3.)  In particular, the patents-in-

17   suit in the Second Texas Action allegedly relate to control processors, user

18   interfaces, multi-mode receivers, and location services in wireless phones.  (*See id.*

19   at ¶¶ 11-15.)  Ericsson's infringement allegations in the Second Texas Action are

20   aimed at the same TCL products at issue here in this action.  (Bader Decl., ¶ 2.)

21         Even though the patents-in-suit in the Second Texas Action were issued in

22   2000, 2002, 2003, 2006, and 2013, respectively, Ericsson admits it did not put TCL

23   on notice of any such patents until October 2014.  (*See id.*, ¶ 2, Ex. 3 at ¶¶ 11-17.)

24   Ericsson first asserted the patents against TCL in two motions for leave to amend its

25   complaint in the First Texas Action, because Ericsson thought such amendments

26   would help it defeat TCL's then-pending motion to transfer the First Texas Action

27   to this Court.  (*See id.*, ¶ 3, Exs. 4, 5.)  Once Magistrate Judge Roy S. Payne

28   indicated TCL's motion to transfer was likely to be granted, Ericsson reversed

1  course, withdrew its motions for leave to amend, and asserted the implementation

2  patents in a new, separate lawsuit against TCL in Texas (the Second Texas Action).

3  (*See id.*, ¶¶ 2, 3, citing Dkt. 222-6 at 53:15-54:8.)

4          2.      <u>After the hearing in Texas, TCL discovers key new information</u>

5                  <u>regarding Ericsson's implementation patents.</u>

6          In its motion, Ericsson relies heavily on comments made by TCL's counsel in

7  the First Texas Action to support its argument that the implementation patents

8  should not be part of this action.  (Dkt. 224 at 6:21-7:22.)  The problem with

9  Ericsson's argument is that the comments made by TCL's counsel occurred on

10 January 8, 2015, when TCL's motion to transfer and Ericsson's motions for leave to

11 amend were heard in the First Texas Action.  Since that date, TCL has learned a

12 great deal of important new information which changes things dramatically.

13         First, since the January 8 hearing, TCL has learned that Ericsson ███████

14 ███████████████████████████████████████████████████████

15 ████████████████████████        TCL did not know this at the time

16 of the January 8 hearing, because Ericsson ████████████████████

17 ███████████████████████        (Bader Decl., ¶ 4.)

18 Likewise, TCL did not know this when the parties were previously negotiating a

19 license agreement in the years prior to TCL filing this lawsuit.  In particular,

20 focusing only on ████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 granted license.  (*See id.*, ¶¶ 5, 6, Exs. 8, 9.)  In addition, Ericsson has ████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████        (*See id.*, ¶¶ 7-10, Exs. 10-13.)

27 Lastly, Ericsson has ████████████████████████████████

28 ████████████████████████████████████████████



1   (*See id.*, ¶ 11, Ex. 14.)

2

3

4

5

6

7

8

9

10        Second, TCL also has learned that Ericsson uses its implementation patents as

11   a "litigation tool" to coerce others to accept Ericsson's non-FRAND terms for the

12   standard-essential patents.  TCL did not know this at the time of the January 8

13   hearing.  (*See id.*, ¶ 12.)  In particular, in March 2015, while performing searches on

14   the internet, TCL discovered a copy of an agenda from a presentation given in 2012

15   by Gabriele Mohsler, an Ericsson executive, titled "How to Create Ready-to-License

16   and Ready-to-Litigate Patent Portfolios with Standard Related Patents:  The View

17   from Ericsson."  (*Id.*, ¶ 12, Ex. 15 at p. 3.)  The accompanying summary references

18   "[u]sing implementation patents as a litigation tool."  (*Id.*)  On June 1, 2015, only

19   after TCL insisted that Ericsson search for and produce the underlying presentation

20   (which TCL had earlier requested in January 2015), did Ericsson finally produce

21   two presentations from Mohsler.  (*See id.*, ¶ 13.)  In one of the presentations, on a

22   page titled "Litigation Strategy," Ericsson advocates litigating both standard-

23   essential patents and "implementation patents" in "different jurisdictions" (*e.g.*, both

24   the U.S. and Europe), with Ericsson's "aim" being "not to get it [*i.e.*, the litigation]

25   to an end, but to get negotiations going."  (*Id.*, ¶ 13, Ex. 16 at p. 11.)  In other words,

26   Ericsson uses its implementation patents to file patent infringement litigation which,

27   in turn, is intended to pressure Ericsson's opponents into acquiescing to Ericsson's

28   bargaining position regarding the terms of a license.

Case No. 8:14-cv-00341-JVS-AN

TCL'S OPPOSITION TO ERICSSON'S MOTION RE SCOPE OF FRAND TRIAL

3.   <u>Ericsson only asserts the implementation patents when needed to coerce an opponent in connection with a FRAND dispute.</u>

TCL has performed various searches of Ericsson's litigation history, and insofar as TCL has been able to determine, Ericsson has only filed lawsuits regarding its implementation patents against *three* companies:  TCL, Samsung, and Apple.  (Bader Decl., ¶ 14.)  In each such instance, Ericsson was simultaneously engaged with the other company in litigation regarding a FRAND license to Ericsson's standard-essential patents.  (*See id.*)  The TCL and Apple litigation remain ongoing, whereas the Samsung litigation concluded with a settlement in January 2014.  (*See id.*)  As discussed above, Ericsson's settlement with Samsung included a license to Ericsson's implementation patents.  (*See id.*)

The above dynamic is consistent with Ericsson's professed goal of using its implementation patents as a "litigation tool" in connection with negotiations regarding its standard-essential patents.  On the one hand, when Ericsson has entered into a license with another company regarding standard-essential patents, and there has been no litigation between the parties regarding the FRAND obligation, Ericsson has not sued the other company for alleged infringement of the implementation patents (even where the license agreement does *not* cover the implementation patents).  This is not surprising, because no reasonable licensee would willingly enter into a license agreement with Ericsson regarding only standard-essential patents if that licensee had a reasonable expectation that Ericsson would later sue for infringement of its implementation patents in connection with the same products covered by the license.  There has been, in effect, an understanding between Ericsson and the industry (either silent, or perhaps express— discovery continues) that if you license Ericsson's standard-essential patents, you will not be harassed with collateral litigation regarding Ericsson's implementation patents.  If Ericsson behaved otherwise (*i.e.*, suing standard-essential patent licensees for infringement of its implementation patents), companies would either

1   refuse to enter into a license with Ericsson, or—more likely—insist that the license

2   also cover Ericsson's implementation patents (so that the licensee attains a real

3   measure of peace vis-à-vis Ericsson).

4           As FRAND litigation has become more prevalent, however, the record

5   reflects an increase in the number of standard-essential patent licenses entered into

6   by Ericsson which also include protection vis-à-vis Ericsson's implementation

7   patents.  Indeed, Ericsson has used its implementation patents to file separate

8   infringement litigation against the companies who have challenged its royalty rates

9   for standard-essential patents (*i.e.*, Samsung, TCL, and Apple).  Having injected the

10  implementation patents into the parties' fight, Ericsson surely cannot expect to

11  conclude these disputes with anything less than a license that would cover both

12  standard-essential patents and implementation patents.  That is precisely what

13  happened between Ericsson and Samsung, and it is precisely the intent of Ericsson's

14  litigation strategy (*i.e.*, "not to get [the litigation] to an end, but to get negotiations

15  going").  (*Id.*, ¶ 13, Ex. 16 at p. 11.)

16          **B.      Ericsson's Motion Should Be Denied as an Improper and**

17                    **Premature Motion for Partial Summary Judgment.**

18          Although not captioned as such, Ericsson's motion regarding the extent to

19  which its implementation patents can be part of an adjudicated FRAND license

20  between the parties is, in essence, nothing more than a motion for partial summary

21  judgment in disguise.  This is because Ericsson's goal is to preclude TCL from

22  seeking and/or obtaining any relief with respect to Ericsson's implementation

23  patents, and hence defeat TCL's claim in that respect.  Ericsson's argument

24  necessarily requires an analysis of TCL's pleadings, the facts regarding the parties'

25  prior dealings, and the facts regarding Ericsson's dealings with others, as well as

26  application of the relevant law to those facts.  As such, Ericsson's motion is no

27  different from a motion for partial summary judgment.

28          It is not uncommon for parties to improperly present motions for summary

1   judgment under a different label (*e.g.*, as a motion *in limine*), and for courts to reject

2   such attempts to circumvent the rules applicable to motions for summary judgment.

3   *See, e.g., In Guzik Technical Enterprises, Inc. v. Western Digital Corp., et al.*, Case

4   No. 5:11–cv–03786–PSG, 2013 WL 6116129 (N.D. Cal. Nov. 20, 2013) (denying

5   motion *in limine* that sought to prevent the plaintiff from pursuing a particular

6   infringement theory because the motion was "little more than a thinly veiled"

7   motion for summary judgment, and should have been pursued in compliance with

8   the local rules pertaining to motions for summary judgment); *Colton Crane Co. v.*

9   *Terex Cranes Wilmington, Inc. et al.*, Case No. 08-cv-8525-PSG(PJWx), 2010 WL

10  2035800 (C.D. Cal. May 19, 2010) (denying motions *in limine* as "disguised

11  motions for partial summary judgment," and noting that such motions are an

12  inappropriate means to "resolve factual disputes or weigh evidence").

13        Ericsson's motion should be denied on this basis alone.  Indeed, Local Rule

14  56-1 provides that a party filing a motion for partial summary judgment must file a

15  "Statement of Uncontroverted Facts and Conclusions of Law," and that this

16  document "shall set forth the material facts as to which the moving party contends

17  there is no genuine dispute."  Ericsson did not file any such statement with its

18  pending motion.  Ericsson's failure to follow the local rule is a basis for denial of its

19  motion.  *See, e.g., Engrahm v. County of Colusa*, Case No. 0204-cv-1290-GEB-

20  GGHb, 2005 WL 3440025, at *1 (E.D. Cal. Dec. 14, 2005) (denying motion for

21  summary judgment for failure to comply with the local rule regarding use of a

22  separate statement); *accord Puente-Hudson v. Adams*, Case No. 108-cv-01228-

23  OWW-GSAPC, 2009 WL 426037, at *2 (E.D. Cal. Feb. 19, 2009); *Greene v. Miles*,

24  Case No. 045439AWILJOP, 2005 WL 3030996, at *2 (E.D. Cal. Nov. 7, 2005)

25  report and recommendation adopted at 2006 WL 354649 (E.D. Cal. Feb. 15, 2006).

26        Another reason Ericsson's motion should be denied is Federal Rule of Civil

27  Procedure 56(d) (formerly set forth as Rule 56(f)), which permits a court to defer or

28  deny a motion for summary judgment when it is filed early in a litigation, and the

non-movant has not yet had sufficient time to develop the required evidence in response. *See, e.g., Burlington N. Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003) ("Where [] a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely."); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56(f) facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'"), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986); *Metropolitan Life Ins. Co. v. Bancorp Servs.*, 527 F.3d 1330, 1336–37 (Fed. Cir. 2008) ("Under the Federal Rules of Civil Procedure, the parties must be afforded adequate time for general discovery before being required to respond to a motion for summary judgment.").

Here, discovery will not close until April 18, 2016, *over ten months away*. (Dkt. 179.)  Neither side has taken any depositions yet, and neither side has produced any e-mail communications based on requested word searches.  (Bader Decl., ¶ 18.)  TCL anticipates this activity will occur over the remainder of 2015.  In addition, TCL continues to meet and confer regarding various defects in Ericsson's ongoing document production, including Ericsson's reluctance to produce communications related to its prior license negotiations with other companies.  (*See id.*, ¶ 18, Exs. 22, 23.)  As discussed throughout this brief, as well as in the Bader Declaration, TCL is developing promising leads regarding Ericsson's discriminatory behavior with respect to the licensing terms it offers, as well as the improper way Ericsson is using its implementation patents as a "litigation tool" to coerce non-FRAND rates for its standard-essential patents.  (*See id.*, ¶¶ 4-13.)  TCL respectfully

1  submits that on this record, and in light of Rule 56(d), it would be improper to grant

2  Ericsson's motion and preclude TCL from continuing to develop evidence in

3  support of the theories which Ericsson prematurely attacks in its motion.

### C.   TCL's Contention Regarding Discrimination Is a Proper Basis for Addressing Ericsson's Implementation Patents in This Case.

6   Ericsson's primary argument for why its implementation patents cannot be a

7  required component of a FRAND license between Ericsson and TCL is that the

8  implementation patents are not themselves encumbered by the FRAND obligation,

9  because they were not declared to ETSI as essential to one of the relevant standards.

10  (Dkt. 224 at 5:1-6:20.)  Ericsson's argument misses the mark, and begs the question

11  of what it means to not "discriminate" when licensing standard-essential patents.

12   TCL's breach of contract claim is based on the declarations which Ericsson

13  submitted to ETSI in connection with its alleged standard-essential patents.  Those

14  declarations required Ericsson to "to grant irrevocable licenses on fair, reasonable

15  and non-discriminatory ('FRAND') terms and conditions."  (Bader Decl., ¶ 16, Ex.

16  19 at p. 1, Ex. 20 at pp. 1-2.)  As an initial matter, it should be noted that the phrase

17  "terms and conditions" is broad, and encompasses more than just the royalty rate for

18  the standard-essential patents themselves.  In addition, the meaning and scope of the

19  requirement that the patent holder not "discriminate" with respect to the "terms and

20  conditions" of a license is also broad, and not necessarily well-defined at this stage

21  of FRAND jurisprudence.  *See, e.g.*, Dennis W. Carlton & Allan L. Shampine, *An*

22  *Economic Interpretation of FRAND* (April 24, 2013), at p. 1 ("Although there have

23  been attempts to define FRAND in the economics literature, most have focused on

24  the 'reasonable' principle.  The few discussions of the 'non-discriminatory'

25  principle have failed to define what the term means in general."), included with the

26  Bader Declaration as Ex. 21.

27   TCL's argument, based on the evidence it has developed to date (and

28  continues to develop), is that it would be discriminatory for Ericsson to be willing to

1  include ███████████████████████████████████████

2  (████████████████████████████ but not include its implementation patents

3  in its license agreement with TCL.  The scope of the license grant, and/or the use of

4  a covenant not to sue ████████████████████████████, are

5  indisputably "terms and conditions" of a license.  Here, the record reflects that

6  Ericsson has agreed to █████████████████████████

7  ████████████████████████████████████████████████

8  █████████████████████████████████████ (*See supra* at section

9  II.A.2.)  It makes perfect sense why a license agreement would include such terms,

10 because otherwise the licensee could end up paying Ericsson millions of dollars in

11 royalties for the sale of its end product (here, cell phones) under a license to the

12 standard-essential patents, only to later have Ericsson return and demand *additional*

13 royalties (under threat of infringement litigation based on the implementation

14 patents) for the *same* sales of the *same* product.  No reasonable licensee wants that.

15      If Ericsson were permitted to behave this way, and could pick and choose

16 which participants in the market would, and would not, achieve peace vis-à-vis

17 Ericsson's implementation patents at the same time a license agreement is reached

18 for Ericsson's standard-essential patents, then Ericsson could achieve the precise

19 ends which the FRAND obligation is intended to prevent.  In particular, Ericsson

20 could use its market power and the threat of never-ending infringement litigation to

21 coerce companies like TCL into paying non-FRAND rates for its standard-essential

22 patents, thereby determining the "winners" and "losers" in the competition between

23 cell phone manufacturers.  Such behavior is contrary to the FRAND commitment,

24 and in particular the non-discrimination component of that commitment.  *See, e.g.,*

25 *Microsoft Corp. v. Motorola, Inc.*, Case No. 10-cv-1823-JLR, 2013 WL2111217, *6

26 (W.D. Wash. Apr. 25, 2013) ("*Microsoft*") (explaining that the RAND licensing

27 obligation was adopted to address concerns about an abuse of market power,

28 because absent the RAND obligation, patent owners could "extort their competitors

1  or prevent competitors from entering the marketplace"); *An Economic Interpretation*
2  *of FRAND*, at p. 9, n.41 ("The non-discrimination principle certainly includes the
3  requirement to license all comers, but also serves a valuable function to protect
4  firms from *strategic behavior* that might disadvantage them relative to their
5  competitors, of which refusal to license is only one example."), at Bader Decl., Ex.
6  21 (emphasis added).

7       In response to TCL's argument, Ericsson cites *Jaeger v. Canadian Bank of*
8  *Commerce (Cal.)*, 327 F.2d 743, 745 (9th Cir. 1964 ), for the proposition that
9  "[c]ourts have no power to make new contracts or to impose new terms upon parties
10  to contracts without their consent."  (Dkt. 224 at 5:23-26.)  In *Jaeger*, the promisor
11  agreed to pay for all services rendered by the promisee's attorneys in commencing
12  and prosecuting an action to recover judgment on the note.  The Ninth Circuit ruled
13  the agreement in question did not extend to legal expenses incurred with respect to
14  *unrelated* matters because "a party to a contract is held only to that liability which
15  falls fairly within the terms of the contract." *Jaeger*, 327 F.2d at 745.  TCL does not
16  disagree with this proposition, but it begs the question of what "liability [] falls
17  fairly within the terms of" Ericsson's obligation to not "discriminate" with respect to
18  the "terms and condition" of its standard-essential patent license agreements.
19  Likewise, Ericsson cites *Microsoft* for the proposition that a court cannot "modify"
20  the terms of an agreement, or "impose missing terms."  (Dkt. 224 at 6:3-6.)  Again,
21  TCL does not disagree, but this also begs the question.  TCL is not seeking to
22  modify any contract terms, or impose new terms.  Rather, TCL's argument is that
23  Ericsson's undisputed obligation to not "discriminate" in connection with the "terms
24  and conditions" of a license to its standard-essential patents encompasses an
25  obligation to include Ericsson's implementation patents in such a license, given that
26  Ericsson ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27       The thrust of Ericsson's argument actually underscores the discriminatory
28  aspect of Ericsson's behavior, and also demonstrates the factual nature of the

-13-

1    dispute.  Ericsson attempts to ████████████████████████████████████

2    ████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████ (Dkt. 224 at pp. 8-9.)  Yet is

5    that not the case in every instance of discrimination?  Is not the essence of

6    discrimination one's *willingness* to agree to a certain term with one market actor,

7    while *refusing* the same term to a different market actor?  Seen in this light, and

8    given Ericsson's obligation to not discriminate, ████████████████████████

9    ████████████ is no defense at all.  Ericsson's response is to say "but those other

10   licenses were different" (*e.g.*, because Ericsson says ████████████████████

11   ████████, but that only demonstrates the factual nature of the parties' dispute, and in

12   particular the need for the "Statement of Uncontroverted Facts and Conclusions of

13   Law" under Local Rule 56-1.  (*See id.*)  The purpose of this document is to isolate

14   those facts which the supporting party contends are material and undisputed, as well

15   as the supporting evidence.  *See Engrahm*, 2005 WL 3440025, *1.  Ericsson fails to

16   prove the existence of material, undisputed facts regarding why its prior licenses are

17   supposedly not comparable to the present situation with TCL.  Moreover, why

18   should TCL not be permitted to continue conducting discovery regarding the factual

19   circumstances of those other license agreements, in order to explore and support its

20   argument that Ericsson has engaged in discrimination?

21          Although Ericsson may disagree with TCL's theory of relief, it does not have

22   the right or ability, especially at this early stage of the litigation, to foreclose TCL

23   from pursuing that theory.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392

24   (1987) (explaining that the plaintiff is the "master of the claim").  When evaluating

25   a motion for summary judgment, "[t]he court determines whether the non-moving

26   party's 'specific facts,' coupled with disputed background or contextual facts, are

27   such that a reasonable jury might return a verdict for the non-moving party."

28   *Syscan, Inc. v. Plustek, Inc.*, Case No. 07-cv-01603 JW, 2009 WL 2044685, at *2

1   (N.D. Cal. July 9, 2009), citing *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d

2   626, 631 (9th Cir. 1987).  "In such a case, summary judgment is inappropriate."  *Id.*

3   Here it would be wrong, and at the very least premature, to say no reasonable jury

4   could find that TCL is entitled to a license which covers Ericsson's implementation

5   patents in order for Ericsson to comply with its FRAND obligation.  This is

6   especially true given the disputed nature of the discrimination obligation.  *See, e.g.,*

7   *Carlisle Corp. v. Hayes*, Case No. 85-cv-0912-R, 1986 WL 84375, at *4 (S.D. Cal.

8   Jan. 24, 1986) ("Summary judgment is not proper if the parties dispute the

9   inferences that should be drawn from uncontested facts . . . [,] when a party's intent

10   or motive is at issue . . .[,] [and] when credibility is at issue.").

11       TCL submits that the record it has already developed is sufficient to support

12   its claim for relief in this respect.  But even if the Court disagrees, TCL should be

13   entitled to continue pursuing discovery in order to gather evidence supporting its

14   discrimination theory.  For example, thus far Ericsson has refused to produce the

15   communications which preceded its license agreements with other parties.  (Bader

16   Decl., ¶ 18, Exs. 22, 23.)  TCL is continuing to press for the production of those

17   documents.  (*See id.*)  Those documents could shed further light on why ███████

18   ███████████████████████████████████████████████████████████

19   ███████████████████████████████████████████ Likewise, TCL

20   intends to pursue the same inquiries in depositions later this year.  (*See id.*, ¶ 18.)

21   Under Rule 56(d), TCL should be permitted to obtain additional discovery before

22   the Court pre-judges the viability of TCL's argument.  *See Calnetics Corp. v.*

23   *Volkswagen of Am., Inc.*, 532 F.2d 674, 683–84 (9th Cir. 1976) (acknowledging that

24   "summary procedures should be used sparingly in complex [] litigation where

25   motive and intent play leading roles, the proof is largely in the hands of the alleged

26   conspirators, and hostile witnesses thicken the plot . . . It is only when the witnesses

27   are present and subject to cross-examination that their credibility and the weight to

28   be given their testimony can be appraised.").

**D.** **Ericsson's Assertion of Its Implementation Patents Is Also a Basis for TCL's Unfair Business Practice Claim.**

Ericsson's motion proceeds from the premise that the only potential link between its implementation patents and TCL's claims in this case is TCL's claim for breach of contract.  This is not accurate.  Ericsson's conduct with respect to its implementation patents is also relevant to TCL's claim for unfair business practices under California Business & Professions Code section 17200.  By way of background, when a plaintiff alleges "unfair" conduct under section 17200, courts use a two-part test to assess the viability of the plaintiff's claim.  First, the court considers whether "specific legislation provides a 'safe harbor'" for the defendant's conduct.  *Peoplebrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120, 2013 WL 843032, *2 (N.D. Cal. Mar. 6, 2013), citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182-83 (1999) ("*Cel-Tech*").  The safe harbor "must actually 'bar' the action or clearly permit the conduct." *Id.*, citing *Cel-Tech*, 20 Cal. 4th at 182–83.  Second, if no legislation provides a safe harbor for the defendant's conduct, the conduct is "unfair" if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.*, citing *Cel-Tech*, 20 Cal.4th at 187.

Here, Ericsson's use of its implementation patents to coerce non-FRAND terms for its standard-essential patents both threatens competition, and also constitutes patent misuse under 35 U.S.C. section 271(d), and hence violates section 17200.  Ericsson admits it uses its implementation patents as a "litigation tool," with its "aim" being not to actually pursue the litigation on the merits, but rather "to get negotiations going" (which is a euphemism for coercing its opponent at the bargaining table).  (Bader Decl., ¶¶ 12, 13, Ex. 15 at p. 3, Ex. 16 at p. 11.)  As noted earlier, the *only* time Ericsson has sued for infringement of its implementation patents has been when Ericsson is otherwise engaged in litigation with the same

1   counter-party regarding Ericsson's FRAND obligation.  (*See supra* at section

2   II.A.3.)  In one such instance—Ericsson's litigation with Samsung before the ITC—

3   Ericsson made claims as to one of the same implementation patents being asserted

4   against TCL in the Second Texas Action (Patent No. 6,418,310), yet suspiciously

5   filed a motion to terminate the ITC's investigation as to the same patent less than

6   one month before the trial.  (Bader Decl., ¶ 15, Exs. 17, 18.)

7        There is a wide range of legal authority supporting TCL's position.  For

8   example, the court in *In re Acacia Media Technologies Corp.*, No. C 05-01114 JW,

9   2005 1683660, *4-5 (N.D. Cal. July 19, 2006), held that pursuing patent

10  infringement lawsuits in bad faith constitutes anticompetitive conduct in violation of

11  the "unfair" prong of section 17200.  As the Ninth Circuit has explained, "[i]f the

12  alleged anticompetitive behavior is the filing of a series of lawsuits, the question is

13  not whether any one of them has merit—some may turn out to, just as a matter of

14  chance—but whether they are brought pursuant to a policy of starting legal

15  proceedings without regard to the merits and for the purpose of injuring a market

16  rival."  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005)

17  (internal quotation marks omitted); *see also Apple Inc. v. Samsung Electronics Co.*,

18  No. 11-CV-01846, 2012 WL 1672493, *9 (N.D. Cal. May 14, 2012) (holding that

19  Samsung's alleged "extortionist" filing of a patent infringement lawsuit, despite

20  Apple's right to a license on FRAND terms, would support a claim for unfair

21  competition under section 17200).

22       Ericsson's use of its implementation patents to coerce non-FRAND terms for

23  its standard-essential patents also constitutes patent misuse under 35 U.S.C. section

24  271(d).  A party raising a patent misuse defense "must allege facts showing that [the

25  patent holder] has employed anticompetitive practices in an effort to extend its

26  patent grant beyond its statutory limits."  *Apple, Inc. v. Motorola Mobility, Inc.*, No.

27  11cv178, 2011 U.S. Dist. LEXIS 72745, at *41-42 (W.D. Wis. June 7, 2011)

28  ("*Apple*"), citing *USM Corp. v. SPS Techs., Inc.*, 694 F.2d 505, 510 (7th Cir. 1982).

"What patent misuse is about, in short, is 'patent leverage,' *i.e.*, the use of patent power to impose overbroad conditions on the use of the patent in suit that are not within the reach of the monopoly granted by the Government." *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (*en banc*).

As with TCL's claim for breach of contract based on Ericsson's discriminatory licensing practices, TCL believes it already has a sufficient record to support its claim that Ericsson's admitted use of its implementation patents as a "litigation tool" against parties who contest Ericsson's licensing practices with respect to standard-essential patents constitutes an unfair business practice in violation of section 17200.  Indeed, such allegations of patent misuse are not readily susceptible to motions for summary judgment.  As the Fifth Circuit has explained:

> The defense of misuse of patents . . . is not . . . a matter of the letter of bare bones facts:  it is a matter of their spirit, the intent with which they are done.  A judge may not, on a motion for summary judgment, draw fact inferences as to plaintiff's purpose or intention in respect to obtaining a monopoly.  Such inferences may be drawn only on a trial.

*Gray Tool Co. v. Humble Oil & Ref. Co.*, 186 F.2d 365, 367 (5th Cir. 1951) (reversing the district court's grant of summary judgment for improperly drawing inferences regarding the plaintiff's licensing system for purposes of a patent misuse defense at summary judgment stage).  However, to the extent the Court disagrees, TCL again requests sufficient time to continue developing evidence in support of these claims.  For example, TCL intends to take Mohsler's deposition, as well as search the e-mails of various Ericsson employees to gather evidence regarding Ericsson's patent licensing strategy.  (Bader Decl., ¶ 18.)  Such efforts may yield a wealth of new evidence supporting TCL's argument that Ericsson is wrongfully using its implementation patents to coerce TCL into accepting a non-FRAND rate

1   for Ericsson's standard-essential patents.[2]

2   **E.      Ericsson's Implementation Patents Are Still Relevant to This Case,**

3   **Even If They Are Not Included in a License Between the Parties.**

4   Separate and apart from whether Ericsson can be forced to include its

5   implementation patents in a FRAND license agreement with TCL, as well as

6   whether Ericsson's use of its implementation patents as a "litigation tool" is

7   wrongful conduct supporting TCL's claim for violation of section 17200, Ericsson's

8   implementation patents are still relevant to this litigation in other respects.

9   First, Ericsson argues that its implementation patents should not be a "throw

10   in" to a license covering its standard-essential patents.  (Dkt. 224 at 8:20-24.)  The

11   implication from Ericsson's argument is that Ericsson believes the alleged value of

12   its implementation patents needs to be accounted for before using the royalty rate

13   reflected in Ericsson's license agreements with ███████████████████

14   ████████  as a measure of the value of Ericsson's standard-essential patents.  For

15   example, if Ericsson's implementation patents have a value greater than zero, and

16   they are included in a license that also includes Ericsson's standard-essential

17   patents, then presumably Ericsson's standard-essential patents are worth a royalty

18   rate that is less than the royalty rate reflected in the license agreement (because the

19   rest of the royalty rate would be attributable to the implementation patents).  If this

20   is Ericsson's argument, then the parties will presumably want to account for the

21   value of its implementation patents in assessing the extent to which its other license

22   agreements should be regarded as comparable.

23   Second, the functionality and corresponding "value" of the implementation

---

24   [2] Ericsson did not even assert its implementation patents against TCL until months
25   after TCL filed the operative complaint in this action on June 20, 2014.  (Dkt. 31.)
    As a result, TCL's fact development work with respect to Ericsson's implementation
26   patents has necessarily taken place since the operative complaint was filed.  If the
    Court prefers, TCL can amend the operative complaint to set forth its allegations
27   regarding Ericsson's implementation patents.  *See Scharringhausen v. United States*,
    Case No. 06CV2167JLS(CAB), 2008 WL 686691, at *3 (S.D. Cal. Mar. 13, 2008)
28   ("If plaintiff discovers additional violations during discovery, plaintiff may seek
    leave to amend the complaint to conform to the new evidence.").

patents in the operation of TCL's cell phones will need to be accounted for, and distinguished from, the functionality and "value" of the standard-essential patents in the operation of TCL's cell phones. This is part of the apportionment aspect of the FRAND analysis, in that the holder of a standard-essential patent is only entitled to a royalty that reflects the contribution of the standard-essential patent to the standard, not the value of the standard as a whole, or the value of other, separate technology used in the operation of the end product. Again, to the extent Ericsson contends its implementation patents add functionality and value to TCL's cell phones separate and apart from Ericsson's standard-essential patents, then the nature of that functionality and value, and how it is distinguishable from the functionality and value of the standard-essential patents, presumably will need to be assessed.

## III.  CONCLUSION

For the foregoing reasons, Ericsson's motion regarding the release payment issue is moot because TCL has agreed to litigate the release payment issue in the upcoming FRAND trial. In addition, Ericsson's motion regarding its implementation patents should be denied. It is an improper and premature motion for summary judgment, and TCL's theories regarding why Ericsson's implementation patents are at issue in this litigation, and/or can be included in a license between the parties, are valid and supported by the evidence. At a minimum, TCL should be permitted to continue developing evidence in support of its theories before the Court decides the motion.

1

DATED:  June 8, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP

2

3

4

By: /s/ *Stephen S. Korniczky*

Stephen S. Korniczky
Martin R. Bader
Matthew W. Holder
Attorneys for Plaintiffs
TCL Communication Technology Holdings,
Ltd., TCT Mobile Limited, and TCT Mobile
(US) Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:437556117.2

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 8, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.


By      /s/ *Stephen S. Korniczky*
        Stephen S. Korniczky

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 17, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery.

By   /s/Stephen Korniczky
Stephen Korniczky
Attorney for Plaintiffs,
TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US) Inc.