TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson et al., SACV 14-0341 JVS (ANx)

Related Case: 2:15-cv-02370-JVS-JCx

## ORDER re Motions

The above-titled action is a patent infringement action and FRAND licensing dispute between Plaintiff and Counter-defendant TCL Communication Technology Holdings, Ltd. ("TCL"), Defendant Telefonaktiebolaget LM Ericsson, and Defendant and Counter-claimant Ericsson, Inc. (collectively, "Ericsson"). Before the Court are four motions.

In response to the Court's request for briefing regarding the scope of the FRAND trial, Ericsson moves the Court for a ruling regarding the scope of the FRAND trial. (Docket Nos. 222, 224.) TCL opposes. (Docket Nos. 241, 253, 270.) Ericsson has replied. (Docket Nos. 262, 269.)

TCL moves the Court to issue an anti-suit injunction enjoining Ericsson from proceeding with litigation in Texas and a number of foreign jurisdictions. (See Docket Nos. 195, 202.) Ericsson opposes. (Docket Nos. 242, 248.) TCL has replied. (Docket Nos. 256, 273.)

Ericsson also moves the Court to order TCL to return, destroy, or treat as confidential certain inadvertently disclosed materials. (Docket Nos. 210-1, 213.) TCL opposes. (Docket Nos. 244, 264.) Ericsson has replied. (Docket Nos. 259, 268.)

Finally, the parties jointly move to consolidate this case with Ericsson Inc., et al. v. TCL Communication Technology Holdings, Ltd., et al, Case No 2:15-cv-02370-JVS-JC ("the Transferred Action"), stay certain claims, and dismiss certain claims. (Docket No. 219.)

As set forth below, the Court (1) GRANTS IN PART and DENIES IN PART Ericsson's motion regarding the scope of the FRAND trial; (2) GRANTS IN PART and DENIES IN PART TCL's motion for an anti-suit injunction; (3) GRANTS Ericsson's motion to treat as confidential inadvertently disclosed materials; and (4) GRANTS the parties' joint motion.

I.  BACKGROUND

   A.  **The Present Action**

TCL is a mobile telecommunications vendor that offers products in over one hundred countries. (Second Amended Complaint ("SAC") ¶ 2, Docket No. 31.) Ericsson owns a portfolio of intellectual property rights, some of which are "essential" to the global 2G (second generation), 3G (third generation), and 4G (fourth generation) telecommunications standards established by the European Telecommunications Standards Institute ("ETSI").[1] (SAC ¶ 3; Answer ¶ 41, Docket No 59.)

ETSI is a standard-development organization ("SDO") that adopts globally-accepted technological standards to facilitate compatibility between related products and services in the telecommunications industry. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 3; SAC ¶¶ 38-40; Answer ¶40.) ETSI requires members who declare their patents "standard-essential" ("standard-essential patents," or "SEPs") to license them to others on fair, reasonable, and non-discriminatory ("FRAND") terms. (SAC ¶¶ 7-8.)

TCL claims that prior to filing this action, it attempted in good faith to negotiate a license to Ericsson's SEP portfolio but was unable to reach a license agreement with Ericsson. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 3.) As a result, TCL initiated this action on March 5, 2014, claiming third-party beneficiary status to Ericsson's SDO obligations and alleging that Ericsson breached its obligation by failing to license its SEP portfolio to TCL on FRAND terms. (See SAC ¶¶ 11-12.) TCL's SAC alleges claims for breach of Ericsson's FRAND obligations and Ericsson's infringement of two TCL patents. (SAC at 26-28, 37-41.) TCL also seeks declaratory judgment of invalidity and/or non-infringement of two of Ericsson's patents. (SAC at 35-37.) Finally, TCL requests that the Court determine the FRAND rates for a license of Ericsson's SEP portfolio to TCL. (SAC at 41, ¶ D.)

---

[1] Ericsson also owns non-essential "implementation patents," which are "patents that are not essential to the practice of a standard, and which have not been declared by Ericsson to be essential." (See Mem. P. & A. Supp. Mot. re Scope of FRAND Trial 1-2, 2 n.2, Docket No. 222-1.)

Ericsson filed counterclaims against TCL on October 14, 2014 for "declaratory judgment that TCL has not acted in good faith during negotiations, along with a promissory estoppel claim based on alleged promises made by TCL during the parties' licensing negotiations." (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 4; Answer at 26-29.) Ericsson has also requested that the Court determine "the FRAND terms and conditions of a worldwide license between Ericsson and TCL" for Ericsson's SEP portfolio. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 4; Answer 29.)

At the same time, Ericsson and TCL (or entities that TCL owns) are litigating patent infringement claims related to patents at issue in the present FRAND action in other jurisdictions. The Court briefly summarizes the related litigation and its connection to the present dispute infra Part III.A.

II.   MOTION TO DEFINE SCOPE OF FRAND TRIAL

Ericsson moves the Court to issue a "ruling that the FRAND terms to be adjudicated at the jury trial will: (1) not include a license to implementation patents . . . and (2) include a 'release payment' for TCL's past unlicensed sales." (Mem. P. & A. Supp. Mot. re Scope of FRAND Trial 1, Docket Nos. 222, 224.) The Court will discuss each issue in turn.

### A. Implementation Patents

The parties agree that this action is a breach of contract action against Ericsson. (Mem. P. & A. Supp. Mot. re Scope of FRAND Trial 1.) "The underlying basis for each of TCL's asserted causes of action is its allegation that Ericsson breached its contract to ETSI (under which TCL claims third-party beneficiary status) to offer licenses under its standard essential patents on FRAND terms." (Id.)

The parties do not appear to dispute that the implementation patents are not declared standard-essential patents. Thus, Ericsson argues that there is no possible way the FRAND litigation could implicate Ericsson's implementation patents. (Mem. P. & A. Supp. Mot. re Scope of FRAND Trial 1-2.)

The Court agrees that Ericsson is not independently obligated to provide a license to non-SEP implementation patents. As Ericsson correctly notes, "[b]y the

3

express terms of the ETSI IPR declaration, which is the contract TCL seeks to enforce by this action, there is no commitment to license implementation patents." (Reply Supp. Mot. re Scope of FRAND Trial at 1, 3-5.) The Court finds no legal support for TCL's contention that Ericsson is obligated to offer its non-essential implementation patents on FRAND terms merely because Ericsson may have licensed its implementation patents along with its standard essential patents to TCL's competitors. An ETSI obligation to offer an SEP on FRAND terms does not require the standard-essential patentholder to offer identical terms to all licensees. (Gibson Decl., Ex. B at 2, Docket 262-3 ("License terms and conditions should be non-discriminatory; this does not necessarily imply identical terms."))

However, the Court agrees with TCL that the value of the implementation patents is relevant to the FRAND litigation regarding the SEPs. The royalty rate for the SEPs negotiated between Ericsson and other competitors may incorporate an agreement regarding the implementation patents, and thus comparison of those rates will require the parties to adjudicate the value apportioned to the SEPs versus the value of a license to the SEPs combined with an agreement or license regarding the implementation patents. See Microsoft Corp. v. Motorola, Inc., No. C10-1823JLR, 2013 WL 2111217, *69 ¶ 427 (W.D. Wash. Apr. 25, 2013) (finding it necessary to apportion the value of standard essential patents from other licensed properties where "multiple technologies (including both standard essential and non-essential patents) are licensed within the same agreement"). TCL correctly notes that a standard essential patentholder is entitled only "to a royalty that reflects the contribution of the standard-essential patent to the standard." (Opp'n Mot. re Scope of FRAND Trial 20.) Ericsson does not materially oppose this position. (See Reply Supp. Mot. re Scope of FRAND Trial 8:20-9:1-3.)

Accordingly, the Court concludes that the FRAND trial will not adjudicate a license of the non-essential implementation patents or a covenant not to sue regarding the non-essential implementation patents. However, the Court also concludes that the value of the implementation patents will be relevant to the extent necessary to determine the value of the SEPs at issue where apportionment is part of a comparative analysis of past licenses.

### B. Release Payment

Ericsson argues that the FRAND litigation should adjudicate the issue of whether TCL owes Ericsson a release payment for past unlicensed sales and for

what amount.  (See Mem. P. & A. Supp. Mot. re Scope of FRAND Trial 9-14.)  The Court agrees.

With respect to a release payment, TCL has represented to the Court that "the jury will need to decide (a) whether any such payment is owed, (b) the scope of the 'forgiveness' entailed by the payment, if any, and (c) the amount of the payment, if any."  (Pls.' Prelim. Br. re Jury Determinations 4, Docket No. 110.)

TCL now represents to the Court that it informed Ericsson that "it would agree to adjudicate the release payment issue during the FRAND trial . . . ."  (Opp'n Mot. re Scope of FRAND Trial 1.)  Specifically, TCL has offered to "agree to litigate the extent to which a release payment is owed, and the amount of any release payment, in the FRAND trial . . . ."  (Id., quoting Bader Decl., Ex. 2., Docket Nos. 241-3, 254.)

On the basis of TCL's representations, the Court concludes that TCL has conceded that an adjudication of the release payment falls within the scope of the FRAND trial.  Therefore, "the FRAND trial will address both Ericsson's entitlement to a release payment, as well as the amount of any release payment."  (See Opp'n Mot. re Scope of FRAND Trial 2 n.1.)

III.   MOTION FOR ANTI-SUIT INJUNCTION

As noted supra Part I, the parties are presently litigating infringement actions related to patents allegedly covered by Ericsson's FRAND obligation in at least seven other jurisdictions, both domestic and foreign.  Because the parties agree that the present FRAND action should resolve their global licensing dispute, TCL moves the Court to enjoin Ericsson "from further prosecuting any actions alleging infringement of its 2G, 3G, and 4G patents until the FRAND issues are resolved here in [this] action."  (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 12-13.)

The Court briefly summarizes the other actions below.

    A.    **Background on Other Actions**

        1.    Texas Actions

            *a.*    *The First Texas Action*

Several months after the filing of the present action, Ericsson filed suit against TCL in the United States District Court, Eastern District of Texas, seeking a declaratory judgment that Ericsson had complied with its FRAND obligations and for patent infringement of two alleged SEPs. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 6.) The First Texas Action was transferred to the Central District of California on March 31, 2015. (Ericsson Inc., et al. v. TCL Communication Technology Holdings Ltd., et al., 2:15-cv-02370-JVS-JC (the "Transferred Action") at Docket No. 89). The Transferred Action was assigned to this Court on April 2, 2014. (Id. at Docket No. 104.)

### b. *The Second Texas Action*

On January 8, 2015, Ericsson sued TCL in the Eastern District of Texas alleging infringement of non-essential implementation patents and seeking damages and injunctive relief. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 7.) "TCL's Answer alleges a license defense based on Ericsson's FRAND obligations." (Id.)

### 2. Foreign Actions

### a. *France*

On October 17, 2012, Ericsson initiated an action in France against TCT Mobile Europe SAS, TCT Mobile International Limited, and TCT Mobile Limited[2] for alleged infringements of three 3G SEPs. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 8.) The SEPs in question in the French action have been identified by the parties as at issue in the present FRAND litigation because Ericsson has identified them as essential to the 2G, 3G, and 4G standards. (Id.) As a remedy, Ericsson seeks damages, injunctive relief, and recall and destruction of all allegedly infringing devices. (Id.)

### b. *United Kingdom*

On August 20, 2013, TCT Mobile SAS initiated an action against Ericsson

---

[2] TCL notes that TCT Mobile Limited is a plaintiff and counter-defendant in the present action and that TCT Mobile Europe SAS and TCT Mobile International Limited are owned by TCL. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 8.)

in the United Kingdom ("UK") "seeking the revocation of the UK designations of three Ericsson patents." (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 8.) The three UK patents are the UK counterparts of the three French patents described supra, Part III.A.2. (Id.) Ericsson counter-claimed for infringement of the three UK patents, which have been identified by Ericsson as 2G, 3G, and 4G SEPs. (Id. at 8-9.) Ericsson seeks damages and an injunction. (Id. at 9.)

        *c.*      *Brazil*

On September 20, 2012, "Ericsson appealed to the Brazilian court" to prevent TCT Mobile-Telefones LTDA[3] from selling an TCL phone that allegedly infringes on Ericsson's patent. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 9.)

"On December 17, 2012, Ericsson initiated a second infringement action against the same defendant regarding the same phone model, this time invoking another patent." (Id.)

"On June 11, 2014, Ericsson initiated a third infringement action against the same defendant, based on the same patent invoked in the first case, but with respect to other TCL phones." (Id.)

Finally, on December 19, 2014, "Ericsson initiated a fourth infringement action against the same defendant, also regarding the same patent invoked in the first case, but again with respect to other TCL phones." (Id.) As a result of each action, Ericsson obtained preliminary injunctions, and TCT Mobile-Telefones LTDA was required to post a bond. (Id.)

Ericsson's infringement allegations in the Brazilian Actions are based on patents that Ericsson has identified as 2G, 3G, and 4G SEPs in the present FRAND litigation. (Id. at 10.)

        *d.*      *Russian Federation*

On December 13, 2012, Ericsson initiated an action in the Russian Federation against TMC Rus Limited Liability Company ("TMC Rus"), which is

---

[3] TCL owns TCT Mobile-Telefones LTDA. (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 9.)

7

owned by TCL.  (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 9.)  Ericsson sought to enjoin the import and sale of TCL products in Russia that allegedly infringe on a standard-essential Russian patent.  (See id. 9-10.)

On January 21, 2014, Ericsson initiated a second infringement action alleging that the import and sale of other TCL phones infringed the same patent.  (Id. at 9.)  However, the Russian Court dismissed the second complaint.  (Id.)  No final judgment has been issued in the first action.  (Id.)

   *e.*  *Argentina*

On May 23, 2014, Ericsson initiated an action against TCT Mobile S.A. alleging infringement of an Argentine patent by various TCL phones.  (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 11.)  TCT Mobile S.A. is owned by TCL.  (Id.) The Argentine patent "belongs to the same patent family as the patents at issue in the UK and France Actions and was identified by Ericsson as essential to the 2G, 3G, and 4G technologies standard."  (Id.)  Ericsson seeks injunctive relief preventing TCT Mobile S.A. from "manufacturing, using, selling, offering for sale, and/or importing" any infringing products.  (Id.)  The court granted Ericsson's request for a preliminary injunction regarding one phone, and TCT Mobile S.A. has appealed.  (Id.)  Ericsson is further requesting that the injunction apply to the other phones.  (Id.)  The appeal and Ericsson's request are pending as of the date of filing of TCL's injunction motion.  (Id.)

   *f.*  *Germany*

On November 26, 2014, Ericsson filed a patent infringement action against TCT Mobile Germany GmbH[4] based on TCL phones' infringing use of three German patents.  (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 11-12.)  The German patents in question are the counterparts of the patents at issue in the French and UK Actions.  (Id. at 12.)  Ericsson then filed a parallel action in Germany against TCL, TCT Mobile Limited, TCT Mobile Europe SAS, and TCT Mobile International Limited alleging infringement of the same patents.  (Id.)  Ericsson has represented that the German patents at issue in the German actions are 2G, 3G, and 4G SEPs.

---

[4] TCL notes that it owns TCT Mobile Germany GmbH.  (Mem. P. & A. Supp. Mot. Anti-Suit Inj. 12.)

8

(Id.) Ericsson seeks infringement damages, injunctive relief, and recall and destruction of infringing phones. (Id.)

### B. Legal Standards & Discussion

#### 1. The Second Texas Action

The Court may enjoin parties "from proceeding with a concurrent action involving the same or related issues." In re Van Geuns, 946 F.2d 845, 849 (Fed. Cir. 1991.) The "first-to-file" rule "favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1299 (Fed. Cir. 2012). "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." Id.

As noted, Ericsson is currently pursuing infringement claims against TCL based on TCL's alleged infringement of Ericsson's non-standard-essential implementation patents in the Eastern District of Texas ("the Second Texas Action").

The Court declines to enjoin the Second Texas Action. Although it was filed later than this action, the issues are not the same and are not necessarily related.

As the Court discusses supra, Part II.A, Ericsson has not designated the implementation patents as SEPs, and thus it is under no obligation to license the implementation patents under FRAND terms. The Court thus has no basis to prevent Ericsson from pursuing infringement claims that will not be resolved by the present FRAND litigation relating to Ericsson's 2G, 3G, and 4G SEPs. In other words, Ericsson should be able to pursue infringement claims based on patents that are not at issue in this case.

Accordingly, the Court declines to enjoin Ericsson from proceeding with its implementation patent infringement action in the Eastern District of Texas.

#### 2. The Foreign Actions

##### a. *Legal Standard*

In appropriate circumstances, the Court may issue an anti-suit injunction enjoining parties from proceeding with an action in a foreign jurisdiction. See E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 989 (9th Cir. 2006). Importantly, the Court enjoins the parties, not the foreign court, from proceeding with an action. Id. The Court's power to enjoin parties from proceeding with foreign litigation should be used "sparingly," out of comity. See Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League, 652 F.2d 852, 855 (9th Cir. 1981) (internal punctuation and citations omitted).

In order to determine whether an anti-suit injunction is warranted, the Court follows a three-step framework. Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 882 (9th Cir. 2012). The Court must first determine (1) whether the "parties and the issues are the same in both the domestic and foreign actions;" and (2) whether "the first action is dispositive of the action to be enjoined." Id. (quoting Gallo, 446 F.3d at 991).

If the threshold inquiry is met, the Court then considers whether the foreign litigation would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations." Gallo, 446 F.3d at 990 (quoting Seattle Totems, 652 F.2d at 855 (finding instructive In re Unterweser Reederei GmbH, 428 F.2d 888, 896 (5th Cir. 1970)). The Unterweser factors are disjunctive; "if any of the four elements is present, an anti-suit injunction may be proper." Gallo, 446 F.3d at 990. A court "may rely on any of the Unterweser factors if it applies to the case and if the impact on comity is tolerable." Id. at 991.

Finally, the Court considers whether an anti-suit injunction's "impact on comity is tolerable." Microsoft, 696 F.3d at 886 (citing Gallo, 446 F.3d at 991).

### b. *Discussion*

The Court agrees that the parties in the foreign action are either literally or effectively the same (see Mem. P. & A. Supp. Mot. Anti-Suit Inj. 14-15), which as a threshold matter permits the Court to consider issuing an injunction. See Microsoft, 696 at 882. The parties also appear to agree now that the FRAND litigation will be dispositive of the Foreign Actions, because the parties agree that a bilateral injunction is appropriate in this case now that the parties have agreed that

the FRAND litigation should adjudicate a release payment for past SEP infringement. (See Reply Supp. Mot. Anti-Suit Inj. 4-6.)

Ericsson's main objection to the injunction of its foreign patent infringement actions is that an injunction binding Ericsson, but not TCL, from pursuing litigation in foreign jurisdictions would be unilateral and unfair. "Ericsson is not opposed to a global resolution of its essential patent licensing and damages claims in this litigation." (Opp'n Mot. Anti-Suit Inj. 13.) Ericsson reports that it is "willing to enter a mutual injunction regarding essential patent litigation if the FRAND trial in this case will result in a cross license, including payments for unlicensed sales prior to the effective date of the cross license ('release payment')." (Opp'n Mot. Anti-Suit Inj. 2-3.)

In response, TCL concedes that it "has agreed to litigate the release payment issue in the FRAND trial, and also has agreed to a bilateral injunction with respect to the foreign litigation." (Reply Supp. Mot. Anti-Suit Inj. 4-6.)

In sum, both parties have indicated their desire that this action should result in a "global resolution" of the SEP patent licensing and damages claims. (See Opp'n Mot. Anti-Suit Inj. 12-13; Reply Supp. Mot. Anti-Suit Inj. 4-6.) The parties' failure to stipulate appears to have turned on previously unresolved issues related to the non-standard-essential implementation patents and the release payment. Having resolved both issues, this Court determines that a bilateral preliminary anti-suit injunction is warranted based on the parties' mutual agreement. Thus, the Court orders that neither party, nor its affiliates or subsidiaries shall initiate or continue to prosecute a patent infringement action against the other regarding the 2G, 3G, and 4G SEPs at issue before this Court or their foreign equivalents.

Accordingly, TCL's motion for an anti-suit injunction is DENIED IN PART with respect to the Second Texas Action and GRANTED IN PART with respect to the Foreign Actions as described herein.

The parties shall submit a proposed injunction consistent with this order within seven (7) days.

IV. MOTION FOR RETURN, DESTRUCTION, OR CONFIDENTIAL TREATMENT OF INADVERTENTLY DISCLOSED MATERIALS

Ericsson's present motion seeks return, destruction, or confidential treatment of licensing-related information TCL obtained from the public domain that Ericsson argues was inadvertently disclosed ("the Contested Documents"). (Mot. Return 1.) The parties have conducted discovery in this case under Magistrate Judge Nakazato's December 8, 2014 Confidentiality Order Governing the Designation and Handling of Discovery Material ("Confidentiality Order"). (Docket No. 72.)

In his November 17, 2014 Order Granting in Part and Denying in Part the parties' Joint Motion for Entry of Confidentiality Order, the Magistrate Judge found that TCL's in house counsel should not have access to Ericsson's confidential third-party licensing related documents "given the nature of the competitive business environment the parties are both involved in." (Docket No. 69.)

### A. The Confidentiality Order

The Confidentiality Order governs all "Discovery Material furnished by any party to any other party, and it includes any non-party who receives a subpoena in connection with this action." (Confidentiality Order 3.)

Under the Confidentiality Order, "protected information" "includes any Discovery Material that the Disclosing Party in good faith designates as 'CONFIDENTIAL,' 'CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY,' or 'CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY – SOURCE CODE' pursuant to this Confidentiality Order . . . ." (Id. at 5.) The protective order specifically defines the term "Discovery Material" as that "produced or provided by any party or non-party or obtained by any party during discovery or in connection with Rule 26(a) disclosures in this action . . . ." (Id.)

The Confidentiality Order further notes that the following information is not confidential under its terms:

> (a) any information which, at the time of disclosure to a Receiving Party, is lawfully in the public domain;
>
> (b) any information which, after disclosure to a Receiving Party, lawfully becomes part of the public

>   domain as a result of publication not involving a violation of this Confidentiality Order;
>
>   (c) any information that a Receiving Party can show was received by it, whether before or after the disclosure, from a source other than the Producing Party who obtained the information lawfully and under no obligation of confidentiality to the Producing Party; and
>
>   (d) any information that a Receiving Party can show was independently developed by it after the time of disclosure by personnel who have not had access to the Producing Party's Protected Information.

(Id. at 8-9.) In the event of inadvertent disclosure of protected information, the Confidentiality Order provides that "[i]nadvertent failure to designate as Protected Information . . . shall not constitute a waiver of, nor a prejudice to, any claim that such or related material is Protected Information . . . provided that the Producing Party notifies the Receiving Party in writing within ten (10) business days after discovery of such inadvertent production or disclosure." (Id. at 30-31, § V.J.) Furthermore, "inadvertent disclosure does not change the status of Protected Information or waive the right to hold the disclosed document or information as Protected Information." (Id. at 23-24, § III.G.)

### B. TCL's "Discovery" of the Contested Documents

The Contested Documents are demonstrative exhibits uploaded without any confidentiality designation by Ericsson's counsel to an online case docket in connection with litigation between Ericsson and Samsung before the International Trade Commission ("ITC"). (Opp'n Mot. Return 1.)

In January 2014, Ericsson and Samsung entered into a license agreement which covered, inter alia, Ericsson's 2G, 3G, and 4G SEPs. (Opp'n Mot. Return 3.) The existence of a license agreement between Ericsson and Samsung is public information. (Id. at 3.)

In June 2014, TCL propounded a set of document requests on Ericsson, seeking, inter alia, (1) "all documents related to Ericsson's license agreements

which cover the same intellectual property at issue in this case;" and (2) "all documents related to FRAND royalty rates for the same intellectual property, including negotiations regarding a FRAND rate." (Opp'n Mot. Return 3.) TCL did not produce the Contested Documents. (See Opp'n Mot. Return 6-7.)

In February 2015, TCL's counsel was reviewing the Ericsson v. Samsung online case docket (the Electronic Document Information System ("EDIS")) and identified the Contested Documents. (Opp'n Mot. Return 5.) The Contested Documents were not designated "confidential" and were available for download to any member of the public. (Opp'n Mot. Return 5.) The Contested Documents were uploaded by Ericsson's counsel in January 2014, and had at that time been available to the public for 13 months. (Opp'n Mot. Return 5.) TCL's counsel downloaded the Contested Documents, which contain information that is highly relevant to the current litigation. (Opp'n Mot. Return 5.)

TCL reports that it has shared some of the Contested Documents with in-house counsel for TCL. (Opp'n Mot. Return 6.)

### C. Ericsson's Remedial Action

Ericsson acknowledges that the Contested Documents were placed in the public domain on EDIS without an express confidentiality designation but claims that TCL should have known they contained the kind of confidential business information subject to confidential treatment under the Confidentiality Order. (See Mot. Return 3-4.) Ericsson also notes that many of the slides in the Contested Documents contain "express reference to their confidential nature, either through a citation to a confidential source of the information in the slide or a notation that the slide 'contains confidential business information.'" (Mot. Return 4, 4 n.1.)

Ericsson discovered the inadvertent public disclosure of its confidential information on April 16, 2015 when TCL filed portions of the Contested Documents in the present action at Docket No. 152-2. On April 17, Ericsson took remedial action by calling the ITC, which immediately removed the Contested Documents from public access. The same day, Ericsson sent a letter to TCL requesting, inter alia, "Confidential - Outside Attorneys' Eyes Only" treatment of the Contested Documents.

### D. Discussion

14

TCL argues that the Court should not treat the Contested Documents as confidential because they were available to the public for over a year.  (Opp'n Mot. 1.)  The Court disagrees.

Although the information was publicly available, TCL's continued use of what it likely should have known was confidential business information is in tension with the Magistrate Judge's decision to treat confidential business information relating to Ericsson's third-party licensing agreements as "Confidential - Outside Attorneys' Eyes Only."  (Docket No. 69.)  As Ericsson notes, the Confidentiality Order provides that "inadvertent disclosure does not change the status of Protected Information."  (Confidentiality Order 23024, § III.G.)  The Magistrate Judge rather clearly notes that the type of information contained in the Contested Documents is "Protected Information" within the meaning of this litigation.  (Docket No. 69.)

By the very terms of the Confidentiality Order, Ericsson has not waived its right to seek protection of information that it clearly inadvertently disclosed to the public.  Ericsson, having discovered an inadvertent public disclosure of information that the Magistrate Judge determined protected, acted immediately to remedy the inadvertent disclosure of protected information pursuant to the terms of the Confidentiality Order.

Notably, TCL does not argue that Ericsson intended to make public the information it disclosed in the ITC proceeding.  Furthermore, given the content of the Contested Documents and the Magistrate Judge's discussion of this precise issue in his November 17th Order, TCL likely should have known that the Contested Documents fairly should have been treated as confidential.  TCL cannot in good faith claim that Ericsson is seeking to treat the Contested Documents as confidential in hindsight in order to gain an advantage in this litigation.

Furthermore, the Court perceives no prejudice to TCL by treating the Contested Materials as confidential.  (<u>See</u> Mot. Return 16.) As noted by the Magistrate Judge, confidential treatment does not prevent TCL from using the highly relevant business information to its benefit in the present FRAND litigation.  (<u>See</u> Docket  No. 69.)  In addition, Ericsson admits that it "is not seeking to prevent TCL from using the relevant confidential licensing information in this litigation."  (Mot. Return 20.)

Accordingly, the Court GRANTS Ericsson's motion and directs the parties to treat the Contested Documents as "Confidential – Outside Attorneys' Eyes Only" in accordance with the Confidentiality Order and the Magistrate Judge's November 17, 2014 Order.

V.   JOINT MOTION TO CONSOLIDATE CASES

The parties jointly move the Court to consolidate this case with <u>Ericsson Inc., et al. V. TCL Communication Technology Holdings, LTD, et al.</u>, Case No. 2-15-cv-02370-JVS-JC (the "Transferred Action"). (Joint Mot. Consolidate 1.)

In the Transferred Action, Ericsson asserts claims for patent infringement relating to its '506 and '556 Patents and one count of declaratory judgment regarding FRAND. (Joint Mot. Consolidate 2-3.) TCL also asserts claims of patent infringement relating to its '340 and '718 Patents in the Transferred Action. Because the Court stayed all matters other than FRAND in the present action, the parties similarly request that the Court stay the non-FRAND matters in the Transferred Action. (<u>See</u> Joint. Mot. Consolidate 2-3.)

Prior to transfer of the Transferred Action, Ericsson moved for leave to amend its complaint to drop its declaratory judgment claims for non-infringement and invalidity of TCL's '340 and '718 Patents. (Joint Mot. Consolidate 3-4.) The motion was granted. (<u>Id.</u> at 4.) Thus, the parties also request that the Court issue an order to be reflected on the docket sheet in this action noting the prior dismissal without prejudice of Ericsson's declaratory judgment claims in regard to TCL's patents.

The Court GRANTS the parties' motion to consolidate cases, stays the claims as requested, and notes that Ericsson previously dismissed without prejudice its declaratory judgment claims as described herein.

VI.   CONCLUSION

For the foregoing reasons, the Court (1) GRANTS IN PART and DENIES IN PART Ericsson's motion regarding the scope of the FRAND Trial; (2) GRANTS IN PART and DENIES IN PART TCL's motion for an anti-suit injunction; (3) GRANTS Ericsson's motion to treat as confidential inadvertently disclosed materials; and (4) GRANTS the parties' motion to consolidate cases and

stay non-FRAND claims in the Transferred Action. The docket shall reflect Ericsson's voluntary dismissal without prejudice of its declaratory judgment claims of noninfringement of TCL's '340 and '718 patents.

      IT IS SO ORDERED.