SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
STEPHEN S. KORNICZKY, Cal. Bar No. 135532
skorniczky@sheppardmullin.com
MARTIN R. BADER, Cal. Bar No. 222865
mbader@sheppardmullin.com
MATTHEW W. HOLDER, Cal. Bar No. 217619
mholder@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone:   858.720.8900
Facsimile:   858.509.3691

Attorneys for TCL Communication
Technology Holdings, Ltd., TCT
Mobile Limited, and TCT Mobile
(US) Inc.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON, *et al.*,<br><br>                    Defendants.<br>_____<br>TELEFONAKTIEBOLAGET LM ERICSSON, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., *et al.*,<br><br>                    Defendants. | Case No. SACV14-00341 JVS (DFMx)<br><br>Consolidated with CV15-02370 JVS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TCL'S MOTION FOR SANCTIONS AGAINST ERICSSON FOR SPOLIATION OF DOCUMENTS**<br><br>Hearing Date: Sept. 22, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom: 6B<br>Before: Magistrate Judge Douglas F. McCormick<br><br>**JURY TRIAL DEMANDED**<br><br>**[PUBLIC, REDACTED VERSION]** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................... 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................... 3

    A.  Brief Summary of This Lawsuit ................................................ 3

    B.  Brief Summary of Ericsson's Litigations Against Samsung ................. 4

    C.  TCL Requests that Ericsson Produce Numerous Types of
        Documents from the Ericsson–Samsung Litigations ............................ 5

    D.  Ericsson's Document Destruction Efforts First Come to Light in
        the Fall of 2014. ...................................................................... 6

    E.  TCL Continues to Press the Issue with Ericsson, and Ericsson
        Begins to Reveal the Scope of Its Document Destruction Efforts .......... 8

    F.  In June 2015, in the Midst of the Parties' Discussions About
        Ericsson's Prior Document Destruction Efforts, Ericsson
        Conducts a Second Wave of Document Destruction ......................... 10

    G.  Ericsson Ultimately Refuses TCL's Request for Relief, Making
        This Motion Necessary. ............................................................ 12

III.  ERICSSON ENGAGED IN SPOLIATION, AND A REMEDY IS
     DUE. ..................................................................................... 13

    A.  Brief Summary of the Law re Spoliation ..................................... 13

    B.  Ericsson Admits It Destroyed Documents, and the Documents
        Are Relevant to This Litigation. ................................................ 14

    C.  Ericsson Had a Duty to Preserve the Documents It Destroyed,
        Which Arose No Later Than January 2014. ................................... 15

        1.  Ericsson's duty to preserve documents had multiple
            sources. ..................................................................... 15

        2.  Ericsson's duty to preserve documents was not excused by
            the ITC Protective Order. .............................................. 18

    D.  Ericsson Destroyed the Documents Willfully and in Bad Faith. .......... 19

    E.  Ericsson's Document Destruction Prejudiced TCL. ......................... 21

IV.  REQUESTED RELIEF .......................................................................... 22

V.  CONCLUSION .................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Apple Inc. v. Samsung Elecs. Co.*
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................................................... 22

*CollegeSource, Inc. v. AcademyOne, Inc.*
   No. 08-cv-1987, 2014 WL 223082 (S.D. Cal. Jan. 21, 2014) ........................... 17

*Google Inc. v. Am. Blind & Wallpaper Factory*
   No. 03 Civ 5340, 2007 WL 1848665 (N.D. Cal. June 27, 2007) .......... 16, 21, 22

*Hynix Semiconductor, Inc. v. Rambus Inc.*
   591 F. Supp. 2d 1038 (N.D. Cal. 2006) ....................................................... 21, 23

*Hynix Semiconductor Inc. v. Rambus Inc.*
   645 F.3d 1336 (Fed. Cir. 2011) .................................................................... 13, 19

*Hynix Semiconductor Inc. v. Rambus Inc.*
   897 F. Supp. 2d 939 (N.D. Cal. 2012) ......................................................... 19, 21

*Leon v. IDX Sys. Corp.*
   464 F. 3d 951 (9th Cir. 2006) ....................................................................... 14, 21

*Micron Tech., Inc. v. Rambus*
   645 F.3d 1311 (Fed. Cir. 2011) ......................... 14, 16, 19, 20, 21, 22, 23, 24, 25

*Mosel Vitelic Corp. v. Micron Tech., Inc.*
   162 F. Supp. 2d 307 (D. Del. 2000) .................................................................... 14

*Nutramax Labs., Inc. v. Theodosakis*
   No. CCB-08-879, 2009 WL 2778388 (D. Md. June 8, 2009) ............................ 22

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*
   685 F. Supp. 2d 456 (S.D.N.Y. 2010) ............................................................... 25

*PersonalWeb Techs., LLC v. Google Inc.*
   No. 13-cv-01317, 2014 WL 580290 (N.D. Cal. 2014) ................................. 16, 20

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*
   682 F.2d 802 (9th Cir. 1982) .............................................................................. 21

*Quinby v. WestLB AG*
   245 F.R.D. 94 (S.D.N.Y. 2006)............................................................................23

*SK Hynix Inc. v. Rambus Inc.*
   No. C–00–20905, 2013 WL 1915865 (N.D. Cal. May 8, 2013).................22, 25

*Skyline Steel, LLC v. PilePro, LLC*
   -- F. Supp. 3d --, 2015 WL 1881114
   (S.D.N.Y. Apr. 24, 2015) ...............................................................19, 22, 23, 24

*Surowiec v. Capital Title Agency, Inc.*
   790 F. Supp. 2d 997 (D. Ariz. 2011) ..................................................................16

*Thompson Co. v. General Nutrition Corp.*
   593 F. Supp. 1443 (C.D. Cal. 1984) ...................................................................24

*Young v. Facebook, Inc.*
   No. 5:10-cv-03579-JF/PVT, 2010 U.S. Dist. LEXIS 98261 (N.D. Cal.
   Sept. 13, 2010)....................................................................................................16

<u>Statutes</u>

California Penal Code Section 135.........................................................................24

<u>Other Authorities</u>

Federal Rule of Civil Procedure 37 ...........................................................1, 3, 4, 14

Federal Rule of Civil Procedure 37(b)(2)(C) ........................................................14

Plaintiffs TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US) Inc. (collectively, "TCL") submit this Memorandum in support of its Motion for Sanctions for Spoliation of Documents by Telefonaktiebolaget LM Ericsson and Ericsson Inc. (collectively, "Ericsson"), under Fed. R. Civ. P. 37 and the Court's inherent authority to sanction for spoliation.

## I.   <u>INTRODUCTION</u>

This motion concerns documents from Ericsson's prior litigations with Samsung (both before the International Trade Commission, or "ITC," and in federal court), which Ericsson admits it destroyed and/or returned immediately before TCL filed this lawsuit in March 2014, in the several months after TCL filed this lawsuit, and also in June 2015. Ericsson's litigation with Samsung was very similar, if not identical, to the present litigation, in that Ericsson and Samsung were litigating regarding a license to each party's 2G, 3G, and 4G patent portfolios. As a result, the issues addressed included, among other things, the nature of the FRAND obligation, how to calculate a FRAND royalty rate, and the nature and value of Ericsson's patents. These are the exact same issues which are at the heart of this case.

Unfortunately, beginning approximately one month before TCL filed this lawsuit in March 2014, and continuing into June 2015, Ericsson unilaterally acted to destroy a large (but still undefined) volume of relevant documents from its litigations against Samsung. Based on Ericsson's admissions to date, the documents destroyed by Ericsson included expert reports related to claim construction of Ericsson's patents, expert reports related to the validity of Ericsson's patents, expert reports regarding FRAND terms for a license to Ericsson's patents, documents relating to whether Ericsson's patents are standard-essential, and other documents, including exhibits, statements, and declarations related to Ericsson's alleged SEPs. Ericsson's document destruction efforts apparently were focused on materials created by Samsung, given that such materials were more likely to reflect Samsung's confidential business information ("CBI"), and Ericsson admits it

destroyed everything with Samsung CBI, excluding the final hearing transcripts and exhibits.  Of course, materials created by Samsung, and the testimony of Samsung's witnesses, are likely to contain the most helpful information to TCL (and the most harmful to Ericsson), because Samsung had the same incentive as TCL to attack Ericsson's patent portfolio (*e.g.*, to make arguments regarding the essentiality and/or invalidity of Ericsson's patents), as well as to assess the value of the portfolio.

Ericsson's claimed excuse for destroying and/or returning the documents is that it was required to do so by the protective order in the ITC proceedings (the "ITC Protective Order").  Ericsson's argument is not supported by the language of the ITC Protective Order, nor did its actions follow the language of the ITC Protective Order.  However, that is ultimately irrelevant because Ericsson had a separate and affirmative duty to preserve documents once litigation with TCL was imminent, and certainly after TCL filed this lawsuit (in addition, Ericsson was involved in patent litigation with TCL in various foreign countries when the documents were destroyed).  Any alleged duty a party has to destroy documents (and here, there was none) must yield to a competing duty to preserve documents.  The prudent and proper course of action for Ericsson would have been to identify the issue, give notice to all of the potential stakeholders (*i.e.*, Samsung and the other third parties, TCL, the ITC, and/or this Court), and wait for guidance from the ITC and/or this Court before destroying any documents.  Instead, Ericsson thwarted TCL's ability to obtain the documents in a timely and straightforward manner.  Ericsson chose to act unilaterally by destroying the documents, leaving TCL to spend months trying to investigate what happened, while struggling to obtain complete and consistent information from Ericsson.  Now, not even knowing exactly what has been destroyed, TCL is left to pursue all of the documents in question from Samsung and 13 other third parties.  Ericsson's motive in destroying the documents was to prejudice TCL either by depriving it of relevant, helpful evidence, and/or making it harder and more time-consuming for TCL to obtain that evidence.

As addressed herein, Ericsson's conduct constitutes improper spoliation of evidence, and therefore a remedy is due.  By this motion, TCL asks the Court to order the following:  (1) Ericsson must catalogue and describe what it destroyed and/or returned; (2) Ericsson must take all reasonable steps, at its own expense, to recoup any of the destroyed and/or returned documents from the third parties; (3) Ericsson must reimburse TCL for all fees and expenses it has incurred pursuing this issue, as well as pay a sanction as punishment for its behavior; (4) Ericsson must submit to discovery regarding the circumstances of the document destruction efforts, including providing privileged communications; and (5) an adverse inference instruction should be used against Ericsson at trial.  The specific nature of the adverse inference instruction can be determined once the above discovery is complete, and the full scope of Ericsson's wrongdoing has been determined.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   Brief Summary of This Lawsuit

Ericsson is a member of two standard-development organizations ("SDOs") relevant to this action—the European Telecommunications Standards Institute ("ETSI") and the 3rd Generation Partnership Project ("3GPP").  (Dkt. 59, ¶ 10.)  ETSI and 3GPP have been involved in standardizing a number of 2G, 3G, and 4G mobile cellular technologies.  (*Id.*, ¶ 41.)  Ericsson has declared many of its patents to be essential to the 2G, 3G, and 4G telecommunications standards (the "Mobile Standards") established by ETSI.  (*Id.*, ¶ 45.)  As a result, Ericsson must license its patents consistent with ETSI IPR Policy.  (*Id.*, ¶ 68.)  According to ETSI IPR policy, if an ETSI member owns intellectual property that may be considered essential to a particular standard or technical specification, it must grant irrevocable licenses to third parties on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions.  (Dkt. 31, ¶¶ 7–8.)

TCL is the fifth-largest mobile telecommunications vendor in the world, with products available in over 100 countries.  (Dkt. 31, ¶ 2.)  TCL had a license to

Ericsson's 2G patents from 2007 through early 2014.  Before filing this action, TCL negotiated with Ericsson to obtain FRAND terms for a license to all patents Ericsson has declared essential to the Mobile Standards (its "SEPs").  Starting September 20, 2012, Ericsson began suing TCL in foreign jurisdictions for alleged infringement of its SEPs.  (Dkt. 279-1, at 6–8.)  Indeed, by the time Ericsson's document destruction activities apparently began in January 2014, patent litigation was pending between the parties in four countries.

On March 5, 2014, TCL filed this lawsuit against Ericsson.  TCL filed this lawsuit because Ericsson failed to offer a license to its SEP portfolio on FRAND terms, and TCL's existing 2G license with Ericsson was scheduled to expire in three days.  TCL's complaint alleges various claims against Ericsson for breach of its FRAND obligation, as well as patent claims involving two Ericsson SEPs (the same SEPs at issue in Ericsson's prior litigation with Samsung).  (Dkt. 31.)  In addition to seeking damages resulting from Ericsson's breach of its FRAND obligation, TCL has requested that the Court "[d]ecree that TCL is entitled to license from Ericsson any and all [Ericsson SEPs] under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination," and determine what a FRAND rate would be for a license to Ericsson's patents.  (Dkt. 31, at 41.)

On June 3, 2014, Ericsson sued TCL in the Eastern District of Texas for allegedly infringing the two SEPs also at issue here in California.  (Case No. 2:15-cv-02370 (C.D. Cal.), Dkt. 1.)  The parties in Texas also asserted various claims related to Ericsson's FRAND obligation, such that the pleadings in Texas essentially became a mirror image of the pleadings in California.  (*Id.* at Dkt. 17, 22, 52.)  The Texas court ultimately transferred the case here, and the Court then consolidated it with TCL's action, as captioned above (the "Transferred Case").  (Dkt. 281.)

**B.  Brief Summary of Ericsson's Litigations Against Samsung**

On several occasions since 2001, Ericsson and Samsung have litigated competing claims regarding their respective patent portfolios and FRAND

Case Nos. SACV14-00341, CV15-02370 JVS (DFMx)
MEM. OF P. & A. ISO TCL'S MOT. FOR SANCTIONS

obligations.  The issues litigated between Ericsson and Samsung have included, among other things, breach of the parties' respective FRAND obligations, the validity and value of the parties' respective SEPs, and the proper royalty rate for a license to both parties' SEPs.  These are the same issues currently being litigated in this action between Ericsson and TCL.[1]

Ericsson and Samsung first entered into a cross-license in 2001, which covered each party's SEPs for the 2G and 3G standards.  The parties' renewal negotiations failed when that agreement expired at the end of 2005, spawning cross-suits involving district court, ITC, and foreign litigations.  The parties accused each other of breaching the contract to license ETSI-declared SEPs on FRAND terms, among other things.  By July 2007, the parties resolved their disputes and executed a second cross-license.

After the second license expired in March 2011, renewal negotiations failed and the parties sued each other again (in the same venues and under the same legal theories).  In addition to disputing the FRAND licensing terms for their 2G and 3G SEP portfolios, the parties also disputed the terms for their 4G portfolios.  The parties both sought specific performance of the other's alleged FRAND obligations. By late January 2014, Samsung and Ericsson executed a third cross-license and settled.  (Bader Decl., Ex. 1.)  The last of the Ericsson–Samsung litigations terminated March 11, 2014—six days *after* TCL filed this lawsuit.  (*Id.*, Ex. 2.)

**C.**  **TCL Requests that Ericsson Produce Numerous Types of Documents from the Ericsson–Samsung Litigations.**

On numerous occasions, TCL has requested that Ericsson produce documents from the Ericsson–Samsung litigations, including on June 5, 2014 (RFP Nos. 1–7), and January 20, 2015 (RFP Nos. 8–71).  (*Id.*, Ex. 3.)  In addition, on September 15 and November 4, 2014, TCL requested documents from the Ericsson-Samsung

---

[1] This summary relies on information on the public dockets of the following proceedings:  E.D. Tex. Case Nos. 2:06-CV-63, 6:12-CV-894, 6:12-CV-895, and 6:13-CV-364; and ITC Investigation Nos. 337-862, -866, and -868.

litigations via letter (as is the custom in Texas) in the Transferred Case. (*Id.*, Exs. 4, 6.) In particular, TCL has requested that Ericsson produce the following:

- prior-art references, expert reports and contentions on patent issues for the patents Ericsson asserts against, or seeks to license to, TCL (*see* RFP Nos. 3, 7, 35, 36, 37, 40, 42, 44, 47, 55);

- expert reports regarding FRAND terms for licensing Ericsson's SEPs, identifying Ericsson patents as SEPs, or whether Ericsson's patents are SEPs (RFP Nos. 3, 6, 7,19, 37, 38, 40, 42, 44, 47, 55);

- documents and communications related to Ericsson's settlement with Samsung (*see* RFP Nos. 3, 12, 19, 37, 40, 42, 55, 72);

- exhibits, statements, affidavits, or declarations submitted or filed related to Ericsson's SEPs, briefing, documents filed under seal, and hearing transcripts (*see* RFP Nos. 3, 7, 37, 38–40, 42, 45–47, 55); and

- transcripts from depositions, hearings, trial, or other proceedings of Ericsson witnesses, and responses to discovery by Ericsson (*see* RFP Nos. 3, 7, 37, 38, 40, 42, 43–47).

There is no dispute that Ericsson ultimately agreed to produce documents responsive to each of the above requests from TCL. (Bader Decl. ¶ 24.)

### D. Ericsson's Document Destruction Efforts First Come to Light in the Fall of 2014.

In the fall of 2014, following TCL's requests, the parties began meeting and conferring regarding the extent to which Ericsson was in possession of relevant documents from its prior litigations with Samsung. As indicated above, TCL sent a letter to Ericsson on September 15, 2014, in connection with the Transferred Case in Texas, seeking documents relevant to TCL's argument that some or all of Ericsson's alleged SEPs may be invalid. (*Id.* at 1.) TCL's letter to Ericsson provided a long, detailed list of documents in which TCL was interested. (*Id.*)

Ericsson responded on September 26, 2014. To TCL's surprise, Ericsson

indicated "most of the materials requested in [TCL's] letter are no longer in Ericsson's possession, custody, and/or control," because Ericsson had destroyed "all items from [ITC Investigation No. 337-TA-862] containing Samsung confidential business information" (allegedly pursuant to the ITC Protective Order).  (*Id.*, Ex. 5.)

As Ericsson continued to produce documents in the Transferred Case in Texas, TCL followed up regarding documents which appeared to be missing.  (*Id.*, Ex. 6.)  In response, Ericsson once again indicated "documents designated by Samsung as containing CBI were destroyed."  (*Id.*, Ex. 7.)  Although Ericsson produced some of the documents requested by TCL, that was because the documents "were not designated by Samsung as CBI and therefore [were] still in Ericsson's possession."  (*Id.*)  Ericsson explained it had recently "repeated [its] search and re-confirmed that Ericsson has indeed produced to TCL *all* of the requested invalidity contentions, invalidity claim charts, alleged prior art, and invalidity expert reports in Ericsson's possession."  (*Id.* (emphasis added).)  In short, Ericsson indicated to TCL that it had *no* further documents to produce, because the other documents described and requested in TCL's letters dated September 15 and November 4, 2014, had been destroyed.

Given the way in which law firms and/or expert witnesses typically maintain their files (*i.e.*, they preserve a file copy), TCL was skeptical that Ericsson and its agents (*e.g.*, its outside counsel, as well as any experts and consultants) had actually destroyed all copies of the documents being discussed between the parties.  TCL also disagreed that the ITC Protective Order actually required Ericsson to destroy documents.  As a result, TCL sent another letter to Ericsson on November 24, 2014, asking Ericsson to confirm that its outside counsel, experts, and witnesses also destroyed copies of the documents containing Samsung CBI.  (*Id.*, Ex. 8.)  In addition, TCL asked Ericsson to provide copies of "any written requests made pursuant to any Protective Order to destroy Samsung CBI."  (*Id.*)

On December 5, 2014, Ericsson verified that its counsel, experts, and

witnesses had destroyed all materials designated as Samsung CBI, and this was satisfactory to Samsung.  (*Id.*, Ex. 9.)  Several weeks later, after TCL demanded further clarification, Ericsson finally gave TCL a copy of the letter by which it had "certified" to Samsung the fact it had destroyed all Samsung CBI.  (*Id.*, Ex. 10.)  Notably, the letter from Ericsson to Samsung was dated May 8, 2014—over *three months* after Ericsson and Samsung had settled their litigation, and over *two months* after TCL had filed this lawsuit against Ericsson.  (*Id.*)  The letter did not list what Ericsson had destroyed, nor did it reference any request by Samsung that Ericsson destroy any documents.  (*Id.*)  Instead, the letter self-servingly "confirm[ed] [Ericsson's] compliance with the [supposed] document destruction requirements," and indicated Ericsson had retained a copy of the hearing transcripts and admitted exhibits from the ITC proceedings.  (*Id.*)

> ### E.     TCL Continues to Press the Issue with Ericsson, and Ericsson Begins to Reveal the Scope of Its Document Destruction Efforts.

By May 1, 2015, TCL continued to have concerns regarding the completeness of Ericsson's production of documents from the Ericsson-Samsung litigations, as well as Ericsson's destruction of documents.  For example, in February 2015, the incomplete nature of Ericsson's document production was highlighted by TCL's discovery of many highly relevant documents from Ericsson's litigation with Samsung on the public ITC docket, which Ericsson had yet to produce to TCL in this litigation.  (Dkt. 244 at 3-7.)  As a result, TCL sent Ericsson a comprehensive letter which, among other things, (1) summarized the various types of documents requested by TCL, and why they are relevant to this case; (2) provided lists of specific documents observed by TCL on the public dockets in Ericsson's prior cases against Samsung, which Ericsson had not yet produced; and (3) requested various information from Ericsson, including a specific accounting of what Ericsson had destroyed, and copies of any related correspondence between Ericsson and the third parties.  (Bader Decl., Ex. 11.)

The parties discussed TCL's May 1 letter during a telephone conference on May 12, 2015.  TCL then followed up with another letter dated May 14, 2015.  (*Id.*, Ex. 12.)  During the May 12 call, as well as in its May 14 letter, TCL once again requested that Ericsson specifically identify the documents it destroyed from its prior litigations with Samsung.  (*Id.*, Ex. 13.)  TCL also indicated its intent to move to compel any responsive documents which remained in Ericsson's possession, but which Ericsson had not yet produced.  (*Id.*)

On June 2, 2015, Ericsson finally provided a more detailed response to TCL's inquiries (although the response was still lacking in several respects).  (*Id.*, Ex. 14.)  First, regarding a number of different categories of documents from the 862 Investigation with Samsung, Ericsson indicated it had located many additional responsive documents, and was in the process of producing such documents to TCL.  (*Id.*)  Indeed, during May and into June, Ericsson produced tens of thousands of additional pages of responsive documents from the 862 Investigation.  (*Id.* at ¶ 14.)  Although these document productions were certainly welcome, they raised additional questions and suspicions about Ericsson's litigation conduct given that in its letter to TCL dated November 14, 2014, Ericsson had made the contrary representation that it had *no further responsive documents* from the 862 Investigation to produce to TCL.  (*Id.*, Ex. 7.)  Given Ericsson's change in its position, TCL continued to have a heightened concern regarding what documents were still in Ericsson's possession, or were once in Ericsson's possession but were later destroyed, which TCL was *not* receiving.

Second, Ericsson finally provided TCL with additional information regarding its document destruction efforts.  In particular, Ericsson admitted "[t]his destruction took place between January 2014 and May 9, 2014" (although Ericsson was not any more specific).  (*Id.*, Ex. 14, at 4.)  Again, this time period includes two months (January and February 2014) when U.S. litigation between Ericsson and TCL was imminent (and litigation in four other countries was already underway), as well as

the two months after TCL filed this lawsuit on March 3, 2014.  (Dkt. 1.)

Third, Ericsson finally admitted many of the documents it had destroyed were responsive to a number of TCL's requests.  (*Id.*, Ex. 14, at 4.)  In particular, Ericsson admitted the documents it destroyed likely included expert reports related to claim construction of Ericsson's patents (category 3 in the June 2 letter); expert reports related to the validity of Ericsson's patents (category 4); expert reports regarding FRAND terms for a license to Ericsson's patents (category 5); documents relating to whether Ericsson's patents are standard-essential (category 6); briefing, documents filed under seal, and hearing transcripts from the Ericsson-Samsung litigation (category 8); and other documents, including exhibits, statements, and declarations related to Ericsson's alleged SEPs (category 9).  (*Id.* at 2–4.)

Lastly, Ericsson included a table of at least 57 documents from the Ericsson–Samsung litigation which Ericsson believed it had destroyed.  (*Id.* at 5–7.)  Although the substance of the documents is difficult to glean from the short descriptions provided in Ericsson's letter, it is clear the destroyed documents include expert reports by two of Ericsson's disclosed FRAND experts in this case (Dr. Jonathan Putnam and Benedicte Fauvarque-Cosson), pre-and post-hearing briefing and statements by Samsung and the ITC, and Samsung's expert reports, including a report by a technical expert hired by TCL in this case (Dr. Apostolos Kakaes), as well as a report by Samsung's technical expert addressing two SEPs which Ericsson is asserting against TCL.  (*Id.*)  Despite TCL's repeated requests, Ericsson did not indicate whether this list of documents constituted a complete accounting of what Ericsson had destroyed.  (*Id.*)

## F.   <u>In June 2015, in the Midst of the Parties' Discussions About Ericsson's Prior Document Destruction Efforts, Ericsson Conducts a Second Wave of Document Destruction.</u>

In mid-June 2015, TCL was shocked to learn Ericsson had recently engaged in *another* wave of document destruction, even while the parties continued to

discuss Ericsson's document destruction efforts from early 2014.  In particular, without any advance notice or warning, Ericsson copied TCL on letters to 13 third parties (including Apple, AT&T, Qualcomm, T-Mobile, HTC, Motorola, RIM, and Broadcom) wherein Ericsson confirmed it had "returned or destroyed all CBI supplied by [the third party] in the 862 Investigation" involving Ericsson and Samsung.  (*Id.*, Ex. 15.)  Most (but not all) of the letters identified the documents that had been destroyed, although the description was often very vague (*e.g.*, "documents produced" or "deposition designations"), preventing TCL from understanding the subject-matter addressed in the documents.  (*Id.*)

Ericsson's letters explained to each of the third parties that Ericsson had litigation pending with TCL, and admitted the documents Ericsson was returning or had destroyed had been requested by TCL.  (*Id.*)  In its letter to Apple, Ericsson argued it did not regard the documents as relevant to TCL's claims, but TCL was being copied "in the event TCL wishes to seek their production from [the third party]."  (*Id.* at 1.)  In the other letters, Ericsson did not take any position regarding the relevance of the documents, instead explaining the documents "are covered by a request [from TCL] but [are] not currently being sought."  (*Id.*)  TCL does not know what Ericsson meant by the statements that the documents were not "currently being sought"—by definition, if a document has been requested via a formal discovery request, it is being sought, unless the requesting party has expressly indicated it no longer wants the document (which certainly did not happen here).

TCL obviously was disturbed to learn Ericsson had rid itself of documents responsive to TCL's outstanding requests in the middle of the litigation.  Ericsson's claimed justification—compliance with the ITC Protective Order—was extremely suspect given the Ericsson–Samsung proceedings had settled in January 2014, *over 16 months earlier*.  After receiving Ericsson's letters, TCL inquired whether Ericsson had communicated with any of the third parties about proposed document destruction (and the fact the documents were also being sought by TCL in this

litigation) prior to Ericsson destroying or returning the documents.  (*Id.*, Ex. 16, at 2.)  In response, Ericsson merely indicated it had communicated with counsel for T-Mobile and Motorola "around the time [they] received [Ericsson's] letters" (suggesting the communications were in response to Ericsson's letters).[2]  (*Id.*)

## G.   Ericsson Ultimately Refuses TCL's Request for Relief, Making This Motion Necessary.

Returning to the matters addressed in Ericsson's June 2, 2015 letter regarding its document destruction efforts in early 2014, TCL responded by letter dated June 16, 2015.  (*Id.*, Ex. 17.)  In its letter, TCL indicated it intended to move to compel production of the responsive materials which were still in Ericsson's possession, but as to which Samsung had not yet provided consent to produce.  (*Id.* at 1.)  TCL also sought clarification regarding whether the table in Ericsson's June 2 letter was a complete list of all of the documents Ericsson had destroyed.  (*Id.*)  Lastly, TCL asked Ericsson to produce all correspondence regarding the destruction of documents, including the date of any destruction efforts, and the justification for any destruction efforts.  (*Id.* at 2.)

On June 30, 2015, both parties submitted letter briefs to the Court in anticipation of an informal discovery conference scheduled for July 1.  (*Id.*, Exs. 18, 19.)  The letter briefs addressed TCL's anticipated motion to compel, as well as TCL's concerns regarding Ericsson's destruction of documents, and TCL's request that Ericsson catalogue all of the documents it had destroyed.  (*Id.*)  In its letter brief, Ericsson argued "we cannot provide an exhaustive item-by-item list [of the destroyed documents] because we are no longer in possession of the materials that we were required to return or destroy, but are willing to list general categories of

---

[2] The reason for TCL's question was that the protective order in this case specifically describes what a party like Ericsson is supposed to do in the event documents are requested which are subject to a confidentiality obligation vis-à-vis a third party.  The first step is to notify both the requesting party and the third party of the issue. (Dkt. 72, at 12.)  As discussed *infra* in section III.B, Ericsson completely failed to follow this procedure.

such materials . . . ." (*Id.*, Ex. 19, at 2.)  Ericsson also indicated TCL "can seek the materials via subpoena from Samsung and the third-parties." (*Id.*)

TCL's motion to compel was ultimately unnecessary, because Samsung consented to allow Ericsson to produce all of the remaining documents which Ericsson had not already destroyed. (*Id.*, Ex. 20.)  However, when TCL sought confirmation that Ericsson would be producing "Samsung's written discovery responses relating to licensing/FRAND and deposition transcripts of Samsung's FRAND/licensing witnesses," Ericsson confirmed it had already destroyed all such materials, and thus TCL would have to seek them from Samsung. (*Id.*)

In anticipation of filing this motion, TCL sent its final meet and confer letter to Ericsson on this subject on July 24, 2015. (*Id.*, Ex. 21.)  TCL's letter chronicled Ericsson's conduct, explained why Ericsson's conduct was wrongful (citing the relevant law in support), and specifically identified the relief sought by TCL (the same relief TCL seeks in this motion). (*Id.*)  Ericsson never responded to TCL's letter in writing. (*Id.* at ¶ 21.)  Instead, the parties had their final meet and confer telephone conference on August 3, 2015. (Holder Decl. ¶ 1.)  During the call, Ericsson indicated it would not agree to any of TCL's requests for relief. (*Id.*, ¶ 2.)  Ericsson did not deny that materials responsive to TCL's document requests in this case had been destroyed. (*Id.*)  Instead, Ericsson argued none of the destroyed materials were relevant to the case. (*Id.*)  In response to TCL's question regarding whether documents had been destroyed after TCL filed this lawsuit on March 3, 2014, Ericsson indicated "most" and/or "a lot" of the documents had been destroyed in February 2014. (*Id.*)  However, Ericsson did not deny it destroyed some of the documents after TCL filed this lawsuit. (*Id.*)

## III.   ERICSSON ENGAGED IN SPOLIATION, AND A REMEDY IS DUE.

### A.   Brief Summary of the Law re Spoliation

Spoliation is the intentional destruction and failure to preserve property for use as evidence in pending or reasonably foreseeable litigation. *See Hynix*

*Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1344 (Fed. Cir. 2011).  It "includes the physical destruction, discarding, failure to retain in [] possession, and . . . erasure of records."  *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 311 (D. Del. 2000).  The duty to preserve relevant evidence extends to a party and its attorneys.  *Id.* at 311.  As a consequence of breach, courts may impose appropriate sanctions under their inherent powers, as well as under Rule 37, to sanction abusive litigation practices.  *Id.*; *Leon v. IDX Sys. Corp.*, 464 F. 3d 951, 958 (9th Cir. 2006); Fed. R. Civ. P. 37(b)(2)(C) (this rule applies where a party disobeys an order to provide discovery).  A party seeking such sanctions for spoliation of documents must establish (1) the materials existed and were destroyed; (2) the materials were relevant to a claim or defense; (3) the spoliating party had a duty to preserve the materials when they were destroyed; and (4) the spoliating party was culpable—either willfully or in bad faith.  *See Micron Tech., Inc. v. Rambus*, 645 F.3d 1311, 1327 (Fed. Cir. 2011) ("*Micron*").

### B.  Ericsson Admits It Destroyed Documents, and the Documents Are Relevant to This Litigation.

There is no dispute that Ericsson destroyed documents from its prior litigations with Samsung, following the conclusion of those cases.  In particular, Ericsson admitted destroying documents in its communications dated September 26 (Bader Decl., Ex. 5), November 14 (*id.*, Ex. 7), December 5 (*id.*, Ex. 9), and December 26, 2014 (*id.*, Ex. 10), and June 2 (*id.*, Ex. 14), June 12 (*id.*, Ex. 15), June 16 (*id.*), and June 30, 2015 (*id.*, Ex. 19).

Although TCL's ability to determine the full extent of the relevance of the documents destroyed by Ericsson is hampered by Ericsson's failure and refusal to catalogue all such documents, it is clear from the communications to date that the documents Ericsson destroyed are relevant to the issues in this case.  Important issues in this case include, among other things, the essentiality, validity, operation, and/or value of Ericsson's patents, and the proper royalty rate for a license to

1  Ericsson's patents.  Yet Ericsson has admitted that it destroyed expert reports related
2  to claim construction of Ericsson's patents, expert reports related to the validity of
3  Ericsson's patents, expert reports regarding FRAND terms for a license to Ericsson's
4  patents, documents relating to whether Ericsson's patents are standard-essential, and
5  other documents, including exhibits, statements, and declarations related to
6  Ericsson's alleged SEPs.  (*Id.*, Ex. 14, at 2–4.)

7  It appears as though Ericsson's document destruction efforts were likely
8  focused on materials created by Samsung, given that such materials were more
9  likely to reflect Samsung CBI (and Ericsson admits it destroyed everything with
10  Samsung CBI, excluding the hearing transcripts and exhibits).  (*Id.*, Ex. 20, at 2.)
11  Indeed, Ericsson admits it destroyed "Samsung's written discovery responses
12  relating to licensing/FRAND and deposition transcripts of Samsung's
13  FRAND/licensing witnesses."  (*Id.* at 4.)  Of course, materials created by Samsung,
14  and the testimony of Samsung's witnesses, are highly likely to contain information
15  helpful to TCL, because Samsung had the same incentive as TCL to evaluate and
16  attack the value of Ericsson's patent portfolio.  Thus, Ericsson's decision destroy
17  various documents created by Samsung is particularly harmful to TCL.[3]

18  **C.** **Ericsson Had a Duty to Preserve the Documents It Destroyed, Which Arose No Later Than January 2014.**
19

20  **1.** **Ericsson's duty to preserve documents had multiple sources.**
21  Ericsson's duty to keep and preserve documents arose under at least three
22

23  [3] Even documents related to Samsung's patents are also relevant to this case.
24  Ericsson argues its 2014 cross-license agreement with Samsung is a "comparable third-party license agreement, which reflect[s] FRAND licensing terms for
25  Ericsson's 2G, 3G, and/or 4G essential patent portfolios."  (Bader Decl., Ex. 22, at 3.)  The net result of the cross-license is that Samsung owes royalty payments to
26  Ericsson.  Thus, in order to understand the effective royalty rate assigned to Ericsson's patents, TCL also must determine the effective royalty rate assigned to
27  Samsung's patents (on the theory that the royalty rate owed by Samsung to Ericsson would have been higher, but for the value of the license received by Ericsson in
28  return).  This, in turn, will require TCL to understand the value of Samsung's patents.  Materials related to the value of Samsung's patents likely contained Samsung CBI, and thus apparently were destroyed by Ericsson.

distinct obligations:  (1) its duty to preserve relevant information once litigation became reasonably foreseeable and/or was filed; (2) its duty to preserve information after it was requested in discovery; and (3) its duty to obey the provisions of the protective order in this case regarding how to handle documents that may implicate third-party confidentiality obligations.

The first source of Ericsson's obligation to preserve documents arose at least in January 2014, because litigation with TCL was reasonably foreseeable at that time.  *See, e.g.*, *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) ("It is well established that the duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.") (internal quotation marks omitted); *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 U.S. Dist. LEXIS 98261, at *1 (N.D. Cal. Sept. 13, 2010) ("Parties to a civil action in federal court are under a duty to preserve evidence that they know is relevant or reasonably could lead to the discovery of admissible evidence.").  The foreseeability standard is applied from the perspective of a reasonable party under the same facts.  *See Micron*, 645 F.3d at 1320.

By January 2014, Ericsson's negotiations with TCL over the same SEPs at issue between Ericsson and Samsung were failing, TCL's prior license with Ericsson was set to expire in early March 2014, and Ericsson already had sued TCL over its SEPs in four other countries.  (Dkt. 279-1, at 6–8.)  Indeed, Ericsson has suggested it would have filed suit against TCL in the U.S. sooner, but blames TCL for "causing Ericsson to forbear from or delay in instituting infringement litigation against TCL." (Dkt. 59, at 28, ¶¶ 18–23; 29, ¶ 23.)  Accordingly, Ericsson's efforts in early 2014 to destroy documents from its litigations against Samsung were made while Ericsson knew, or should have known, that litigation in the U.S. was imminent.  *See, e.g.*, *PersonalWeb Techs., LLC v. Google Inc.*, No. 13-cv-01317, 2014 WL 580290, at *3–4 (N.D. Cal. 2014) (parties' pre-suit discussions regarding alleged infringement triggered duty to preserve); *Google Inc. v. Am. Blind & Wallpaper Factory*, No. 03

Civ. 5340, 2007 WL 1848665, at *1 (N.D. Cal. June 27, 2007) (duty to preserve "likely arose some eighteen months" pre-suit, when defendant received a cease-and-desist letter). This breach implicates all of Ericsson's destruction and purging.

The second source of Ericsson's obligation to preserve documents arose at least on June 5, 2014, when TCL first requested documents in discovery. *See, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, No. 08-cv-1987, 2014 WL 223082, at *4 (S.D. Cal. Jan. 21, 2014) (a party has a duty to preserve discoverable material once it knows, or should know, the material is likely to be requested in discovery). Any subsequent destruction or purging by Ericsson thus violated Ericsson's obligation to preserve documents. This breach implicates any destruction of documents occurring after June 5, 2014, including Ericsson's June 2015 destruction and purging.

The third source of Ericsson's obligation to preserve documents is the protective order in this case, which was entered on December 8, 2014. (Dkt. 72, at § IV.C.b.) The protective order requires that, whenever any Producing Party has information originating with a non-party believed to be "subject to a third-party confidentiality obligation," it shall (i) immediately notify the Receiving Party; (ii) identify the non-party; (iii) provide the Receiving Party, where permitted, with the portion(s) of any agreement containing the alleged obligation of confidentiality; and (iv) to the extent permitted by said agreement, provide a schedule of all documents and things being withheld." (Dkt. 72, at § IV.C.b.) If challenged, the Producing Party "must timely seek a protective order or timely seek relief from the Court to produce the Protected Information." (*Id.*)

Rather than follow the above procedure, Ericsson circumvented those procedures by unilaterally getting rid of the documents. Ericsson did not provide any advance notice to TCL, or confer with the third parties before destroying and/or returning the documents. The point of the protective order is to require communication and disclosure of the documents being withheld before they are destroyed and/or returned, so the parties can assess the extent to which court

1   intervention is required, and seek court assistance as needed.   Ericsson's decision to

2   act unilaterally, and only notify TCL of the issue after it had already destroyed

3   and/or returned the documents, was squarely contrary to the requirements of the

4   protective order.  Ericsson's failure to obey the protective order implicates at least its

5   June 2015 destruction and purging.

6           2.     <u>Ericsson's duty to preserve documents was not excused by the</u>

7                  <u>ITC Protective Order.</u>

8         During the meet-and-confer process, Ericsson repeatedly argued the ITC's

9   Protective Order established an obligation to destroy documents, and this purported

10  conflicting obligation overcame any duty Ericsson had to preserve documents.

11  (Bader Decl. ¶ 5.)  TCL strongly disagrees.  At best (for Ericsson), the ITC

12  Protective Order *permitted* (not required) destruction of confidential business

13  information with the written consent of the supplier.  In particular, the ITC

14  Protective Order states that "[u]pon final termination of this investigation, each

15  party . . . shall assemble and return . . . all items containing confidential business

16  information . . . Alternatively, the parties . . . may, with the written consent of the

17  supplier, destroy all items containing [CBI] and certify to the supplier (or his

18  counsel) that such destruction has taken place."  (*Id.*, Ex. 5, at 8 (¶ 14).)  Here, there

19  is no evidence Samsung *asked* Ericsson to destroy documents, or provided written

20  consent *in advance* of any document destruction by Ericsson.  Rather, the evidence

21  shows Ericsson merely *informed* Samsung of its document destruction efforts *after*

22  *the fact* (and, suspiciously, over two months after TCL filed suit).  (*Id.*, Ex. 10, at 5.)

23        Yet even if Ericsson properly followed the ITC Protective Order, Ericsson's

24  ultimate argument—*i.e.*, that it was permitted to destroy documents because of the

25  ITC Protective Order—is not correct.  Simply put, where a party is arguably under

26  two conflicting obligations—a duty to preserve and a duty to destroy—the duty to

27  preserve must prevail.  TCL could not locate any legal authority supporting

28  Ericsson's argument that a duty to destroy trumps a duty to preserve.  To the

contrary, courts have held that a party engaged in otherwise permissible destruction of documents (*e.g.*, pursuant to a valid purging program) *must stop* when a duty to preserve arises.  For example, in *Rambus*, the company shredded material possibly relevant to reasonably foreseeable litigation under what the court assumed was an otherwise valid document-retention program.  As the court explained, "even if [Rambus] was merely instituting a valid purging program, even valid purging programs need to be put on hold when litigation is 'reasonably foreseeable.'"  220 F.R.D. at 286; *see also Skyline Steel, LLC v. PilePro, LLC*, -- F. Supp. 3d --, 2015 WL 1881114, *10–14 (S.D.N.Y. Apr. 24, 2015) ("*Skyline*") (explaining that a party has a duty to suspend "any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence") (internal quotation omitted).

TCL's argument is also supported by the protective order in this case, which makes clear that a party faced with conflicting obligations—a duty to withhold as a result of confidentiality obligations vis-à-vis a third party, and a duty to produce by virtue of being a party to ongoing litigation—must provide notice to both the requesting party and third party, provide a schedule of the documents at issue, and seek intervention and guidance from the court if necessary.  Ericsson's chosen approach—to destroy first, then confront any questions later—has no support in the law, is inconsistent with the liberal right to discovery in federal court, as well as the broad obligation that parties have to preserve and produce relevant documents, and should not be endorsed by this Court.

### D.  Ericsson Destroyed the Documents Willfully and in Bad Faith.

Spoliation is sanctionable where the despoiling party acted willfully or in bad faith.  *See Micron*, 645 F.3d at 1327.  Willful spoliation occurs "if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed."  *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 959 (N.D. Cal. 2012).  A finding of willful spoliation may be based on

"demonstrate[d] willful indifference . . . towards ensuring that relevant documents were reserved, collected, and produced," or it can, but need not, be based on specific intent to destroy relevant evidence. *PersonalWeb*, 2014 WL 580290, at *5. A finding of bad-faith spoliation may be based on facts that the spoliator "intended to impair the ability of [one's opponent] to defend itself." *Micron*, 645 F.3d at 1327 (citation omitted). This is the case, for instance, where the "goal . . . was to obtain an advantage in litigation through the control of information and evidence." *Id.; see PersonalWeb*, 2014 WL 580290, *3–4 (N.D. Cal. Feb. 13, 2014) (where a party implements a document-destruction policy "in view of upcoming litigation, it does so in bad faith because it knowingly risks the destruction of potentially relevant information that would otherwise be saved by a litigation hold").

Ericsson easily could have taken a safe course of action that avoided destruction or purging until the Court addressed the issue. It merely had to acknowledge its obligations before getting rid of the documents, preserve the status quo at the time, notify TCL, the third parties, the Court, and/or ITC of the issue, and seek a protective order. Yet instead of taking the safe course of action, Ericsson unilaterally chose to engage in two waves of document destruction—one in early 2014, and the other in mid-2015—without giving any notice to TCL, and despite the fact the parties were already engaged in related litigation around the world. Because TCL received no advance notice of the issue, it was powerless to stop Ericsson's activities. Ericsson has not only admitted the documents it destroyed were responsive to TCL's requests, but it also clearly realized (as evidenced by its June 2015 letters to the 13 third parties) that TCL's only recourse would be to try to corral the third parties and seek piecemeal production of what was once a single bundle of documents in Ericsson's possession. This raises a strong inference Ericsson's actions were designed to disadvantage TCL. *See Micron*, 645 F.3d at 1327 ("If the district court finds facts to conclude [the spoliator's] goal in [destroying documents] was to obtain an advantage in litigation through control of information and

1   evidence, it would be justified in making a finding of bad faith.").

2        In sum, Ericsson's unilateral approach, its inconsistent story (originally telling

3   TCL in November 2014 that it had no further responsive documents to produce, and

4   then producing tens of thousands of pages of additional documents in 2015), its

5   multiple breached obligations to preserve the documents, the 16-month delay

6   between the Ericsson–Samsung settlement (in January 2014) and Ericsson's June

7   2015 spoliation, all suggest Ericsson acted willfully and/or in bad faith by making it

8   hard and expensive for TCL to identify and obtain the documents.

9       **E.    Ericsson's Document Destruction Prejudiced TCL.**

10        Spoliation "raises a presumption that the destroyed evidence goes to the

11   merits" and "was adverse to the party that destroyed it." *Am. Blind*, 2007 WL

12   1848665, at *3, citing *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682

13   F.2d 802, 806 (9th Cir. 1982); *Hynix Semiconductor, Inc. v. Rambus Inc.*, 591 F.

14   Supp. 2d 1038, 1060 (N.D. Cal. 2006) ("the burden of proof logically shifts to the

15   guilty party to show that no prejudice resulted from the spoliation"), *rev'd on other*

16   *grounds*.  Prejudice exists where "spoliation materially affect[s] the substantial

17   rights of the adverse party and is prejudicial to the presentation of his case." *Hynix*,

18   897 F. Supp. 2d at 981, quoting *Micron*, 645 F.3d at 1328 (internal quotation marks

19   omitted).  A party can demonstrate prejudice by merely identifying "'plausible,

20   concrete *suggestions* as to what [the destroyed] evidence *might have* been.'" *Id.*

21   (alteration and emphasis in original); *see also Leon*, 464 F.3d at 959 (noting

22   difficulty of ascertaining actual relevance of destroyed documents).

23        Ericsson's spoliation prejudiced TCL by (1) depriving it of key sources of

24   information, summaries, and admissions TCL might have been able to use to support

25   its claims and defenses, and (2) wasting substantial TCL litigation resources,

26   including attorney time preparing for and participating in conferences of counsel

27   and preparing the present motion, which could have been spent on the merits.

28   Documents from Samsung likely would have contradicted Ericsson's legal and

factual positions against TCL, because Samsung created many of them while
similarly fighting Ericsson over licensing terms for Ericsson's SEPs.  Samsung's
past work, and possibly Ericsson's, would have removed and/or reduced the need for
TCL to address these previously litigated issues from scratch.  TCL likely could
have used this information to attack the validity, value, and technological
contributions of Ericsson's SEPs.  Although TCL can try to seek the documents from
the various third parties, there is no guarantee the documents still exist.  Moreover,
Ericsson unnecessarily made it TCL's problem to pursue discovery against third
parties, and file and argue motions to compel.  TCL has been forced to dedicate a
huge amount of time pursuing the documents since at least September 2014.
Further, prejudice is not lessened because the evidence sought is otherwise
preserved and accessible by the requesting party.  *See Nutramax Labs., Inc. v.
Theodosakis*, No. CCB-08-879, 2009 WL 2778388, at *7 (D. Md. June 8, 2009).

## IV.  <u>REQUESTED RELIEF</u>

Courts may impose sanctions sufficient to (1) deter spoliation; (2) place the
risk of erroneous judgment on the party who created the risk; (3) put the prejudiced
party in the position it would have been in absent the spoliation; and (4) "penalize
those whose conduct may be deemed to warrant such a sanction."  *Am. Blind*, 2007
WL 1848665, at *3; *Skyline*, 2015 WL 1881114, at *14; *Micron*, 917 F. Supp. 2d at
315.  Courts have wide discretion to fashion appropriate sanctions.  *Skyline*, 2015
WL 1881114 at *14; *SK Hynix Inc. v. Rambus Inc.*, No. C–00–20905, 2013 WL
1915865, at *18 (N.D. Cal. May 8, 2013).  Sanctions may include entry of an
adverse inference, further discovery, cost-shifting, fines, special jury instructions,
preclusion, or entry of default judgment.  *Apple Inc. v. Samsung Elecs. Co.*, 888 F.
Supp. 2d 976, 993–94 (N.D. Cal. 2012); *Skyline*, 2015 WL 1881114, at *14.

Ericsson's spoliation merits several types of relief.  First, the Court should
require Ericsson to catalogue, under oath and to the best of its ability, (1) the identity
of each document it destroyed or returned, including any docket number, date, Bates

number, authors, and a description of its contents; (2) all reasons for non-production of the document; (3) a description of the circumstances surrounding any destruction or return of the document, including the timing, and persons involved; and (4) copies of any correspondence regarding the return or destruction. *See, e.g.*, *Skyline*, 2015 WL 1881114, at *14 (listing further discovery as possible sanction).

Although Ericsson has indicated it would be impossible to create such a catalogue (because it did not compile this information before it got rid of the documents), this is a problem of Ericsson's own making. *See Micron*, 917 F. Supp. 2d at 325. Even if perfection is no longer attainable because of Ericsson's own wrongdoing, Ericsson should be ordered to do the best job it can, and provide as much of the requested information as possible. *See Hynix*, 591 F. Supp. 2d at 1060 (explaining the spoliating party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing"). There is no other way of knowing what Ericsson got rid of, and a catalogue made through Ericsson's best efforts will help ensure the Court has the best possible understanding of the scope of Ericsson's wrongdoing, so it can evaluate further sanctions.

Second, Ericsson should have to take all reasonable steps, and incur all reasonable fees and expenses, to recoup any and all documents it destroyed or returned. *See Skyline*, 2015 WL 1881114, at *14 (listing cost-shifting as possible sanction); *Quinby v. WestLB AG*, 245 F.R.D. 94, 104–05 (S.D.N.Y. 2006) (shifting costs for retrieving documents sanctioned party made inaccessible). Ericsson's lead counsel in this case (McKool Smith) also represented it against Samsung before the ITC. Ericsson is in the best position to complete this task efficiently, because it has already established working relationships with the third parties with respect to the documents at issue. Ericsson's ability to send letters to 13 third parties in just six days (June 12–17, 2015) when it wanted to dispose of more documents illustrates how reasonable it is to require Ericsson to engage in efforts to reverse the process under a court order. Leaving this task and expense to TCL would reward Ericsson

-23-

1   for its misconduct and amplify the prejudice to TCL.

2       Third, Ericsson should have to reimburse all fees and expenses TCL has spent

3   investigating and responding to Ericsson's spoliation, including attempting to recoup

4   the documents and preparing this motion, as well as pay a punitive amount

5   proportionate to Ericsson's willful bad faith.  *See Micron*, 917 F. Supp. 2d at 325

6   (characterizing fees and monetary sanctions as "relatively mild"); *Thompson Co. v.*

7   *General Nutrition Corp.*, 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) (awarding fees

8   and costs for having to move for sanctions).  This will put TCL in roughly the same

9   financial position it would have been in absent Ericsson's spoliation, shift the cost of

10  spoliation onto Ericsson, and deter Ericsson and future litigants from taking similar

11  actions.  Deterrence is especially appropriate here, because Ericsson breached its

12  duty to preserve documents despite (1) the general duty to preserve documents when

13  litigation was foreseeable; (2) the specific duty to preserve documents when they

14  were requested; and (3) the duty to abide by the Court's protective order.  These

15  obligations themselves, and the ordinary punishment that could be expected for

16  breaching them, did not deter Ericsson enough to raise the issue with the Court, the

17  ITC, or TCL before unilaterally taking matters into its own hands.[4]

18      Fourth, Ericson should have to provide discovery as to the facts and

19  circumstances of its spoliation, including all communications regarding destroying

20  and/or returning documents exchanged between Ericsson and its counsel, among

21  Ericsson's counsel, and between Ericsson's counsel and third parties.  *See, e.g.*,

22  *Micron*, 645 F.3d at 1330 (discussing piercing the attorney–client privilege under the

23  crime–fraud exception for pre-suit document destruction based on a likely violation

24  of § 135 of the California Penal Code); *Skyline*, 2015 WL 1881114, at *14 (listing

25  further discovery as possible sanction).  Such documents will shed light on the facts

26  and circumstances surrounding Ericsson's spoliation, and help reveal a truthful and

---

28  [4] TCL will submit a detailed fee application for the Court and Ericsson's review in
    the event the Court grants TCL's motion.

-24-    Case Nos. SACV14-00341, CV15-02370 JVS (DFMx)

accurate picture of what actually happened.  Ericsson's motives, and the timing of its spoliation, likely will not be fully apparent absent such discovery.

Finally, the Court should issue an adverse inference against Ericsson that the documents at issue would have been harmful to Ericsson's claims and defenses.  *See Micron*, 917 F. Supp. 2d at 325–26 (identifying adverse jury instructions as a remedial sanction, but still finding it inadequate where "there is no record of exactly what documents were destroyed"); *Hynix*, 2013 WL 1915865, at *22 (imposing a $250 million FRAND-licensing-fee setoff and a 0.80–0.85% FRAND rate as sanctions for spoliation).  The facts showing Ericsson's willfulness and bad faith, such as its unilateral approach, its inconsistent story, its multiple breached duties to preserve, the delayed timing and continued spoliation after the Ericsson–Samsung settlement, and Ericsson's indifference to the extra burden its actions imposed on TCL, show a strong adverse inference is warranted.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010) ("the more egregious the conduct, the more harsh the sanction").[5]

## V.   **CONCLUSION**

For the foregoing reasons, TCL respectfully submits that the Court should grant TCL's motion, and award all of the relief requested by TCL.

Date: August 25, 2015      Respectfully submitted,
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:   */s/ Stephen S. Korniczky*
STEPHEN S. KORNICZKY
MARTIN R. BADER
MATTHEW W. HOLDER
Attorneys for Plaintiffs,
TCL Communication Technology Holdings, Ltd.,
TCT Mobile Limited, and TCT Mobile (US), Inc.

---

[5] The severity of the adverse inference instruction will arguably depend on what the further discovery requested by TCL ultimately shows.  TCL suggests that the Court further consider (and the parties may further brief) the specific language of the adverse inference instruction once the discovery requested by TCL is complete.

Case Nos. SACV14-00341, CV15-02370 JVS (DFMx)
MEM. OF P. & A. ISO TCL'S MOT. FOR SANCTIONS

## <u>CERTIFICATE OF SERVICE</u>

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Diego, State of California.  My business address is 12275 El Camino Real, Suite 200, San Diego, CA  92130.

On September 10, 2015, I caused to be served true copies of TCL'S MOTION FOR SANCTIONS FOR ERICSSON'S SPOLIATION OF DOCUMENTS on the interested parties in this action as follows:

BY E-MAIL OR ELECTRONIC TRANSMISSION:  I caused a copy of the document(s) to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| John Gibson | Robert B McNary |
| Crowell and Moring LLP | Crowell and Moring LLP |
| jgibson@crowell.com | rmcnary@crowell.com |
| | |
| Samrah R Mahmoud | Mark A Klapow |
| Crowell and Moring LLP | Crowell and Moring LLP |
| smahmoud@crowell.com | mklapow@crowell.com |

Laurie L. Fitzgerald
McKool Smith
lfitzgerald@mckoolsmith.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 10, 2015, at San Diego, California.


By      /s/ *Stephen S. Korniczky*
         Stephen S. Korniczky