JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

TCL COMMUNICATION
TECHNOLOGY HOLDINGS,
LTD., *et al.*,

Plaintiffs/Counterclaim-Defendants,

v.

TELEFONAKTIEBOLAGET     LM
ERICSSON, *et al.*,

Defendants/Counterclaim-Plaintiffs.

v.

ERICSSON INC., *et al.*,

Plaintiffs/Counterclaim-Defendants,

v.

TCL COMMUNICATION
TECHNOLOGY HOLDINGS,
LTD., *et al.*,

Defendants/Counterclaim-Plaintiffs.

Case No. 8:14-CV-00341 JVS-DFMx

Case No. 2:15-CV-02370 JVS-DFMx

**FINAL JUDGMENT AND
INJUNCTION**

Hon. James V. Selna

In this consolidated action, Plaintiffs and Counterclaim Defendants TCL Communication Technology Holdings Ltd., TCT Mobile (US) Inc., and TCT Mobile Limited (collectively, "TCL") brought claims and counterclaims against Defendants and Counterclaim Plaintiffs Telefonaktiebolaget LM Ericsson and Ericsson Inc. (together, "Ericsson") for breach of contract; promissory estoppel; declaratory judgment; fraudulent misrepresentation; negligent misrepresentation; and violation of the California Unfair Competition Law (the "UCL"); declaratory judgment of non-infringement of U.S. Patent No. 6,301,556 (the "'556 patent"); declaratory judgment of invalidity of the '556 patent; declaratory judgment of non-infringement of U.S. Patent No. 6,473,506 (the "'506 patent"); declaratory judgment of invalidity of the '506 patent; infringement of U.S. Patent No. 7,778,340 (the "'340 patent"); and infringement of U.S. Patent No. 7,359,718 (the "'718 patent").

Ericsson brought claims and counterclaims against TCL for breach of the obligation to negotiate in good faith and promissory estoppel, and claims for infringement of the '556 patent; infringement of the '506 patent; declaratory judgment; declaratory judgment for non-infringement of the '340 patent; declaratory judgment of invalidity of the '340 patent; declaratory judgment of non-infringement of the '718 patent; and declaratory judgment of invalidity of the '718 patent.

On July 1, 2015, the Court stayed the parties' claims and counterclaims relating to Ericsson's '556 and '506 patents until further Order of the Court (Dkt. 281).

On July 24, 2015, the Court dismissed the parties' claims and counterclaims relating to TCL's '340 and '718 patents without prejudice (Dkt. 289).

On June 17, 2016, the Court dismissed TCL's claims and counterclaims for fraudulent misrepresentation and negligent misrepresentation with prejudice (Dkt. 838).

On June 17, 2016, the Court dismissed Ericsson's counterclaims for breach of the obligation to negotiate in good faith and promissory estoppel with prejudice (Dkt. 838).

On August 9, 2016, the Court granted Ericsson's motion for partial summary judgment of no damages for breach of contract, promissory estoppel, or violation of the UCL (Dkt. 1061), and Ericsson's motion for partial summary judgment as to TCL's claim for violation of the UCL (Dkt. 1058).

The Court conducted a 10-day bench trial commencing on February 14, 2017. Three claims/counterclaims were tried before the Court: (1) TCL's claim/counterclaim for breach of contract seeking specific performance; (2) TCL's claim/counterclaim for declaratory judgment; and (3) Ericsson's claim/counterclaim for declaratory judgment (Dkt. 1376-1). The Court received evidence in the form of exhibits, designated portions of deposition transcripts, and witness testimony.

In its Memorandum of Findings of Fact and Conclusions of Law issued on November 8, 2017 (Dkt. 1778), the Court found that Ericsson's Option A and B offers were not fair and reasonable, and were discriminatory, and thereafter determined FRAND royalty rates for a license to TCL under Ericsson's 2G, 3G, and 4G standard essential patent portfolios.

Consistent with the Court's Memorandum of Findings of Fact and Conclusions of Law (Dkt. 1778), and based on the record established in this case, the Court enters this Final Judgment and Injunction pursuant to Federal Rule of Civil Procedure 58.

## **DEFINITIONS**

For the purpose of this Final Judgment and Injunction, the following definitions shall apply:

1.     "Affiliate" of a Party means a company or other legal entity which is controlled by the Party. For the purpose of this definition, "control" shall mean direct or indirect ownership of more than fifty percent (50%) of the voting power, capital, or other securities of the controlled or commonly controlled entity.

2.     "Brand Company" means a company or other legal entity, other than a Network Operator, which is active in the consumer electronics business and/or wireless communications business and/or IT industry.

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

3.   "Components" means any item of equipment, including, for example, a sub-system, sub-assembly or component, in software, hardware, and/or firmware form, of any TCL Product, which is sold, licensed, or supplied, or intended to be sold, licensed, or supplied, to a Third Party other than as a complete and ready to use end-use item, for example, because it requires additional industrial, manufacturing, or assembly processes before being used or sold as an end-use item, and is intended for incorporation into any product. Examples of Components include, but are by no means limited to, platforms, ASICs and chipsets, modules, printed circuit boards, integrated circuits, semiconductor devices, processors, multi-core processors, multi-chip modules, and multi-chip packages, embedded modules and core engines. This definition of "Components" shall exclude any product employed for the purpose of repair or upgrade of already sold products which are licensed under this Injunction.

4.   "Consumer" means a natural person who buys products as a final user.

5.   "Costs of Insurance and Transportation" means TCL's, as the case may be, actual direct costs of insurance and transportation to ship TCL Products to its customers. For the avoidance of doubt, Costs of Insurance and Transportation shall not include any labor fee or any overhead costs of any kind.

6.   "Effective Date" means the date of entry of this Final Judgment and Injunction.

7.   "End User Terminal" means a complete and ready to use device or Knocked Down version of such complete device with the largest of the width, length, and depth of such complete device in its most compact form being 250 mm or less, which can be directly used by a Consumer for wireless communications (*i.e.* to receive and transmit information over the air by means of using one or more of the Standards), without the device having to be integrated or embedded into another device or connected to another device through, for example, a USB, PCMCIA, memory card, WLAN, or Bluetooth interface. For the avoidance of all doubt, the term "End User Terminal" does not mean subassemblies or parts

of products such as, but not limited to, Components, other than as sold as part of the End User Terminal or as spare parts or repair parts of already Sold End User Terminals. For the further avoidance of doubt, TCL is not required to pay any royalty to Ericsson for such spare parts or repair parts of already Sold End User Terminals.

8. "Entity" means any individual, firm, company, corporation, or other corporate or legal entity (wherever and however incorporated or established), government, state, agency or agency of a state, local or municipal authority or government body or any joint venture, association or partnership (whether or not having a separate legal personality).

9. "Ericsson" means Defendants and Counterclaim Plaintiffs Telefonaktiebolaget LM Ericsson, a company established under the laws of Sweden, with organization number 556016-0680, with its registered office at SE-164 83 Stockholm, Sweden; Ericsson Inc., a Delaware corporation headquartered at 6300 Legacy Drive, Plano, Texas 75024; and all of their Affiliates.

10. "External Modem" means a separate external Consumer device which can be connected to or inserted into an external slot of another device by an individual consumer (*i.e.* not an entity of any kind) through, for example, a USB, PCMCIA, memory card, WiFi, or Bluetooth interface, in order to allow said another device to communicate by means of any or more of the Standards. The External Modem may not be designed for the purpose of being embedded into such other device or may not in itself include an immediate physical user-interface to an individual Consumer to transmit or receive wireless data and/or voice transmissions by means of any or more of the Standards (such a device shall fall under the definition of End User Terminal). The term "External Modem" does not include Components (other than as sold incorporated into the External Modem or sold as part of a kit of External Modem) or modules.

11. "Future Standards" means the agreed protocols by ETSI, ARIS, T1P1, CCSA,

and/or other relevant telecommunications standards setting bodies that are applicable to UMB, WiMax IEEE802.16m, and/or any other beyond 4G standards, irrespective of the transmission medium or frequency band, as well as any updates in respect of such protocols.

12. "Have Made" means the right to have a Third Party make a product for the use and benefit of the party exercising the have made right provided all of the following conditions are fulfilled:  (a) the party exercising the have made right owns and supplies the designs, specifications and working drawings supplied to such Third Party; and (b) such designs, specifications and working drawings are, complete and sufficient so that no substantial additional design, specification and working drawings are needed by any Third Party; and (c) such Third Party is not allowed to sell such product to other third parties.

13. "Injunction" means the Injunction herein and its appendices.

14. "Knocked Down" means a complete End User Terminal product in the form of complete knocked down or semi-knocked down kits of parts, including complete and substantially complete kits of parts, where such kit of part or knocked down product is always a complete and ready to use End User Terminal.

15. "License Period" means the period commencing on the Effective Date and having a period of five (5) years calculated from the Effective Date.

16. "Licensed Patents" means those Patents (in any country of the world) as to which it is, or is claimed by the owner to be, not possible, on technical grounds taking into account normal technical practice and the state of the art generally available at the time of adoption or publication of the relevant Standards, to make, sell, lease, or otherwise dispose of, repair, use, or operate equipment or methods which comply with the relevant Standards, without infringing such Patents.

17. "Network Operator" means an Entity, including such Entity's Affiliates, that as

its main business (a) owns or licenses frequency spectrum, directly or indirectly, from a government or other relevant authority or Entity, and offers wireless data- or telecommunications services to Consumers over such owned or licensed spectrum; and/or (b) offers wired data- or telecommunications services to Consumers.

18. "Net Selling Price" means the greater of (a) the selling price actually obtained for the TCL Product in the form in which it is Sold, and (b) the selling price which a seller would realize from an un-Affiliated buyer in an arm's length sale of an equivalent product in the same quantity and at the same time and place as such Sale, whether or not assembled and without excluding therefrom any components or subassemblies thereof. In determining the "Net Selling Price," only the following shall be excluded to the extent actually included in the selling price obtained for such products:  (i) Usual Trade Discounts actually allowed to non-Affiliated persons or entities; (ii) Packing Costs; (iii) Costs of Insurance and Transportation; and (iv) Taxes and Custom Duties. For the avoidance of doubt, allowed deductions for Usual Trade Discounts, Packaging Costs, and Costs of Insurance and Transportation shall in total not exceed eight (8) percent units of the selling price.

19. "Packing Costs" means TCL's, as the case may be, actual direct costs of packing and/or packaging TCL Products for shipment to its customer. For the avoidance of doubt, Packing Costs shall include extra batteries, charger, ear phones, SO card, user manual (in any form including but not limited to CD-ROM), warranty card, USB cable, welcome kit, packing box, labels, protective screen cover, plastic bags, carrying kit and separate additional phone cover case. For the avoidance of doubt, Packing Costs shall not include any labor fee or any overhead costs of any kind.

20. "Party/Parties" means Ericsson and TCL.

21. "Patents" means patent claims (including claims of licensable patent

applications), and like statutory rights other than design patents, owned, or
controlled by Ericsson at any time during the License Period.

22. "Personal Computer" means a complete and ready to use device, designed
mainly for data processing by means of a physical or virtual keyboard, with the
largest of the width, length, and depth of such complete device in its most
compact form being more than 250 mm, which can be directly used by a
Consumer for wireless communications (i.e. to receive and transmit information
over the air by means of using any or more of the Standards), without the
device having to be integrated or embedded into another device or connected to
another device through for example a USB, memory card, WLAN, or Bluetooth
interface. For the avoidance of all doubts, the term "Personal Computer" does
not mean subassemblies or parts or products such as, but not limited to
Intermediate Products, other than as sold as part of the Personal Computer or as
spare parts or repair parts of already Sold Personal Computers.

23. "Retailer" means an Entity, including such Entity's Affiliates, other than a
Brand Company, a licensee of Ericsson, or a Network Operator, which is
having as its main business to sell Third Party branded products to Consumers
whether through shops or online.

24. "Sale," "Sell," "Sold," or any similar term, mean the delivery of TCL Products
in any country of the world to a Third Party regardless of the basis for
compensation, if any, including lease, rent or similar transaction, whether as an
individual item or as a component or constituent of other products, or the
putting into use of the TCL Products by TCL for any purpose other than routine
testing thereof—with a Sale being deemed to have occurred upon shipment or
invoicing or such putting into use, whichever shall first occur. TCL Products
that are returned for refund (for avoidance of doubt to exclude warranty
returns), may be netted against units Sold, so long as a returned unit that is
subsequently resold is counted as a new Sale.

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

25. "Standards" means the ETSI (or, if applicable, its equivalent internationally recognized body or organization) cellular telecommunication standards 2G, 3G and 4G. For the avoidance of any doubt, Standards does not include WiFi, WiMax, CDMA, or Future Standards.

26. "Taxes and Custom Duties" means import, export, excise, sales and value added taxes and custom duties levied or imposed directly upon the Sale of TCL Products that TCL, as the case may be, remits to the government body levying or imposing such taxes or duties.

27. "TCL" means Plaintiffs and Counterclaim Defendants TCL Communication Technology Holdings Ltd., a company established under the laws of Cayman Islands, with its registered office at Cricket Square, Hutchins Drive, P.O. Box 2681, Grand Cayman KY1-1111, Cayman Islands; TCT Mobile (US) Inc., a Delaware corporation headquartered at 25 Edelman, Irvine, CA 92618; TCT Mobile Limited, a company established under the laws of Hong Kong, having its registered office at Room 1502, Tower 6, China Hong Kong City, 33 Canton Road, Tsimshatsui, Kowloon, Hong Kong; and all of their Affiliates.

28. "TCL Products" shall mean the End-User Terminals, External Modems, and Personal Computers all being branded with (a) a brand owned by TCL, Network Operators, or Retailers, provided that such TCL Products are not also branded with a brand owned by a Brand Company; (b) a brand licensed to TCL, Network Operators, or Retailer, provided that such licensed brand is not owned by a Brand Company; or (c) TCL shall have the option to ask for permission from Ericsson to add End User Terminals branded with Third Party brands (not being a Brand Company or a licensee of Ericsson) to the definition of TCL Products on a case by case basis. Such addition of End User Terminals branded with a Third Party brand (not being a Brand Company or a licensee of Ericsson) is always subject to Ericsson prior written approval. Such approval is at Ericsson's sole discretion. Notwithstanding the above, TCL Products branded

1    with a brand licensed or transferred to it from Alcatel, Alcatel Lucent, or

2    Blackberry Sold after such license or transfer and are compliant with one or

3    more of the Standards shall be included in this definition of TCL Products and

4    subject to royalty payment in accordance with this Injunction.

5    29.    ''Third Party/Third Parties" shall mean any Entity that is not Ericsson or TCL.

6    30.    "Usual Trade Discounts" shall mean discounts actually allowed by TCL, as the

7    case may be, to un-Affiliated persons or entities for TCL Products Sold by

8    TCL, as the case may be, to such person or entity solely to the extent such

9    discounts are agreed upon in writing by TCL, as the case may be, and such

10    person or entity in a written supply (or related) agreement on, or prior to the

11    time of Sale of such TCL Product, including prompt-pay discounts, volume

12    discounts, price protection discounts, stock balancing discounts, late delivery

13    penalties, payments for promotional rebates provided by such person or entity

14    to its end user customers (the "Trade Discount Deductions"). Notwithstanding

15    anything to the contrary above, the following shall not be included in the Trade

16    Discount Deductions:  discounts/payments agreed upon after the time of Sale of

17    a TCL Product and market development and/or business development funds.

18    31.    "2G" shall mean Global System for Mobile Communications (GSM) and

19    Generalized Packet Radio System (GPRS), including the Enhanced GPRS (E-

20    GPRS/EDGE) standard specifications released or published by 3GPP and/or

21    relevant local standardization bodies such as ETSI, TIA, T1P1, ARIB, TIC, and

22    CCSA, irrespective of the transmission medium or frequency band, at the time

23    of the Effective Date and thereafter as well as updates in respect of such

24    standard specifications during the License Period. For the avoidance of any

25    doubt, 2G does not include 3G or any Future Standards.

26    32.    "3G" shall mean UTRA FDD mode, i.e. UMTS and WCDMA, including HSPA

27    standard specifications released or published by 3GPP and/or relevant local

28    standardization bodies such as ETSI, TIA, T1P1, ARIS, TTC, and CCSA,

irrespective of the transmission medium or frequency band, at the time of the Effective Date and thereafter, as well as any updates in respect of such standard specifications during the License Period. For the avoidance of any doubt, 3G does not include 2G, CDMA, WiMax, WiFi, or any Future Standards.

33.  "4G" shall mean E-UTRA (FOO mode and TDD mode (including but not limited to LTE or TD-LTE)) standard specifications released or published by 3GPP and/or relevant local standardization bodies such as but not limited to ETSI, TIA, T1P1, ARIB, TTC, and CCSA, irrespective of the transmission medium or frequency band, at the time of the Effective Date and thereafter, as well as any updates in respect of such standard specifications during the License Period. However, such updates may not extend to any Future Standards. For the avoidance of any doubt, 4G does not include 2G, 3G, CDMA, WiMax , WiFi, or Future Standards.

34.  "WiFi" shall mean the 802.11 standard specifications released or published by IEEE irrespective of the transmission medium, frequency band, or duplexing scheme, at the lime of the Effective Date, as well as any updates in respect of such standard specifications during the License Period. However, such updates may not extend to any Future Standards. For the avoidance of any doubt, WiFi does not include 2G, 3G, 4G, CDMA, WiMax, or Future Standards.

35.  "WiMax" shall mean the 802.16 standard specifications released or published by IEEE, irrespective of the transmission medium, frequency band or duplexing scheme, at the time of the Effective Date, as well as any updates in respect of such standard specifications during the License Period. However, such updates may not extend to any Future Standards. For the avoidance of any doubt, WiMax does not include 2G, 3G, 4G, CDMA, WiFi, or Future Standards.

36.  "CDMA" shall mean CDMA2000 standard specifications released or published by 3GPP2 and/or relevant local standardization bodies such as but not limited to ETSI, TIA, T1P1, ARIB, TTC, and CCSA, irrespective of the transmission

[PROPOSED] FINAL JUDGMENT AND INJUNCTION; CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

medium, frequency band or duplexing scheme, at the time of the Effective Date, as well as any updates in respect of such standard specifications during the License Period. However, such updates may not extend to any Future Standards. For the avoidance of any doubt, CDMA does not include 2G, 3G, 4G, WiMax , WiFi, or Future Standards.

## **INJUNCTION**

## **IT IS FURTHER ORDERED THAT:**

This Injunction is binding upon the Parties, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert with them who receive actual notice of the Injunction by personal service or otherwise.

### A.    License Grant

License Grant. Subject to the terms and conditions of this Injunction, TCL hereby is granted a world-wide, non-transferable, and non-exclusive license under Ericsson's Licensed Patents to make, Have Made, use, import, Sell, and offer for Sale TCL Products. The license and rights granted to TCL granted by this Injunction shall expire at the end of the License Period. The license granted to TCL further includes the right to make, use, and import solely by TCL (but not to Sell, lease, or otherwise dispose of to Third Parties) manufacturing and testing equipment compliant with the Standards for the testing, developing, and manufacturing of TCL Products.

Sublicense. TCL shall grant sublicenses of the rights set forth in this Clause to all future Affiliates of TCL Selling TCL Products. TCL shall procure that such future Affiliate shall be bound in all respects to all of the obligations contained in this Injunction, including but not limited to, the payment of royalties as set forth in Clause E of this Injunction. TCL shall be liable for the payment of royalties as set forth in Clause E attributed to all sublicensed future Affiliates, which shall be effectuated by TCL Communication Technology Holdings Ltd. directly. Any sublicense granted hereunder shall terminate if the Affiliate ceases to be an Affiliate of TCL.

No Implied License. Nothing in this Injunction shall be construed as a right to use or sell TCL Products in a manner which conveys or purports to convey whether explicitly, by principles of implied license, or otherwise, any rights to any Third Party user or purchaser of the TCL Products, under any patent of Ericsson covering or relating to any combination of the TCL Products with any other product (not licensed hereunder) where the right applies specifically to the combination and not to the TCL Product itself.

No Rights to Provide Foundry Services. For the avoidance of all doubt, nothing in this Injunction shall mean that Ericsson is granting a license under any Licensed Patents to TCL for providing of foundry services to Third Parties, *i.e.* TCL manufacturing and selling products based upon Third Party made and owned design when the product is thereafter sold to or directly on behalf of such same Third Party.

## B.    Limitations of License Grant

Jointly Owned Patents. With respect to Patents licensed herein which are owned jointly by Ericsson with others, the Court recognizes that there are countries which require the express consent of all inventors or their assignees to the grant of licenses or rights under patents issued in such countries for such jointly owned inventions. Ericsson shall give such consent and shall use all reasonable efforts to obtain such consent from its employees, and from other Third Parties and future Affiliates, as required to make full and effective any such licenses and rights granted.

If, in spite of such efforts, Ericsson is unable to obtain such consents from any such employees or Third Parties, the resulting inability of Ericsson to make full and effective its purported grant of such licenses and rights shall not be considered to be a breach of this Injunction. For the avoidance of doubt, in such a case, the licenses and rights shall be considered granted by Ericsson to the maximum extent possible, and, consequently, if TCL acquires a corresponding license from the employee or Third Party, TCL shall be deemed licensed under the patent.

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

No Rights Against Infringers. There may be countries in which TCL may have, as a consequence of this Injunction, rights against infringers of Ericsson's Patents licensed hereunder. TCL shall not assert any such right it may have by reason of any Third Party's infringement of any such Patents.

## C.   Release

Upon the receipt by Ericsson of the release payments set forth in Clause E by TCL, Ericsson shall release TCL and all customers of TCL who have purchased or used products herein licensed to TCL from claims for past patent infringement, provided such act would be licensed under this Injunction if it had occurred subsequent to the Effective Date.

Within thirty (30) days of final judgment (inclusive of all appeals and post-trial proceedings) and provided that Ericsson has received the release payment set forth in this Injunction from TCL, the parties shall cooperate to promptly seek the dismissal (with prejudice where available) of all claims and counterclaims in all litigations covered by the Court's anti-suit injunction dated July 10, 2015, Dkt. 284.

## D.   Know-How and Trade Secrets

No license or other right is granted herein to TCL, directly or by implication, estoppels or otherwise, with respect to any trade secrets or know-how, and no such license or other right shall arise from the consummation of this Injunction or from any acts, statements or dealings leading to such consummation. Except as specifically provided herein, Ericsson is not required by this Injunction to furnish or disclose to TCL any technical or other information.

## E.   Payments, Reports, and Audit

Royalties. In consideration of the license granted herein, TCL shall pay Ericsson:

1.   A release payment of $16,449, 071 for past unlicensed sales of End User

Terminals compliant with 2G, 3G, and/or 4G for the period 2007 through 2015, to be paid within thirty (30) days of the Effective Date;

2.   A release payment for past unlicensed sales of End User Terminals compliant with 2G, 3G, and/or 4G for the period 2016 through 2017, to be reported and paid in January and February 2018, as set forth in the "Reports" and "Payment" section herein; and

3.   A running royalty for End User Terminals Sold beginning January 1, 2018 according to the following schedule:

   a.   For each such product Sold that is compliant with GSM, GPRS, or EDGE (but not compliant with WCDMA, HSPA, and/or 4G), 0.164% of the Net Selling Price if sold in the United States, 0.118% of the Net Selling Price if sold in Europe, and 0.090% of the Net Selling Price if sold anywhere in the world other than the United States or Europe;

   b.   For each such product Sold that is compliant with WCDMA or HSPA (but not compliant with 4G), 0.300% of the Net Selling Price if sold in the United States, 0.264% of the Net Selling Price if sold in Europe, and 0.224% of the Net Selling Price if sold anywhere in the world other than the United States or Europe;

   c.   For each such product Sold that is compliant with 4G, 0.450% of the Net Selling Price if sold in the United States, and 0.314% of the Net Selling Price if sold anywhere in the world other than the United States.

Should TCL purchase TCL End User Terminals from a Third Party claiming to be licensed or to have pass-through rights under Ericsson Licensed Patents that confer a license covering the End User Terminal, then TCL will receive credit for that pass through license in the royalty rates applied. In particular, with regard to Ericsson Patents that are essential to the WCDMA Standards ("Ericsson WCDMA Licensed

Patents") for the Selling of ASICs, then TCL may have the option of remaining unlicensed by Ericsson under such Ericsson WCDMA Licensed Patents subject to Selling TCL End User Terminals with ASICs that are compliant with the WCDMA Standard. TCL shall then pay a royalty equal to the rate paid for the GSM/GPRS/EDGE and/or LTE Standards as specified in Clause E(3)(a) or Clause E(3)(c) of this Injunction, as applicable, for each such TCL End User Terminal provided that such TCL End User Terminal is also compliant with any of the GSM/GPRS/EDGE Standards and/or LTE Standards while it is qualified as a WCDMA End User Terminal. For the avoidance of doubt, the Parties acknowledge the doctrine of patent exhaustion. Ericsson confirms that upon the Effective Date it has not provided any licenses with pass-through rights under its 4G patent portfolio to a chipset provider, making, using, importing, selling, or otherwise disposing of 4G compliant chipsets and components.

For the avoidance of doubt, TCL shall only be required to pay the highest prevailing royalty rate under this Injunction for each End User Terminal. For example, the 3G royalty rate for 3G multimode End User Terminal includes the royalty rate also for the 2G part in such End User Terminal.

This Injunction does not require TCL to pay any royalties for the Sale of any External Modems or Personal Computers that are compliant with 2G, 3G, and/or 4G during the release period (*i.e.,* prior to January 1, 2018) or the License Period. TCL shall have a royalty-free license for all such sales.

Reports. TCL Communication Technology Holdings Ltd. shall, on behalf of all TCL Parties, make written reports to Ericsson for each applicable six months (January to June and July to December (each a "Reported Period")). Such reports shall be provided to Ericsson no later than one (1) calendar month after the first day of each January, and July for each year during the License Period and as of such dates including the last report after the License Period, stating in each such report, the number, Net Selling Price, gross price and other relevant information for each type of

TCL Product Sold or otherwise disposed of during the preceding Reported Period, and on which royalty is payable as provided in this Clause E, and shall be at least as detailed as specified in Appendix 1. In addition to the written report, TCL Communication Technology Holdings Ltd. shall, on behalf of all TCL Parties and TCL Affiliates, send such report in Excel-format (.xls format) to Ericsson via email to: ipr.unit@ericsson.com. In the event that no royalty payment is due for a Reported Period, TCL shall so report.

Payment. TCL Communication Technology Holdings Ltd. shall, on behalf of all TCL Parties and Affiliates, pay to Ericsson the royalties specified in this Injunction no later than two calendar months after the end of each Reported Period, *i.e.* no later than on February 28th and August 31st for TCL Products Sold during the preceding Reported Period. The payment to Ericsson shall be made to the Ericsson fully owned Affiliate Ericsson AB by wire transfer to the Ericsson bank account as specified in Appendix 2. Such payment to Ericsson AB shall fulfill TCL's payment obligations under the Injunction and Ericsson's claims for infringement of the '556 and '506 patents for the Reported Period that corresponds to the payment.

Ericsson shall have the right to assign any rights of Ericsson in relation to any receivables arising under this Injunction to any financial institution or other Third Party and may disclose confidential information related to this Injunction for such purpose. If required, the TCL shall provide acknowledgment over the assignment to the financial institution or other third party. For the avoidance of doubt, any such assignment shall in no way affect the obligations of TCL to Ericsson under this Injunction.

Records and Audits. TCL Communication Technology Holdings Ltd., on behalf of TCL and all Affiliates, shall keep records showing the sales or other disposition of products sold or otherwise disposed of in sufficient detail to enable the royalties payable by TCL to Ericsson to be determined, and further, on behalf of TCL and all Affiliates, shall permit its books and records to be examined to the extent necessary to

1   verify that reports and payments are sufficiently made in accordance with the

2   Injunction, such examination to be made by an independent and professional auditor

3   agreed by the Parties, such appointment not to be unreasonably refused, withheld or

4   delayed by TCL, and without a contingency fee arrangement between the to-be-

5   appointed auditor and Ericsson based on the outcome of the audit amount to be

6   collected. This shall at least include all books, records, and accounts as may under

7   internationally recognized accounting practices contain information bearing upon the

8   amount of royalties payable in accordance with this Injunction. If the auditor

9   confirms, based on *e.g.* the books, records, information and accounts which are

10   provided by TCL to the auditor in accordance with TCL's obligations in this

11   Injunction, that TCL has underpaid, TCL shall pay such deficiency amount within

12   thirty days after receipt of invoice from Ericsson. In the event there is an overpayment

13   by TCL, Ericsson shall credit such overpayment, verified by the auditor, against future

14   payments by TCL to Ericsson. For the avoidance of doubt, an audit shall be conducted

15   no more than once every year and only upon ten (10) days prior written notice to TCL.

16   The auditor shall use best efforts to conduct the audit in a manner that limits its

17   interference with TCL's normal business activities and/or operations.

18      The cost of such audit shall be borne by Ericsson, unless such audit determines

19   that TCL has underpaid the royalties due hereunder by the lesser of (a) more than five

20   percent (5%) or (b) two hundred thousand U.S. Dollars ($200,000), in which case,

21   TCL shall reimburse Ericsson for the reasonable cost of such audit. TCL shall

22   preserve and maintain all such books and records required for audit for a period of

23   five years after the calendar quarter for which the books and records apply.

24      The expiration of this Injunction shall not prejudice the right of Ericsson to

25   conduct a final audit of the records of TCL, provided such audit is initiated no later

26   than one (1) year from the expiration of the Injunction.

27      TCL Communication Technology Holdings Ltd., on behalf of TCL and all

28   Affiliates, shall, at the agreed date for the auditor visit to the TCL premises, provide

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

the auditor with the books and records, as requested by the auditor. The auditor shall have the right to analyze and verify such books and records at TCL's premises. For the avoidance of all doubt, such relevant books, records and accounts shall be treated as TCL confidential information ("TCL Audit Confidential Information") and any TCL Audit Confidential Information shall not be disclosed to Ericsson under any circumstances. Auditor shall use best efforts to observe the rules of on-site audit field work when in TCL premises.

Conversion to U.S. Dollars. To the extent that the Net Selling Price for TCL Products Sold is paid to TCL other than in U.S. Dollars then TCL shall convert the portion of the royalty payable to Ericsson from such Net Selling Price into U.S. Dollars at the official exchange rate of the currency of the country from which the Net Selling Price was paid, as quoted by the Financial Times for the last business day of the calendar quarter in which such TCL Products were Sold. If the transfer of or the conversion into U.S. Dollars is not lawful or possible, the payment of such part of the royalties as is necessary shall be made by the deposit thereof, in the currency of the country where the Sale was made on which the royalty was based to the credit and account of Ericsson or its nominee in any commercial bank or trust company of Ericsson's choice located in that country prompt notice of which shall be given by TCL to Ericsson.

Late Payments. TCL shall pay interest on any overdue payment required to be made pursuant to this Injunction, commencing on the date such payment becomes due, at an annual rate of twelve percent (12%).

Taxes. All payments required by this Injunction are exclusive of taxes, customs, or any other duties, and TCL shall be responsible for the payment of all such taxes, customs or other duties including, but not limited to, all sales, use, rental receipt, personal property or other taxes and their equivalents which may be levied or assessed in connection with this Injunction (excluding only taxes based on Ericsson's net income).

Hence, if in accordance with present or future laws, Ericsson shall be obliged to pay, or TCL obliged to deduct from any payment to Ericsson, any amount with respect to any taxes, customs or any other duties levied, for which Ericsson is responsible as stated above, TCL shall increase the payment to Ericsson by an amount to cover such payment by Ericsson or deduction by TCL.

### F.    Change of Control

In the event that more than 20% of TCL's ownership changes by merger, acquisition, consolidation, transfer, or otherwise, any party may seek to address with the Court whether such change should impact the rights and obligations set forth in this Injunction, or whether modification, termination, or clarification of the Injunction is required regarding the parties' obligations given such change.

### G.    Transfer of Licensed Patents

Ericsson shall not transfer or assign any of the Licensed Patents during the License Period unless such assignment, including future assignments of any of the Licensed Patents, is made subject to maintenance of the licenses and rights as granted under this Injunction.

### H.    No Additional Limitations or Obligations

Nothing contained in this Injunction shall (i) limit the rights which TCL has outside the scope of the license and rights granted hereunder, or restrict the right of TCL to make, Have Made, use, lease, sell, or otherwise dispose of any particular product or products not licensed herein; (ii) obligate any Party to bring or prosecute actions or suits against Third Parties for infringement; (iii) obligate any Party to furnish any manufacturing or technical information or assistance; (iv) obligate any Party to file any patent application, or to secure any patent or patent rights, or to maintain any patent in force, or to provide copies of patent applications to the other Parties, or to disclose any inventions described or claimed in such patent applications; (v) confer any right to use, in advertising, publicity or otherwise, any name, trade

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

name, trademark, or any contraction, abbreviation , or simulation thereof; (vi) obligate Ericsson to make any determination as to the applicability of any patent to any product of TCL; or (v) require Ericsson to assume any responsibilities whatsoever with respect to the manufacture, sale, lease, use, importation, or disposition of any product or part thereof, by TCL or any direct or indirect supplier or vendee or other transferee of TCL.

## I.    Waiver

Neither this Injunction nor any provision hereof may be waived without the prior written consent of the Party against whom such waiver is asserted. No delay or omission by either Party to exercise any right or power shall impair any such right or power to be construed to be a waiver thereof.  Consent by either Party to, or waiver of, a breach by the other Party shall not constitute consent to, waiver of, or excuse for any other different or subsequent breach.

## J.    Assignment

Neither this Injunction nor any license or rights hereunder, in whole or in part, shall be assignable or otherwise transferable by either Party without the written consent of the other Party. Any attempt to do so in contravention of this Article shall be void and of no force and effect.

## K.    Notice

All notices, requests, demands, consents, agreements, and other communications required or permitted to be given under this Injunction shall be in writing and shall be: (a) delivered personally; (b) mailed to the Party to whom notice is given, by first class mail, postage prepaid; or (c) sent by facsimile or electronically, properly addressed with a confirmation copy to the Party's legal department (as appropriate) as follows:

| ERICSSON | TCL |
|---|---|
| Ericsson AB | TCL Telecommunication Technology |
| Att: Chief Intellectual Property Officer | Holdings Limited |
| Torshamnsgatan 23 | Att: Chief Legal Counsel |

| SE-164 80 Stockholm, Sweden<br>Facsimile No: + 46 10 719 11 12 | 5th Floor, Building 22E<br>22 Science Park East<br>Hong Kong Science Park<br>Shatin, New Territories<br>Hong Kong<br>Facsimile No: +852-3180-2800 |
|---|---|

Royalty reports in .xls format shall be emailed to: ipr.unit@ericsson.com.

Unless otherwise specifically provided for in this Injunction, such communications shall take effect upon receipt by the addressee, provided such communications shall be deemed to have arrived upon the expiration of seven (7) days from the date of sending in the case of registered or certified mail and on the day of receipt of the sender's facsimile confirmation of the transmission in the case of telefax.

The above addresses and contacts can be changed by providing notice to the other Party in accordance with this Clause.

**L.    Confidentiality**

Except as may otherwise be required by law or as reasonably necessary for performance of this Injunction, each Party shall keep any information, whether of a commercial or technical nature including but not limited to any related reports, furnished by the other Party pursuant to this Injunction confidential. The confidentiality obligations hereunder shall, for ten (10) years, survive the expiration of this Injunction for any reason.

**M.    Headings**

All headings used in this Injunction are inserted for convenience only and are not intended to affect the meaning or interpretation of this Injunction or any clause or provision herein.

**RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Final Judgment

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

and Injunction.

## COSTS

The TCL Parties (TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US) Inc.) are the prevailing parties, and shall recover their costs.

The parties' claims and counterclaims regarding Ericsson's '556 and '506 patents are hereby dismissed without prejudice. Insofar as they are not addressed in this Final Judgment and Injunction, all other requests for relief set forth in the parties' pleadings are hereby denied.

The Clerk is directed and ordered to enter this judgment.

Dated: December 22, 2017

HON. JAMES V. SELNA
UNITED STATES DISTRICT JUDGE

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx

# APPENDIX 1

| Customer Product type (e.g. mobile phone, tablet etc.) | Model name and number | Units Sold | Gross Selling Price (US$) | Net Selling Price (US$) | Royalty rate (%) | Total Royalty amount (US$) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Total (US$) | | | | | | |

**APPENDIX 2**

# UNDER SEAL

[PROPOSED] FINAL JUDGMENT AND INJUNCTION;
CASE NOS. 8:14-cv-00341-JVS-DFMx/2:15-cv-02370-JVS-DFMx